**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x
                                                                        :
In re:                                                              :          Chapter 11
                                                                        :
COLT HOLDING COMPANY LLC, *et al.*,[1]          :          Case No. 15-11296 (    )
                                                                        :
                                                                        :
                                           Debtors.         :          Joint Administration Requested
                                                                        :
-------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING CONTINUED USE OF THE DEBTORS' EXISTING CASH**
**MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING**
**CERTAIN UNITED STATES TRUSTEE REQUIREMENTS;**
**(III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY**
**TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF**

Colt Holding Company LLC and its affiliated debtors and debtors in possession

(collectively, the "**Debtors**") respectfully request entry of interim and final orders (i) authorizing

the Debtors to continue to use their centralized cash management system (the "**Cash**

**Management System**") and bank accounts, as set forth below; (ii) waiving certain bank account

and related requirements of the Office of the United States Trustee for the District of Delaware

(the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices

under the Cash Management System (subject to certain reasonable changes to the Cash

Management System that the Debtors may implement); (iv) extending time to comply with

section 345(b) of the Bankruptcy Code; and (v) authorizing the continued performance of

Intercompany Transactions (as defined below) consistent with historical practice and granting

administrative expense priority to Intercompany Transactions. In support of this motion, the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

Debtors rely upon and incorporate by reference *Keith A. Maib's Declaration in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Maib Declaration**"), filed concurrently with this motion.[2] In further support of the motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[3]

## BACKGROUND

2.      On June 14, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors are one of the world's oldest and most renowned designers, developers, and manufacturers of firearms for military, law enforcement, personal defense, and recreational purposes. The Debtors' end customers encompass every segment of the worldwide firearms market, including U.S., Canadian, and foreign military forces, global law enforcement and security agencies, consumers seeking personal protection, the hunting and sporting community, and collectors. Headquartered in West Hartford, Connecticut, the Debtors operate

---

[2] Capitalized terms used but not defined in this motion have the meanings used in the Maib Declaration.

[3] Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby expressly confirm their consent to the entry of a final order by this Court in connection with this motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

manufacturing facilities in West Hartford and Kitchener, Ontario, Canada. For the year ended December 31, 2014, the Debtors' revenue was approximately $190.8 million.

4.     Additional information on the Debtors' businesses and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the Maib Declaration.

## RELIEF REQUESTED

5.     By this motion, pursuant to sections 105(a), 345, 363(c), and 503(b)(1) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors respectfully request entry of interim (the "**Interim Order**") and final orders, substantially in the forms attached as Exhibit A and Exhibit B, respectively, authorizing the Debtors to continue to use their Cash Management System in the ordinary course and granting related relief.

6.     Specifically, the Debtors seek authority to (i) maintain and continue to use the bank accounts listed on Exhibit C to this motion (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse ("**ACH**") transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

7.     To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that their banks be authorized and directed to

3

continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the Debtors' ordinary course of business. In that regard, the Debtors seek to continue to receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim arising prior to, on, or after, the Petition Date that this Court has granted the Debtors approval to pay, and in reliance on the Debtors' representations of such authority; *provided that* the applicable Debtor Bank Accounts contain sufficient funds.

8.       Continuity of the Cash Management System is critical, but so is a measure of flexibility. To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that are deemed necessary or appropriate in the ordinary course, including closing any Debtor Bank Account and establishing new bank accounts and that the applicable banks be authorized to honor such changes.

9.       Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued Disbursements before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that their banks be authorized and directed to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. And because the banks are not in a position to independently verify or audit whether they may honor a particular Court-approved prepetition Disbursement, the Debtors further request that the Court order that no bank be liable to the Debtors or their estates, or

otherwise be in violation of such orders, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

10.     Finally, the Debtors request authority to continue, in the ordinary course of the Debtors' business, certain transactions between and among the Debtors (the "**Intercompany Transactions**"). The Intercompany Transactions, as described below, are necessary to maintain control over cash management among the Debtors and to avoid substantial disruption to the Debtors' businesses.

## BASIS FOR RELIEF REQUESTED

## I. FACTS SPECIFIC TO RELIEF REQUESTED

**A.      Overview of the Cash Management System**

11.     The Cash Management System is an integrated, global network of bank accounts that is critical to the Debtors' operations during these cases and, in turn, maximizing the value of the Debtors' estates. Like typical chapter 11 debtors, the Debtors use the Cash Management System to collect cash from operations and to make cash disbursements (primarily payroll and payments to vendors) to manage their businesses. The Cash Management System also serves a strategic function, facilitating the Debtors' cash monitoring, forecasting, and reporting, and enabling the Debtors to control administration of their bank accounts. Recognizing the importance of the Cash Management System, the Debtors take care to record all collections, transfers, and disbursements made through the Cash Management System as and when made. For demonstrative purposes, a diagram illustrating the fundamental aspects of the Cash Management System is attached as Exhibit D.

**B.      The Debtor Bank Accounts**

12.     There are 29 Debtor Bank Accounts: 14 at Wells Fargo Bank, N.A. ("**Wells Fargo**"); nine at Bank of America, N.A. ("**Bank of America**"); two at Royal Bank of

Canada; one at JP Morgan Chase Bank, N.A. ("**JP Morgan**"); one at BMO Harris Bank N.A. ("**BMO Harris**"); one at Interaudi Bank; and one at Societe Generale. Each Debtor Bank Account is insured by the Federal Deposit Insurance Corporation ("**FDIC**"), the Canadian Deposit Insurance Company ("**CDIC**"), or the Fonds de Garantie des Dépôts et de Résolution ("**FGDR**"), as applicable.

13.     In connection with the refinancing of certain of the Debtors' debt obligations in November of 2014, the Debtors are in the process of transitioning their Cash Management System from Bank of America to Wells Fargo. While much of the transition was completed in the first quarter of 2015, several bank accounts remain open at Bank of America for the convenience of certain customers and for various administrative purposes. The Debtors hope to close all of the Bank of America accounts and complete the transition to Wells Fargo by the end of June of 2015.

14.     The Cash Management System has the following main components: (i) cash collection, primarily the collection of payments from customers; (ii) cash disbursements to fund the Debtors' operations, primarily consisting of payments made to vendors and suppliers to ensure a steady supply of products that the Debtors use to service their customers, as well as funding of the Debtors' payrolls; and (iii) centralization of collections and disbursements through a master operating account.

### (i)     The Debtors' U.S. Cash Management System

15.     *The Master Operating Account*.  The Debtors' master operating account (the "**Master Operating Account**"), in the name of Colt's Manufacturing Company LLC ("**CMC**"), is a zero-balance account that is the focal point of the U.S. Cash Management System and serves several critical functions. First, receipts deposited into the Depository Account

(described in greater detail below) are concentrated into the Master Operating Account. Second, the Master Operating Account funds the Accounts Payable Account, the Debt Service Accounts, and the Payroll Accounts (each as described in greater detail below), which are used to conduct the Debtors' day-to-day business operations. The Master Operating Account is also the source of wire transfers to vendors and suppliers. Finally, as described more fully below, the Debtors use the Master Operating Account for Intercompany Transactions.

16.     *Deposit Accounts*.   The Debtors' main deposit account (the "**Depository Account**"), in the name of CMC, is a zero-balance account maintained at Wells Fargo. The majority of the cash receipts generated from the Debtors' businesses are received largely as checks and ACH transfers and deposited into the Depository Account. Funds in the Depository Account are automatically swept each day into the Master Operating Account through a zero-balance mechanism and the Depositary Account balance is reduced to zero. The Debtors maintain two additional deposit accounts at Bank of America for the convenience of certain customers. As discussed above, the Debtors are in the process of transitioning these accounts to Wells Fargo. Any funds received into the deposit accounts at Bank of America are transferred to the Depository Account on a weekly basis. Typically, and as of the Petition Date, the balance in the deposit accounts at Bank of America is approximately $2,500, which covers any bank fees drawn against the accounts.

17.     *The Accounts Payable Account*.   The Debtors' main accounts payable account (the "**Accounts Payable Account**"), in the name of CMC, is a zero-balance account maintained at Wells Fargo. The Debtors use the Accounts Payable Account to pay the majority of their domestic non-payroll-related Disbursements (with the exception of payments related to the Debtors' indebtedness), including payments to vendors and suppliers in the form of checks.

As checks are presented to the Accounts Payable Account, they are funded from the Master Operating Account (wire transfers to vendors and suppliers are made directly from the Master Operating Account).

18.    *Payroll Accounts*: The Debtors maintain a dedicated zero-balance payroll account in the name of CMC and a payroll concentration account in the name of Colt Security LLC ("**Colt Security**") at Wells Fargo (collectively, the "**Payroll Accounts**"), each of which is funded by the Master Operating Account. CMC's Payroll Account is used to pay the majority of the Debtors' employees located in the United States. Colt Security's Payroll Account is used to fund payroll for the security guards that safeguard and monitor the Debtors' West Hartford, Connecticut facility, as well as the payment of certain management fees. In connection with each payroll cycle, the Debtors pre-fund payroll accounts at Automatic Data Processing, Inc. ("**ADP**") from the respective Payroll Accounts, and ADP issues payroll on the Debtors' behalf through either a direct deposit or by issuing a payroll check. As of the Petition Date, the balance in Colt Security's Payroll Account was approximately $98,000.

19.    *Debt Service Accounts.*  The Debtors maintain two concentration accounts, one in the name of Colt Defense LLC ("**Colt Defense**") and another in the name of New Colt Holding Corp. ("**New Colt**"), which are funded by the Master Operating Account on an as needed basis and from which the Debtors repay outstanding amounts owed under the Senior Loan Credit Agreement, the Term Loan Agreement, and the Senior Notes Indenture (the "**Debt Service Accounts**"). As of the Petition Date, the balance in Colt Defense's Debt Service Account was approximately $24,000 and the balance in New Colt's Debt Service Account was approximately $23,000.

20.    *Other Bank Accounts*.    Colt Defense Technical Services LLC also maintains a bank account at Wells Fargo for tax purposes related to expatriate employees of Colt International Coöperatief U.A. ("**Colt International**"), which had a zero balance as of the Petition Date. Colt International, a Dutch entity, maintains a bank account at Bank of America and another account at Societe Generale (the "**Soc Gen Account**"), which are used for administrative expenses related to the Debtors' non-U.S. ventures. The Soc Gen Account is insured by the FGDR, which is the functional equivalent of the FDIC in France.[4] As of the Petition Date, the balance in the Soc Gen Account was approximately $23,000 and there was a zero balance in Colt International's account at Bank of America. The Debtors' remaining bank accounts at JP Morgan, BMO Harris, and Interaudi Bank, each in the name of Colt Defense, are collateral for the Debtors' various standby letters of credit and performance bonds. As of the Petition Date, the balance in the bank account held at (i) JP Morgan was approximately $850,000; (ii) BMO Harris was approximately $3,400,000; and (iii) Interaudi Bank was approximately $485,000.

### (ii)    The Debtors' Canadian Cash Management System

21.    In connection with the Debtors' Canadian operations, Colt Canada Corporation ("**Colt Canada**") maintains Canadian dollar ("**CAD**"), Euro, and U.S. dollar ("**USD**") accounts at Wells Fargo, Royal Bank of Canada, and Bank of America (collectively, the "**Colt Canada Bank Accounts**").

---

[4] The FGDR insures up to €100,000 in the following: (i) ordinary demand, current, and term accounts; (ii) passbook or savings accounts other than Livret Type 'A' savings accounts, Livret Développement durable (LDD) or Livret d'Epargne Populaire (LEP) savings accounts; (iii) 'Livret Jeune' savings accounts; (iv) Compte Epargne Logement (CEL), Plan d'Epargne Logement (PEL), Plan d'Epargne Populaire (PEP) savings plans; (v) savings or other bank accounts that combine various products from the foregoing list; and (vi) cash accounts associated with a securities account or equity savings scheme (PEA).

9

22.     *Canadian Dollar Bank Accounts*.   The majority of funds received and disbursed in Canadian dollars enter and leave the Debtors' Cash Management System through depository and accounts payable accounts at Royal Bank of Canada ("**RBC**"). The majority of CAD-denominated customer deposits are received into a zero-balance depository account at RBC (the "**RBC Depository Account**"), which automatically sweeps into a zero-balance depository account at Wells Fargo ("**WF Canadian Depository Account**").[5] CAD-denominated (and other non-Euro and non-USD denominated) deposits from customers located outside Canada, however, are deposited directly into the WF Canadian Depository Account. Funds in the WF Canadian Depository Account are then swept into an accounts payable account at Wells Fargo (the "**WF Canadian Accounts Payable Account**") and are subsequently transferred to an accounts payable account at RBC (the "**RBC Accounts Payable Account**" and together with the RBC Depository Account, the "**RBC Accounts**"), from which CAD-denominated disbursements to vendors and suppliers are made. Payroll-related disbursements for employees of Colt Canada are also made in Canadian dollars from the RBC Accounts Payable Account. Each of the RBC Accounts is insured by the CDIC, which is the functional equivalent of the FDIC in Canada.[6]

23.     *Euro Bank Accounts*.   Funds received in Euros are deposited into a separate zero-balance account in the name of Colt Canada at Wells Fargo (the "**Euro Depository**

---

[5] In connection with the transition of the Debtors' Cash Management System to Wells Fargo, some CAD-denominated deposits are still being deposited in Colt Canada's CAD-denominated depository account at Bank of America. These funds are swept into the WF Canadian Depository Account on an as needed basis, with a small amount left behind to cover bank fees drawn against the account.

[6] The CDIC insures up to $100,000 in the following: (i) deposits in savings and checking accounts that are held in Canadian dollars at a CDIC member; (ii) guaranteed investment certificates and other deposits with an original date to maturity of five years or less held in Canadian dollars at a CDIC member; (iii) deposits in money orders, certified checks, travelers' checks and bank drafts that are held in Canadian dollars and that are issued by a CDIC member; (iv) deposits made towards realty taxes on mortgaged properties held in Canadian dollars at a CDIC member; (v) savings held in eligible accounts and financial products held in trust; (vi) savings held in eligible accounts and financial products that are in a registered retirement savings plan; (vii) savings held in eligible accounts an financial products that are in a registered retirement income fund; and (viii) savings held in eligible accounts and financial products that are held in tax-free savings accounts.

**Account**"), which sweeps into an accounts payable account at Wells Fargo (the "**Euro Accounts Payable Account**").[7] All Euro-denominated disbursements on behalf of Colt Canada are made from the Euro Accounts Payable Account.

24.     *U.S. Dollar Bank Accounts.*  Similarly, funds received in U.S. dollars are deposited in a separate zero-balance account in the name of Colt Canada at Wells Fargo ("**USD Depository Account**"), which sweeps into an accounts payable account at Wells Fargo (the "**USD Accounts Payable Account**").[8] All USD-denominated disbursements on behalf of Colt Canada are made from the USD Accounts Payable Account.

**C.     Bank Fees**

25.     The Debtors allow the deduction of service charges and other fees, costs, and expenses arising in the ordinary course (collectively, the "**Bank Fees**") from the Debtor Bank Accounts. The Bank Fees related to the Colt Canada Bank Accounts are deducted from the WF Canadian Accounts Payable Account or a CAD-denominated accounts payable account that remains open at Bank of America. The majority of other Bank Fees are deducted from the Master Operating Account or a concentration account that remains open at Bank of America. The Debtors estimate that they pay average monthly Bank Fees of approximately $17,000 and $5,400 (CAD) and that they owe prepetition Bank Fees of approximately $7,000 and $5,000 (CAD).

---

[7] In connection with the transition of the Debtors' Cash Management System to Wells Fargo, some Euro-denominated deposits are still being deposited in Colt Canada's Euro-denominated depository account at Bank of America. These funds are swept into the Euro Depository Account on an as needed basis, with a small amount left behind to cover bank fees drawn against the account.

[8] In connection with the transition of the Debtors' Cash Management System to Wells Fargo, some USD-denominated deposits are still being deposited in Colt Canada's USD-denominated depository account at Bank of America. These funds are swept into the USD Depository Account on an as needed basis, with a small amount left behind to cover bank fees drawn against the account.

11

### D.      Intercompany Transactions

26.      As a result of business transactions and cash flows among the Debtors, at any given time there may be intercompany claims owing by one Debtor to another. Examples of such Intercompany Transactions include payments related to dividends, royalties, short term loans, and other commercial transactions among the Debtors. The Debtors track all Intercompany Transactions through the Cash Management System and can ascertain, trace, and segregate any Intercompany Transactions, including any postpetition transactions. For the avoidance of doubt, the Debtors are not seeking authority to make intercompany transfers to any non-Debtor affiliates or subsidiaries; *provided that* they reserve the right to seek approval to do so at a later date should circumstances warrant.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A.      The Debtors Should Be Authorized to Continue to Use Their Existing Cash Management System and Bank Accounts Under Sections 363(c) and 105(a) of the Bankruptcy Code

27.      Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor flexibility to operate its businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." (internal quotation omitted)). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" a debtor's cash management system require. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine

12

transactions necessitated by the [existing] cash management system"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)). Additionally, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

28.    The relief this motion requests is consistent with these Bankruptcy Code provisions. The Debtors seek authority to continue to use their Cash Management System and the Debtor Bank Accounts consistent with prepetition practices. The Cash Management System is an ordinary-course and essential business practice that provides the Debtors significant benefits. Through the Cash Management System, the Debtors maintain the ability to control corporate funds, ensuring maximum availability of funds when and where necessary. The Cash Management System also reduces the administrative burden on the Debtors by facilitating the global movement of funds across the Debtors. Continued use of the Cash Management System and the Debtor Bank Accounts during these chapter 11 cases is essential to the Debtors' businesses and maximizing value of their estates. Requiring the Debtors to adopt new cash management systems and open new bank accounts would be expensive, onerous, and disruptive. As one court in this District recognized, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

29.    The Debtors represent that if the Court grants this motion, they will not pay, and each of the banks will be directed not to pay, any prepetition claims, except as the Court

13

authorizes. Maintaining the Cash Management System and Debtor Bank Accounts without disruption is in the best interests of the Debtors, their estates, and all interested parties. Based on the foregoing, the Court should grant the Debtors the authority under sections 363(c) and 105(a) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash under their Cash Management System.

**B.    The Debtors Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee Under Sections 363 and 105(a) of the Bankruptcy Code**

30.    The Debtors further request that this Court grant a waiver of certain bank account and related U.S. Trustee requirements. The U.S. Trustee has established operating guidelines for debtors in possession to supervise the administration of chapter 11 cases. These guidelines require a chapter 11 debtor to, among other things (the requirements set forth in (a) through (e) below collectively, the "**UST Requirements**"):

(a)    close all existing bank accounts;

(b)    open new bank accounts in a depositary approved by the U.S. Trustee that are designated as DIP Accounts, with separate DIP Accounts established for an operating account, a tax account, and a payroll account;

(c)    obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor In Possession" and contain other information about the debtor's chapter 11 case;

(d)    deposit all business revenues into the general operating DIP Account, with amounts needed to fund the other accounts being transferred to those accounts as necessary; and

(e)    deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

The UST Requirements are designed to provide a clear line of demarcation between a debtor's prepetition and postpetition transactions and operations, and to prevent inadvertent postpetition payment of prepetition claims.

RLF1 12228297v.1

31.     Under sections 363 and 105(a) of the Bankruptcy Code, the Debtors seek a waiver of the UST Requirements that they close the Debtor Bank Accounts and open new DIP Accounts. As discussed above, continued use of the Debtor Bank Accounts is essential to maximizing value of the Debtors' estates and is in the best interests of all parties. Among other things, the continued use of the Debtor Bank Accounts prevents disruption to direct customer payments into these accounts and facilitates speed of collection for accounts receivables. As set forth above, the Debtors do, however, request the authority to open any new bank accounts or close any existing bank accounts as they may deem necessary and appropriate in the ordinary course; *provided that* the Debtors give notice within 15 days after opening a new bank account or closing an existing bank account to (i) the U.S. Trustee; (ii) counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (iii) counsel to the DIP Term Loan Lender and Prepetition Term Loan Lender; and (iv) any statutory committees appointed in these chapter 11 cases, and *provided further* that the Debtors open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank willing to immediately execute such an agreement.

32.     The Debtors also seek a waiver of the UST Requirement to establish specific DIP Accounts for payroll and for tax payments and to deposit into the tax accounts sufficient funds to pay any payroll tax liability (when incurred). The Debtors believe that their payroll and tax obligations are most efficiently met through the Debtor Bank Accounts in accordance with existing practices, and that requiring new payroll and tax DIP Accounts would be both unnecessary and highly disruptive to their businesses. The Debtors are—and expect to remain—current on all payroll taxes.[9] Requiring the Debtors to change their existing practices

---

[9] Contemporaneous with this motion, the Debtors have filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Employee Compensation and Benefits, (B) Maintain*

RLF1 12228297v.1

and deposit sufficient funds to pay any tax liability associated with the Debtors' payroll would, therefore, be unnecessary and inefficient. Further, the Debtors will ensure that the U.S. Trustee can appropriately monitor that the Debtors' payroll taxes are satisfied.

33.     To minimize expense, the Debtors seek authority to continue using checks, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession. The Debtors also seek authority to use all correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession.[10]

34.     As required, the Debtors are providing notice of the commencement of these cases to creditors and parties in interest. Parties doing business with the Debtors, therefore, should be aware of the Debtors' status as debtors in possession. Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates. Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing check stocks and all correspondence and business forms without being required to label them "Debtor In Possession"; *provided that* once the Debtors' existing checks have been used, the Debtors will, when

---

*and Continue Such Benefits and Other Employee-Related Programs, and (C) Pay Prepetition Claims of Independent Contractors and (II) Granting Related Relief*, which seeks, among other things, authority to pay employee wages, benefits, and related taxes.

[10] Although the UST Requirements would require the Debtors to obtain and use new checks bearing the "Debtor In Possession" designation, the Debtors do not believe that the UST Requirements impose any limitation on the Debtors' other correspondence and business forms. Nevertheless, out of an abundance of caution, the Debtors seek authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

RLF1 12228297v.1

reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number to be printed on all checks; *provided further* that, with respect to electronic checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of entry of the Interim Order.

35.     As indicated above, the Cash Management System is an ordinary course and essential business practice. Compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements outlined above would risk disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for any parties in interest.

**C.     The Debtors Should Be Authorized to Continue Their Deposit Practices Under Section 345 of the Bankruptcy Code**

36.     Section 345(a) of the Bankruptcy Code governs a debtor's deposit of cash during a chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a). If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety. *Id.* § 345(b). Alternatively, the estate may require the entity to deposit governmental securities under 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.

37.     While the Debtors believe they are in compliance with section 345(b) of the Bankruptcy Code, to the extent they are not, the Debtors submit that given their limited liquidity and need to conserve cash, incurring administrative expense complying with section 345(b) would unnecessarily drain scarce resources. As noted above, each of the Debtor Bank Accounts are insured by the FDIC, the CDIC or the FGDR, as applicable, and thus comply with section 345(b) of the Bankruptcy Code. The Debtors also believe that, under their investment practices, all deposits and investments are made into deposit accounts, money market accounts, and other investment vehicles that in turn invest only in assets, securities, or other instruments insured or guaranteed or collateralized by the United States, Canada, or France, as applicable, or by a department, agency, or instrumentality of the United States, Canada, or France, as applicable, or backed by the full faith and credit of the United States, Canada, or France, as applicable. The Debtors request that such deposit practices be deemed to satisfy section 345(b) of the Bankruptcy Code.

38.     The Debtors understand that Bank of America, Wells Fargo, and JP Morgan have signed a Uniform Depository Agreement with the U.S. Trustee. To the extent that any of the Debtors' other banks with which they maintain accounts have not signed such an agreement and to the extent the Debtors as of the Petition Date do not otherwise comply with deposit and investment guidelines under section 345(b) of the Bankruptcy Code, the Debtors request a 60-day extension to do so. During the extension period, the Debtors propose to engage the U.S. Trustee in discussions to determine if compliance with section 345(b)—to the extent not already met—and other U.S. Trustee requirements (to the extent not waived) is necessary or appropriate.

39.    RBC and Societe Generale are not included on the list of approved depositories issued by the U.S. Trustee, however the closure of the RBC Accounts and the Soc Gen Account would significantly impair the Debtors' Canadian operations and possibly, their other non-U.S. ventures. As a result of having to close the RBC Accounts, open new Canadian accounts, and instruct their Canadian customers to redirect payments, the Debtors likely would experience severe delays in receiving the cash necessary to conduct their Canadian operations. Similar disruptions in the Debtors' other non-U.S. ventures are possible if the Soc Gen Account were to be closed. Accordingly, the Debtors submit that maintaining the RBC Accounts and the Soc Gen Account is in the best interests of the Debtors' estates. In addition to the continuance of the RBC Accounts and the Soc Gen Account, the Debtors require the ability to continue to fund the RBC Accounts Payable Account from the WF Canadian Accounts Payable Account to fund payroll at Colt Canada, make CAD-denominated payments to vendors and suppliers, and transfer funds to the Soc Gen Account on an as needed basis.

40.    The Debtors believe that the benefits of the requested extension far outweigh any harm to the estates. *See generally In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists for "relief from the strictures of § 345(b)" is whether benefits to the debtor outweigh the harm, if any, to the estate). During the extension period, the Debtors will contact each of their banks that is a party to a Uniform Depository Agreement with the U.S. Trustee, provide such banks with each of the Debtors' tax identification numbers, and identify each of their bank accounts at the banks as being held by a debtor in possession. For banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will use good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S.

Trustee. The Debtors' deposits and investments are prudent and designed to yield the maximum reasonable net return on the funds deposited or invested, taking into account the safety of such deposits and investments. The Debtors operate sophisticated businesses and hold their funds at reputable, stable banking institutions and monitor their cash flows and positions on a daily basis.

41.    Similar extensions have been granted in other chapter 11 cases in this District and elsewhere.[11] Requiring the Debtors to modify their Cash Management System to strictly adhere with the deadline to comply with the requirements established by section 345(b) of the Bankruptcy Code will only distract the Debtors' management and cause the Debtors' estates to incur potentially substantial costs unnecessarily to the detriment of all creditors. Based on the foregoing, the Debtors submit that the relief requested is in the best interests of their estates and any interested parties, and, therefore, should be granted.

**D.    The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business, and Such Transactions Should Be Granted Administrative Expense Priority**

42.    As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course of business as part of the Cash Management System. As a result, at any given time there may be intercompany claims among Debtors. Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors, the Intercompany Transactions are ordinary course transactions under section 363(c)(1) of the Bankruptcy Code and do not require Court approval.

---

[11] *See, e.g., In re Corinthian Colleges, Inc.,* Case No. 15-10952 (KJC) (Bankr. D. Del. May 5, 2015) (D.I. 25) (granting 30-day extension); *In re Frederick's of Hollywood, Inc.,* Case No. 15-10836 (KG) (Bankr. D. Del. Apr. 21, 2015) (D.I. 48) (same); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Mar. 11, 2015) (D.I. 53) (granting a 60-day extension); *In re ProNerve Holdings, LLC,* Case No. 15-10373 (KJC) (Bankr. D. Del. Feb. 26, 2015) (D.I. 33) (granting a 30-day extension); *In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149) (granting 30-day extension); *In re Energy Futures Holding Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Apr. 29, 2014) (D.I. 304) (granting 60-day extension); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014) (D.I. 77) (granting 60-day extension); *In re Quantum Foods, LLC,* No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014) (D.I. 38) (granting 45-day extension).

Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions postpetition.

43.     Ordinary-course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets. Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed. The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources. Moreover, the Intercompany Transactions provide the Debtors access to liquidity that may be necessary to fund ongoing operations. Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

44.     The Debtors respectfully request, under section 503(b)(1) of the Bankruptcy Code, that all payments between or among the Debtors on account of a postpetition Intercompany Transaction be accorded administrative expense priority. This relief will ensure that each Debtor receiving payments from another Debtor will continue to bear the ultimate repayment responsibility for such transaction. Similar relief has been granted in other multi-debtor chapter 11 cases in this and other Districts.[12]

## E.     Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm

45.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before

---

[12] *See, e.g., In re Corinthian Colleges, Inc.,* Case No. 15-10952 (KJC) (Bankr. D. Del. May 5, 2015) (D.I. 19); *In re Frederick's of Hollywood, Inc.,* Case No. 15-10836 (KG) (Bankr. D. Del. Apr. 21, 2015) (D.I. 48); *In re Allied Nevada Gold Corp.,* Case No. 15-10503 (MFW) (Bankr. D. Del. Mar. 11, 2015) (D.I. 53); *In re Endeavour Operating Corporation,* No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149); *In re MACH Gen, LLC,* No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (D.I. 99); *In re the Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (D.I. 82); *In re QCE Finance LLC,* No. 14-10543 (PJW) (Bankr. D. Del. Mar. 17, 2014) (D.I. 41).

the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the Maib Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable.[13]

46.    The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

47.    Nothing contained in this motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this motion shall not be deemed a direction to the Debtors to pay such claims and such payments shall be made in the Debtors' sole discretion.

## NOTICE

48.    The Debtors will provide notice of this motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a

---

[13] *See* the Maib Declaration filed concurrently with this motion.

consolidated basis; (iii) Cortland Capital Market Services LLC, as Prepetition Senior Loan Agent; (iv) counsel to the Prepetition Senior Loan Agent; (v) Wilmington Savings Fund Society, FSB, as Term Loan Agent; (vi) counsel to the Term Loan Agent; (vii) Wilmington Trust FSB, as Senior Notes Indenture Trustee; (viii) counsel to the Senior Notes Indenture Trustee; (ix) the DIP Term Loan Lender and Prepetition Term Loan Lender; (x) counsel to the DIP Term Loan Lender and Prepetition Term Loan Lender; (xi) the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (xii) counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (xiii) the Internal Revenue Service and Canada Revenue Agency; (xiv) the Securities and Exchange Commission; (xv) the Pension Benefit Guaranty Corporation; (xvi) any local, state, provincial, or federal agencies that regulate the Debtors' businesses; and (xvii) the banks listed on the attached Exhibit C. Following the hearing, a copy of this motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the motion is also available on the Debtors' case website at http://www.kccllc.net/coltdefense.

49.     As this motion is seeking "first day" relief, notice of this motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

**NO PRIOR MOTION**

50.     The Debtors have not made any prior motion for the relief sought in this motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated:   June 15, 2015
         Wilmington, Delaware

                                        /s/ Jason M. Madron
                                        **RICHARDS, LAYTON & FINGER, P.A.**
                                        Mark D. Collins (No. 2981)
                                        Jason M. Madron (No. 4431)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 651-7700
                                        Facsimile: (302) 651-7701

                                        - and -

                                        **O'MELVENY & MYERS LLP**
                                        John J. Rapisardi (*pro hac vice* admission pending)
                                        Joseph Zujkowski (*pro hac vice* admission pending)
                                        Diana M. Perez (*pro hac vice* admission pending)
                                        Times Square Tower
                                        Seven Times Square
                                        New York, New York 10036
                                        Telephone: (212) 326-2000
                                        Facsimile: (212) 326-2061

                                        *Proposed Attorneys for the*
                                        *Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                        : Chapter 11
                                                              :
COLT HOLDING COMPANY LLC, *et al.*,[1]                        : Case No. 15-11296 (   )
                                                              :
                                               Debtors.       :
                                                              : Joint Administration Requested
                                                              :
                                                              :
------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**") (i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); (iv) extending time to comply with section 345(b) of the Bankruptcy Code; and (v) authorizing the continued performance of certain transactions between and among the Debtors (the "**Intercompany Transactions**") consistent with historical practice and granting administrative expense priority to Intercompany

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Maib Declaration, the record of the Hearing, and all of the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted on an interim basis as set forth herein.

2.     The final hearing (the "**Final Hearing**") on the Motion will be held on _____, 2015, at__:__ _.m. (Eastern Daylight Time). Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (Eastern Daylight Time) on _____, 2015, and served on the following parties: (i) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.); (ii) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York

2

10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), proposed co-counsel for the Debtors; (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.), proposed co-counsel for the Debtors; (iv) Cortland Capital Market Services LLC, 225 W. Washington Street, Suite 2100, Chicago, Illinois 60606 (Attn: Ryan Morick and Legal Department), as Prepetition Senior Loan Agent; (v) counsel to the Prepetition Senior Loan Agent; (vi) Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801 (Attn: Kristin Moore), as Term Loan Agent; (vii) counsel to the Term Loan Agent; (viii) Wilmington Trust FSB, 246 Goose Lane, Suite 105, Guilford, Connecticut 06437, as Senior Notes Indenture Trustee; (ix) counsel to the Senior Notes Indenture Trustee; (x) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attention: Matthew B. Lunn, Esq. and Robert F. Poppiti, Jr., Esq.), co-counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (xi) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19899 (Attn: Robert Dehney, Esq.), co-counsel to the DIP Term Loan Lender and Prepetition Term Loan Lender; (xii) the Internal Revenue Service and Canada Revenue Agency; (xiii) the Securities and Exchange Commission; and (ix) the Pension Benefit Guaranty Corporation. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      Except as otherwise provided herein, the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and bank accounts consistent with their prepetition practices.

4.      The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any existing bank accounts. The banks are authorized to honor the Debtors' requests to close existing bank accounts or open new bank accounts.

5.      The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on the attached <u>Exhibit 1</u> (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, ACH transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

6.      All banks are authorized and directed to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim whether arising prior to,

4

on, or after, the Petition Date that this Court has granted the Debtors approval to pay; *provided that* the applicable Debtor Bank Accounts contain sufficient funds.

7.     All banks are authorized and directed to accept and honor all representations from the Debtors as to which Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court. No bank will be liable to the Debtors or their estates, or otherwise be in violation of the orders of this Court, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

8.     Notwithstanding anything to the contrary set forth herein, the Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; *provided*, *however*, that the Debtors are not authorized to transfer funds to non-Debtor affiliates or subsidiaries absent further order of this Court.

9.     All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under section 503(b) of the Bankruptcy Code. In connection with the Intercompany Transactions, the Debtors shall maintain records with respect to all transfers of cash so that all transactions (including Intercompany Transactions) may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions and shall make such records available to the U.S. Trustee upon request.

10.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived. The Debtor Bank accounts are deemed to be DIP Accounts.

11.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

12.     The Debtors are authorized to continue using all checks, correspondence, and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; *provided that* once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number to be printed on all checks; *provided further* that, with respect to electronic checks and checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of the date of entry of this Order.

13.     For banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall have 60 days from the Petition Date (the "**Extension Period**") within which to comply with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed with the U.S. Trustee, and that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of section 345(b) of the Bankruptcy Code in these cases. For banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy section 345(b) of the Bankruptcy Code.

14.     Within 15 days of the date of entry of this Order, with respect to banks at which the Debtors hold bank accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall (i) contact each bank; (ii) provide the bank with each of the

6

Debtors' tax identification numbers; and (iii) identify each of their bank accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

15.    Within 30 days of the date of entry of this Order, with respect to banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee. The Debtors will promptly direct such banks to internally code the Debtors' bank accounts as DIP Accounts. The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

16.    To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall give notice within 15 days after opening a new bank account or closing an existing bank account to (i) the U.S. Trustee; (ii) counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (iii) counsel to the DIP Term Loan Lender and Prepetition Term Loan Lender; and (iv) any statutory committees appointed in these chapter 11 cases; *provided that* the Debtors shall open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank willing to immediately execute such an agreement.

17.    Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

18.    Notwithstanding anything to the contrary in this Order, any payment made, or to be made, under this Order, and any authorization contained in this Order, shall be

7

subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facilities and use of cash collateral and any budget in connection therewith.

19.     Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

20.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

21.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

23.     This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2015
         Wilmington, Delaware


_____
          United States Bankruptcy Judge

RLF1 12228297v.1

## Exhibit 1

### Debtor Bank Accounts

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Defense LLC | JPMorgan Chase | 270 Park Avenue, New York City, NY 10017 | 1 103 | Collateral for standby letters of credit |
| Colt Defense LLC | BMO Harris Bank N.A. | 234 Simcoe Street 3rd Floor, Toronto Ontario M5T1T4 | 636-6 | Collateral for standby letters of credit |
| Colt Defense LLC | Interaudi Bank | 19 East 54th St New York, NY 10022 | 10 01 | Collateral for performance bond |
| Colt's Manufacturing Company LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 9395 | Concentration Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 8611 | Depository Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2949 | Operating Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2964 | Accounts Payable Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3093 | Payroll Account |
| Colt Defense Technical Services LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3143 | Concentration Account |
| Colt Defense LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 4636 | Concentration Account |
| Colt Defense LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3127 | Concentration Account |
| New Colt Holding Corp. | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3150 | Concentration Account |

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7549 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7531 | Colt Canada Corp. CAD AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7564 | Colt Canada Corp. EURO AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7556 | Colt Canada Corp. EURO AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8241 | Colt Canada Corp. USD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8258 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3104 | Colt Canada Corp. USD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3203 | Colt Canada Corp. CAD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3211 | Colt Canada Corp. CAD AP |

RLF1 12228297v.1

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3112 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3401 | Colt Canada Corp. Euro AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3419 | Colt Canada Corp. Euro AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3524 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3516 | Colt Canada Corp. CAD AP |
| Colt Security LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3119 | Concentration Account |
| Colt International Coöperatief U.A. | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 5012 | Concentration Account |
| Colt International Coöperatief U.A. | Societe Generale | AMSTELPLEIN 1 1096 HA Amsterdam, The Netherlands | 4004 | Concentration Account |

3

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re:                                          : Chapter 11
                                                :
COLT HOLDING COMPANY LLC, *et al.*,[1]          : Case No. 15-11296 (   )
                                                :
                                                :
                                  Debtors.       : Joint Administration Requested
                                                :
                                                :

---------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this

"**Order**") (i) authorizing the Debtors to continue to use their centralized cash management

system (the "**Cash Management System**") and bank accounts; (ii) waiving certain bank account

and related requirements of the Office of the United States Trustee for the District of Delaware

(the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices

under the Cash Management System (subject to certain reasonable changes to the Cash

Management System that the Debtors may implement); (iv) extending time to comply with

section 345(b) of the Bankruptcy Code; and (v) authorizing the continued performance of certain

transactions between and among the Debtors (the "**Intercompany Transactions**") consistent

with historical practice and granting administrative expense priority to Intercompany

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and hearings having been held to consider the relief requested in the Motion on an interim basis and on a final basis (together, the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis; and upon the Maib Declaration, the record of the Hearings, and all of the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Except as otherwise provided herein, the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and bank accounts consistent with their prepetition practices.

3.      The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any existing bank accounts. The banks are

2

authorized to honor the Debtors' requests to close existing bank accounts or open new bank accounts.

4.     The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on the attached <u>Exhibit 1</u> (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, ACH transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

5.     All banks are authorized and directed to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim whether arising prior to, on, or after, the Petition Date that this Court has granted the Debtors approval to pay; *provided that* the applicable Debtor Bank Accounts contain sufficient funds.

6.     All banks are authorized and directed to accept and honor all representations from the Debtors as to which Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court. No bank will be liable to the

3

Debtors or their estates, or otherwise be in violation of the orders of this Court, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

7.     Notwithstanding anything to the contrary set forth herein, the Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; *provided*, *however*, that the Debtors are not authorized to transfer funds to non-Debtor affiliates or subsidiaries absent further order of this Court.

8.     All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under section 503(b) of the Bankruptcy Code. In connection with the Intercompany Transactions, the Debtors shall maintain records with respect to all transfers of cash so that all transactions (including Intercompany Transactions) may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions and shall make such records available to the U.S. Trustee upon request.

9.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived. The Debtor Bank accounts are deemed to be DIP Accounts.

10.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

11.     The Debtors are authorized to continue using all checks, correspondence, and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors

4

-1 of 53

in possession; *provided that* once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number to be printed on all checks; *provided further* that, with respect to electronic checks and checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of the date of entry of this Order.

13. For banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall have 60 days from the Petition Date (the "**Extension Period**") within which to comply with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed with the U.S. Trustee, and that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of section 345(b) of the Bankruptcy Code in these cases. For banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy section 345(b) of the Bankruptcy Code.

13. Within 15 days of the date of entry of this Order, with respect to banks at which the Debtors hold bank accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall (i) contact each bank; (ii) provide the bank with each of the Debtors' tax identification numbers; and (iii) identify each of their bank accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

14. Within 30 days of the date of entry of this Order, with respect to banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee. The Debtors will

RLF1 12228297v.1

promptly direct such banks to internally code the Debtors' bank accounts as DIP Accounts. The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

15.    To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted pursuant to paragraph 3 hereof, the Debtors shall give notice within 15 days after opening a new bank account or closing an existing bank account to (i) the U.S. Trustee; (ii) counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (iii) counsel to the DIP Term Loan Lender and Prepetition Term Loan Lender; and (iv) any statutory committees appointed in these chapter 11 cases; *provided that* the Debtors shall open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute such an agreement.

16.    Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

17.    Notwithstanding anything to the contrary in this Order, any payment made, or to be made, under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facilities and use of cash collateral and any budget in connection therewith.

18.    Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or

6

perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

19.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

20.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

22.     This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2015
       Wilmington, Delaware


_____
                 United States Bankruptcy Judge

## Exhibit 1

### Debtor Bank Accounts

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Defense LLC | JPMorgan Chase | 270 Park Avenue, New York City, NY 10017 | 1 103 | Collateral for standby letters of credit |
| Colt Defense LLC | BMO Harris Bank N.A. | 234 Simcoe Street 3rd Floor, Toronto Ontario M5T1T4 | 636-6 | Collateral for standby letters of credit |
| Colt Defense LLC | Interaudi Bank | 19 East 54th St New York, NY 10022 | 10 01 | Collateral for performance bond |
| Colt's Manufacturing Company LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 9395 | Concentration Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 8611 | Depository Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2949 | Operating Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2964 | Accounts Payable Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3093 | Payroll Account |
| Colt Defense Technical Services LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3143 | Concentration Account |
| Colt Defense LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 4636 | Concentration Account |
| Colt Defense LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3127 | Concentration Account |
| New Colt Holding Corp. | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3150 | Concentration Account |

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7549 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7531 | Colt Canada Corp. CAD AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7564 | Colt Canada Corp. EURO AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7556 | Colt Canada Corp. EURO AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8241 | Colt Canada Corp. USD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8258 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3104 | Colt Canada Corp. USD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3203 | Colt Canada Corp. CAD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3211 | Colt Canada Corp. CAD AP |

2

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3112 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3401 | Colt Canada Corp. Euro AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3419 | Colt Canada Corp. Euro AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3524 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3516 | Colt Canada Corp. CAD AP |
| Colt Security LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3119 | Concentration Account |
| Colt International Coöperatief U.A. | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 5012 | Concentration Account |
| Colt International Coöperatief U.A. | Societe Generale | AMSTELPLEIN 1 1096 HA Amsterdam, The Netherlands | 4004 | Concentration Account |

3

## Exhibit C

## Debtor Bank Accounts

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Defense LLC | JPMorgan Chase | 270 Park Avenue, New York City, NY 10017 | 1 103 | Collateral for standby letters of credit |
| Colt Defense LLC | BMO Harris Bank N.A. | 234 Simcoe Street 3rd Floor, Toronto Ontario M5T1T4 | 636-6 | Collateral for standby letters of credit |
| Colt Defense LLC | Interaudi Bank | 19 East 54th St New York, NY 10022 | 10 01 | Collateral for performance bond |
| Colt's Manufacturing Company LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 9395 | Concentration Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 8611 | Depository Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2949 | Operating Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 2964 | Accounts Payable Account |
| Colt's Manufacturing Company LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3093 | Payroll Account |
| Colt Defense Technical Services LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3143 | Concentration Account |
| Colt Defense LLC | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 4636 | Concentration Account |
| Colt Defense LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3127 | Concentration Account |
| New Colt Holding Corp. | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3150 | Concentration Account |

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7549 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7531 | Colt Canada Corp. CAD AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7564 | Colt Canada Corp. EURO AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 7556 | Colt Canada Corp. EURO AP |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8241 | Colt Canada Corp. USD AR |
| Colt Canada Corporation | Wells Fargo | Wells Fargo Bank, N.A. MAC # N9308-211 100 S 5th Street Minneapolis, MN 55402 | 8258 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3104 | Colt Canada Corp. USD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3203 | Colt Canada Corp. CAD |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3211 | Colt Canada Corp. CAD AP |

2

| Account Holder | Bank Name | Bank Address | Last Four Digits of Bank Account No. | Purpose of Funds |
|---|---|---|---|---|
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3112 | Colt Canada Corp. USD AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3401 | Colt Canada Corp. Euro AP |
| Colt Canada Corporation | Bank of America | 1250 Boulevard Rene Levesque West Montreal, Québec H3B 4W8 | 3419 | Colt Canada Corp. Euro AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3524 | Colt Canada Corp. CAD AR |
| Colt Canada Corporation | RBC | 180 Wellington St West, 5th Floor Toronto, ON M55 151 | 3516 | Colt Canada Corp. CAD AP |
| Colt Security LLC | Wells Fargo | 420 Montgomery San Francisco, CA 94104 | 3119 | Concentration Account |
| Colt International Coöperatief U.A. | Bank of America | 100 North Tryon St. Charlotte, NC 28255 | 5012 | Concentration Account |
| Colt International Coöperatief U.A. | Societe Generale | AMSTELPLEIN 1 1096 HA Amsterdam, The Netherlands | 4004 | Concentration Account |

3

**<u>Exhibit D</u>**

**Debtors' Cash Management System**

# U.S. Cash Management System

RLF1 12228297v.1



# Canadian Cash Management System



