## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re:                                  :       Chapter 11
                                        :
COLT HOLDING COMPANY LLC, *et al.*,[1]   :       Case No. 15-11296 (   )
                                        :
                       Debtors.         :       Joint Administration Requested
                                        :
                                        :
---------------------------------------------------------------x

### DEBTORS' MOTION, PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365, AND FED. R. BANKR. P. 2002, 6004, 6006, 9008 AND 9014, FOR ENTRY OF (A) AN ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) SCHEDULING THE HEARING TO CONSIDER APPROVAL OF SUCH SALE, AND (V) GRANTING CERTAIN RELATED RELIEF; AND (B) AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Colt Holding Company LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") respectfully request by this motion entry of (i) an order (the "**Bid Procedures Order**"), substantially in the form attached hereto as Exhibit A (a) approving procedures (the "**Bid Procedures**") for submitting bids for the purchase of substantially all of the Debtors' assets (the "**Assets**"), (b) approving the Safeguard Procedures (defined below), (c) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "**Designated Contracts**") in connection with such sale, (d)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

scheduling a deadline to submit bids for the Assets and a hearing to consider approval of the proposed sale (the "**Sale Transaction**") of the Debtors' Assets (the "**Sale Hearing**"), (e) approving the form and manner of notice of (1) the date, time and place of the hearing to consider entry of the Bid Procedures Order (the "**Bid Procedures Hearing**"), (2) the deadline to submit bids for the Debtors' Assets, (3) the assumption and assignment of certain Designated Contracts in connection with the sale of the Debtors' Assets, (4) the date, time and place of the Sale Hearing, and (5) granting certain related relief (collectively, (1)-(5), the "**Bid Procedures Relief**"), and (ii) an order (the "**Sale Order**"), substantially in the form attached hereto as Exhibit B, approving the sale of substantially all of the Debtors' Assets. In further support of this motion, the Debtors rely upon and incorporate by reference *Keith A. Maib's Declaration in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Maib Declaration**"), filed concurrently with this motion.[2]  In further support of the motion, the Debtors, by and through their undersigned counsel, respectfully represent:

<u>**JURISDICTION & VENUE**</u>

1.    This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[3]

---

[2] Capitalized terms not otherwise defined in this motion have the meanings used in the Maib Declaration.

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby expressly confirm their consent to the entry of a final order by this Court in connection with this motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

## **BACKGROUND**

A.    **Chapter 11 Filings**

2.    On June 14, 2015 (the **"Petition Date"**), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Debtors are one of the world's oldest and most renowned designers, developers, and manufacturers of firearms for military, law enforcement, personal defense, and recreational purposes. The Debtors' end customers encompass every segment of the worldwide firearms market, including U.S., Canadian, and foreign military forces, global law enforcement and security agencies, consumers seeking personal protection, the hunting and sporting community, and collectors. Headquartered in West Hartford, Connecticut, the Debtors operate manufacturing facilities in West Hartford and Kitchener, Ontario, Canada.

4.    Additional information on the Debtors' businesses and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the Maib Declaration.

B.    **Events Leading to the Sale Process**

5.    As set forth in the Maib Declaration, over the last nine months the Debtors have been involved in an intensive effort to address liquidity issues resulting from their overleveraged capital structure. At the end of 2014 and early 2015, the Debtors successfully refinanced their existing secured loans. Following those successful refinancings, the Debtors sought to engage in a restructuring dialogue with the holders (the **"Senior Noteholders"**) of the $250 million outstanding principal amount of 8.75% senior notes due 2017 (the **"Senior Notes"**), which carried burdensome cash interest payments of $22 million each year and the prospect of a

- 3 -

looming maturity in 2017. Approximately one-fourth of the outstanding principal amount of the Senior Notes (approximately $61 million) are held by retail holders that total approximately 2,700 in number (the "**Retail Holders**"). The remaining balance of the Senior Notes (approximately $189 million) are held principally by institutional holders (the "**Institutional Holders**"), many of whom purchased the notes in the secondary market.

6.     On April 14, 2015 and June 1, 2015, respectively, the Company solicited acceptances of a prepackaged chapter 11 plan of reorganization (the "**Initial Prepackaged Plan**") and an amended prepackaged chapter 11 plan (the "**Amended Prepackaged Plan**") from the Senior Noteholders. Unfortunately, both the Initial Prepackaged Plan and Amended Prepackaged Plan were rejected by the Senior Noteholders. The vote, however, reflected a significant divide between Institutional Holders and Retail Holders: Approximately 77% of the total number of the Senior Notes that voted on the Initial Prepackaged Plan voted to accept, indicating strong support from Retail Holders, although only 5.1% of the outstanding principal amount of the Senior Notes voted in favor the Initial Prepackaged Plan.

7.     The latest rejection of the Amended Prepackaged Plan is particularly disappointing because it had the support of both the Secured Lenders and the Landlord (defined below) of the Debtors' manufacturing facility located in West Hartford, Connecticut under the terms of an agreed upon restructuring support agreement and restructuring term sheet (the "**RSA**") that set forth the terms of the debtor in possession financing loans and an exit facility that would provide for financing upon confirmation of the Amended Prepackaged Plan. The RSA also contained an indication from the Debtors' equity sponsor, Sciens Capital Management ("**Sciens**" or the "**Sponsor**") to contribute $5 million in incremental capital in the form of non-cash pay preferred equity and an increase in the amount of notes offered to Senior Noteholders

- 4 -

by approximately $34 million, from $78.3 million to $112.5 million Had the Amended Prepackaged Plan been accepted and confirmed, the Debtors would have been able to quickly emerge with a consensual chapter 11 plan that delevered the Debtors' balance sheet, while at the same time providing substantial value to the Senior Noteholders in the form of new notes with secured lienholder status.

## C.    Liquidity Issues

8.    As disclosed in the Maib Declaration, the Debtors' businesses have been negatively impacted by tightening liquidity, which has put pressure on the Debtors' ability to retain important U.S. and foreign government accounts—business that accounts for almost 40% of the Debtors' revenues. Any further deterioration in the Debtors' financial situation will put the Debtors in further harm's way with the respect to maintaining U.S. and foreign government business. As a result, when it became apparent to the Debtors that the Amended Prepackaged Plan would not achieve the requisite consents from the Senior Noteholders, the Debtors determined that they need to move forward on an expedited basis with the orderly sale of their business as a going concern, thereby providing the most value maximizing strategic alternative for the benefit of all of the Debtors' stakeholders.

9.    Critical to the success of the sale process will be approval and consummation of a sale of the Debtors' businesses without significant disruption or delay. Equally important is that the Debtors' customers and contractors be reassured that the sale process will be completed and will feature a purchaser that readily demonstrates the ability to capture the confidence of the Debtors' management, employees, vendors, and suppliers and government contractors, and Landlord, all of whom are critical and essential to the Debtors' continued viability and long-term success. The goal of the 363 sale process, as described herein, is to ensure the Debtors continue as a going concern, which will preserve asset value, maintain

the jobs of more than 800 employees, preserve employee and retiree benefits, ensure payment in full of trade creditors, vendors, employees, and maintain important contracts.

**D.    Preparing for the Sale Process**

10.    As noted in the Maib Declaration, while a formal marketing process to canvas widespread interest in potential bidders for the Company's Assets did not occur prior to the Petition Date, the Debtors' expended significant time and energy assisting the due diligence efforts of certain of the Institutional Noteholders who may in fact be interested bidders in the 363 sale process. The Debtors pre-petition due diligence efforts will clearly benefit the sale process described herein, as one group of potential bidders has already performed extensive due diligence with the assistance of the Debtors and the Debtors are prepared to provide due diligence materials to other potentially interested purchasers.

11.    Additionally, in light of the rejection of the Amended Prepackaged Plan, the Debtors have directed their investment banker, Perella Weinberg Partners, to prepare a list of potential buyers for the Debtors' Assets and to prepare an informational package for interested parties, including a non-disclosure agreement to access additional information through an electronic data room. The goal of these efforts is to allow for the immediate launch of a fair and transparent marketing process. To this end, the Debtors and their advisors intend to actively market the Assets in order to maximize creditor recoveries.

12.    In preparation for the commencement of the chapter 11 cases, the Debtors sought out debtor in possession financing and ultimately negotiated with their Secured Lenders to obtain $20 million of postpetition financing, which the Debtors believe will provide them with sufficient liquidity to conduct an orderly sale process. The proposed DIP Facilities contains certain milestones in connection with the conduct of a 363 sale process that are intended to provide the Debtors with sufficient runway to conduct a robust marketing and sale process, while

ensuring that the process progresses on a timeline that preserves value and minimizes the deterioration of the Debtors' businesses.

13.    In connection with the proposed 363 process, the Debtors also entered into discussions with the Sponsor to serve as the stalking horse bidder (the "**Stalking Horse Purchaser**" or "**NewCo**"), subject to the terms set forth in the sale term sheet attached hereto as Exhibit C (the "**Sale Term Sheet**"). The Debtors intend to file an executed asset purchase agreement among the Stalking Horse Purchaser and the Debtors (the "**Stalking Horse Agreement**") by June 29, 2015.

14.    The Sale Term Sheet includes reference to NewCo, a new entity organized by Sponsor, as the Stalking Horse Purchaser subject to terms agreeable to the Sponsor and subject to review and approval of certain independent directors of the Company's board. As a result of the Sponsor's expressed interest to participate in the 363 sale process as a bidder, the Board appointed a committee of independent directors (the "**Independent Committee**") vested with exclusive approval authority over all aspects of the section 363 sales process.[4] The Independent Committee consists of the following, none of whom are affiliated with the Sponsor: (i) General George W. Casey, Jr., whose 41 year career in the U.S. army included service as the Chief of Staff of the United States Army from April 2007 to April 2011 and service as the Commander, Multinational Force — Iraq from July 2004 to February 2007, (ii) Alan B. Miller, a co-founder of the Business and Restructuring Practice of Weil, Gotshal & Manges LLP, and (iii) Field Marshal the Lord Guthrie of Craigiebank, whose 40 year military career included service as Chief of the Defense Staff, Chief of the General Staff, and the Principal Military Advisor to two U.K. prime ministers and three U.K. Secretaries of State for Defense.

---

[4] The Sponsor and its designees on the Governing Board of the Debtors endorsed and actively supported the creation of the Independent Committee.

15.    The Independent Committee requested that the Sponsor submit to the Independent Committee a formal expression of interest upon which it could assess the merits and terms of the Sponsor proposal to act as Stalking Horse Purchaser (the "**Stalking Horse Bid**"). Upon receipt of the materials, the Independent Committee met and deliberated about the terms of the Stalking Horse Bid (defined below). The Committee sought to ensure itself that the process would be conducted (i) in a manner fair in all respects to all prospective bidders for the Debtors' Assets; (ii) encourage competitive bidding to maximize the purchase price for the Debtors' Assets; and (iii) minimize delay and objection, thereby allowing the Debtors to exit chapter 11 rapidly as a going concern for the benefit of all interested parties.

16.    The Independent Committee satisfied itself that the Stalking Horse Bid would give the Debtors an attractive opportunity in terms of uninterrupted continuity of the Debtors' businesses, maximize recoveries, and provide a baseline bid that offers the Debtors the best chance for a successful and quick emergence from chapter 11.

17.    The Independent Committee is mindful that the Debtors' lease for the West Hartford Facility (the "**West Hartford Facility Lease**") is scheduled to expire on October 25, 2015 and that NPA Hartford LLC ("**NPA**" or the "**Landlord**") is prepared to extend the term of the lease for Newco on the terms and conditions expressed in the Sale Term Sheet. The Committee is also aware that certain members of Sciens' management hold limited partnership interests in NPA and that two of Sciens' members are managing members of NPA. The Committee has been further advised by Sciens that all decision making authority for NPA with respect to an extension of the West Hartford Facility Lease in the context of the Debtors' contemplated chapter 11 cases and section 363 sale has been vested in the holder of the largest individual limited partner of NPA (the "**Independent Partner**") who has no investments in

- 8 -

Sciens or the Debtors. The Independent Committee believes that the continuity and opportunity for an extension of the West Hartford Facility Lease will be an important factor in determining what constitutes a higher and better offer in the 363 sale process. The Independent Committee believes that because Sciens is affiliated with the Landlord it is important to implement certain safeguards that preserve the fairness and integrity of the 363 sale process and ensure that other parties will not be at a disadvantage to bid.

18.    With respect to the selection of NewCo as the Stalking Horse Purchaser for purposes of conducting the 363 sale and possible selection of NewCo as the Successful Bidder, the Independent Committee, on behalf of the Board of Directors, has directed the Debtors to take the following steps (collectively, the "**Safeguard Procedures**"):

(i) that Sciens will be requested to testify at the Bid Procedures Hearing that neither it nor any of its investors or members will have any role or undue influence in NPA's deliberations and decision with respect to extension of the terms of the West Hartford Facility Lease for any third party bidder in the section 363 sale;[5]

(ii) that the Independent Partner will be requested to testify at the Bid Procedures Hearing on NPA's behalf that due and fair consideration will be given to any other bidders in the 363 sale who seek to obtain an extension of the West Hartford Facility Lease on the same or similar terms as the Stalking Horse Purchaser and that NPA's lease extension offer to NewCo is not an exclusive offer;[6] and

(iii) that the Independent Partner with respect to any issues concerning the West Hartford Facility Lease (a) will be requested to meet with the Independent Committee prior to the Independent Committee's final determination of the Successful Bidder in order to satisfy the Independent Committee that the sale process was carried out in good faith by all parties involved as it relates to any issues concerning the West Hartford Facility Lease, and (b) will be requested to

---

[5] The Sponsor has already confirmed through its counsel that a representative of the Sponsor will be available to testify at the Bid Procedures Hearing with respect to these matters.

[6] Prior to the filing of these chapter 11 cases, counsel to NPA confirmed, subject to reserving its rights, that NPA is prepared to consider any potential lessee and to discuss and potentially negotiate an extension of the West Hartford Facility Lease with any Qualified Bidder at the Auction.

- 9 -

testify at the Sale Hearing with respect to any issues concerning the West Hartford Facility Lease as it relates to the Sale Transaction.[7]

19.     The Independent Committee satisfied itself that the selection of NewCo as the Stalking Horse Purchaser pursuant to the terms and conditions of the Sale Term Sheet, conditioned on the foregoing Safeguard Procedures, would allow for a fair sale process and transaction that generates a fair sale price. The Independent Committee determined that the terms upon which the NewCo is willing to serve as the Stalking Horse Purchaser were attractive because the Stalking Horse Bid includes full assumption of the Company's existing secured debt and numerous forms of unsecured debt, including all vendor claims, trade payables, employee related obligations, and the absence of a break-up fee and exclusivity provisions. As a result, in the Independent Committee's reasoned view the Stalking Horse Bid presents a solid floor upon which other potential third-party bidders could fairly bid against. In the Independent Committee's judgment, critical to the stalking horse selection is an expedited process and result that instills confidence in vendors, contractors, suppliers, lenders, and employees that the Debtors will swiftly exit chapter 11 with all of its iconic brands, products, and operations, supported by a stronger balance sheet due to a significantly lower debt burden.

20.     With the Safeguard Procedures in place, the Independent Committee further believes that approval of the Stalking Horse Purchaser will not discourage competitive bidding to the unfair advantage of NewCo and at the expense of other potential bidders. Moreover, NewCo's status as the Stalking Horse Purchaser and familiarity with the business will not necessarily give it an unfair informational advantage because the Debtors have in place an extensive data room of confidential information that can be readily made available to parties expressing a willingness to participate in the Auction and entering into a confidentiality

---

[7] These Safeguard Procedures should also incorporate by reference those representations made by counsel to the Sponsor and Landlord as referred to here in this motion.

- 10 -

agreement.[8] Based on these considerations and the Safeguard Procedures, among other things, the Independent Committee determined that selection of NewCo as the Stalking Horse Purchaser as the starting point for other potential bids is in the best interest of the Debtors' estates.

## RELIEF REQUESTED

21.    Pursuant to Bankruptcy Code sections 105, 363, and 365, and Bankruptcy Rules 2002, 6004, 6006, 9008 and 9014, and Local Rules 2002-1 and 6004-1, the Debtors respectfully request that the Court grant the following relief in connection with the Sale Transaction to the Stalking Horse Purchaser or such other bidder or bidders who submits the highest or otherwise best offer at the conclusion of the Auction (the "**Successful Bid**"), which bidder(s) may be selected by the Debtors, subject to Bankruptcy Court approval and any applicable consultation rights (as set forth in the Bid Procedures), as the winning bidder(s) (the "**Successful Bidder**").

22.    First, the Debtors request entry of the Bid Procedures Order, which will authorize and approve, among other things: (i) the Bid Procedures for the conduct of the auction of the Assets (the "**Auction**"), substantially in the form attached as Exhibit A to the Bid Procedures Order; (ii) the procedures for the assumption and assignment of certain contracts and leases (the "**Assumption and Assignment Procedures**") to the Successful Bidder and the resolution of any objections thereto and related notices; (iii) the scheduling of the Sale Hearing to approve any such Sale Transaction with respect to any bid accepted by the Debtors; and (iv) the form and manner of notice with respect to the proposed sale of the Assets, the Bid

---

[8] It should be noted that the professionals representing the Institutional Holders for purposes of evaluating the Initial Prepackaged Plan and Amended Prepackaged Plan were given extensive information concerning the Debtors and their operations through numerous meetings with the Debtors' management and access to hundreds of documents in the data room. *See* Maib Declaration.

Deadline (as defined below), the Auction, and the Sale Hearing (the "**Sale Notice**"), substantially in the form attached as Exhibit B to the Bid Procedures Order.

23.    Second, at the Sale Hearing, the Debtors will also request entry of the Sale Order that will, *inter alia*, approve (i) the sale of the Assets pursuant to sections 105, 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, 9008, and 9014 in accordance with the terms of an asset purchase agreement executed by the Stalking Horse Purchaser or such other person or entity that is the Successful Bidder, which asset purchase agreement (the "**APA**") shall be free and clear of all liens, claims, encumbrances, and other interests, including rights or claims based on any taxes or successor or transferee liability (other than certain expressly specified permitted encumbrances and assumed liabilities, all as more specifically set forth in the applicable APA); and (ii) the assumption and assignment of certain executory contracts and unexpired leases related to the Assets and the Sale Transaction pursuant to sections 363 and 365 of the Bankruptcy Code.

## I. Sale Notice, Bid Procedures, Auction and Related Deadlines[9]

24.    The sale process and Bid Procedures are designed to maximize value for the Debtors' estates and ensure that a robust marketing and sales process is undertaken by the Debtors while complying with the milestones under the Debtors' DIP Facility. The process and Bid Procedures set forth below are the result of arm's-length negotiations between the Debtors, the Secured Lenders, and the Sponsor.

## A.    Notice of Sale, Auction, Sale Hearing, and Related Deadlines

25.    The Debtors propose the following notice and other procedures to be

---

[9] Capitalized terms used but not defined in this section of the Motion shall have the meanings ascribed to them in the Bid Procedures. To the extent of any inconsistency between this summary and the Bid Procedures, the Bid Procedures shall control.

implemented in connection with the sale process:

(a)    <u>Notice of Sale, Auction, and Sale Hearing</u>: Within three (3) business days after entry of the Bid Procedures Order, the Debtors (or their agents) shall:

    i.    Serve the Sale Notice by email, mail, facsimile, or overnight delivery service, upon: (i) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.); (ii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.); (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.); (v) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois 60603; (vi) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.); (vii) the IRS; (viii) all known parties that have previously expressed a bona fide interest in purchasing the Assets in the twelve (12) months preceding the date of the Motion; (ix) the Attorneys General in the States where the Assets are located; (x) all parties having filed requests for notices in these chapter 11 cases; (xi) all relevant local taxing authorities; (xii) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets; and (xiii) counterparties to any of the Debtors' material contracts and leases, including the landlord to the Debtors' manufacturing facility located in West Hartford, Connecticut (collectively, the "**Sale Notice Parties**");

    ii.    Publish a summary version of the Sale Notice on one occasion in *The New York Times* or *The Wall Street Journal* and *Globe & Mail (national edition)*; and

    iii.    Cause the Sale Notice to be published on the website maintained by the Debtors' proposed claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/coltdefense (the "**Website**").

(b)    <u>Date, Time, and Place of Auction</u>: The Auction shall be conducted at the offices of O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 and commence on **August 3, 2015 at 10:00 a.m. (EDT)**.

(c)    <u>Date, Time, and Place of Sale Hearing</u>: The Sale Hearing shall be conducted by the Court on **August 7, 2015 at 10:00 a.m. (EDT)** or such date as soon thereafter as the Court is available and may be adjourned or

rescheduled without notice. At the Sale Hearing, the Debtors will seek Court approval of the Successful Bid. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction and there will be no further bidding at the Sale Hearing.

(d)    <u>Notice of Successful Bid</u>: As soon as immediately practicable after the determination of the Successful Bid, but no later than one business day after conclusion of the Auction, the Debtors will provide electronic notice of the results of the Auction by filing a notice on the Court's docket and on the Website identifying the Successful Bid.

(e)    <u>Objection Deadline to Sale Order</u>: Objections to the relief sought in the Sale Order shall be in writing, filed and served so as to be actually received by (i) O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), proposed co-counsel to the Debtors, (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.), proposed co-counsel to the Debtors, (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.), counsel to the Prepetition Term Loan Lenders and Prepetition Term Loan Agent, (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Prepetition Senior Loan Lenders, (v) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois 60603, counsel to the Prepetition Senior Loan Agent, (vi) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the Sponsor, (vii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.), (viii) the IRS, (ix) the United States Department of Justice, and (x) any persons who have filed a request for notice in the above-captioned chapter 11 cases (collectively, the **"Objection Notice Parties"**), no later than July 31, 2015 at 4:00 p.m. (EDT).

(f)    <u>Data Room</u>: Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (it being understood that any person or entity who previously signed a confidentiality agreement in a form satisfactory to the Debtors shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder (as defined below) so as to be received by each of the following parties prior to any dissemination of confidential information: (i) Perella Weinberg Partners LP, 767 Fifth Avenue, New York, NY 10153 (Attn: Nikhil Menon) ;

- 14 -

(ii) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.); and (iii) the Debtors, 547 New Park Avenue, West Hartford, Connecticut 06110 (Attn: John H. Coghlin, General Counsel) (collectively, the "**Bid Notice Parties**"). Copies of any confidentiality agreements shall be provided to counsel to: (i) the Prepetition Senior Lenders and Senior DIP Lenders, (ii) the Prepetition Senior Loan Agent and Senior DIP Agent, (iii) the Prepetition Term Lenders and Term DIP Lenders, and (iv) the Prepetition Term Agent and Term DIP Agent (collectively, the "**Consultation Parties**"). The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit the access of strategic parties to the data room.

**B.    The Bid Deadline and Bid Procedures**

26.    The deadline for a Potential Bidder to submit bids shall be **July 30, 2015 at 5:00 p.m. (EDT)** (the "**Bid Deadline**"). Any Potential Bidder who fails to submit a bid so as to be actually received by the Bid Notice Parties in advance of the Bid Deadline shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder. The Debtors shall not be required to consider bids submitted after the Bid Deadline, but may do so in consultation with the Consultation Parties.

27.    Selection of NewCo as the Stalking Horse Purchaser pursuant to the terms of the Sale Term Sheet remain subject to the Safeguard Procedures and Bankruptcy Court approval.

28.    Before the Bid Deadline, a Potential Bidder that desires to make a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the Potential Bidder. Each bid shall be served on each of the Bid Notice Parties by courier, facsimile, e-mail or as otherwise specified by the Debtors. The Debtors shall promptly provide copies of any such bid received to the Consultation Parties.

29.    The Debtors, with the prior written consent of the Consultation Parties or upon obtaining authorization from the Bankruptcy Court, may extend the Bid Deadline once or

successively, but are not obligated to do so; *provided, however*, that the cumulative length of any such extensions shall not be longer than seven days. The Debtors shall not be required to consider bids submitted after the Bid Deadline, but may do so in consultation with the Consultation Parties.

30.    The Debtors believe that the Bid Procedures are appropriate and provide the Debtors with the best opportunity to maximize the recovery for the Debtors and their estates in connection with the sale of the Assets. The Bid Procedures provide an appropriate framework for selling the Assets in an orderly fashion and will enable the Debtors to review, analyze and compare all bids received to determine which bid(s) are in the best interests of the Debtors, their estates and creditors. Furthermore, the Debtors believe that the Bid Procedures are designed to ensure that the Debtors do not discourage any Potential Bidder from participating in the Auction and, thus, to maximize the value of the Assets.

31.    Certain of the key terms of the Bid Procedures are highlighted below, in accordance with Local Rule 6004-1(c):

| | |
|---|---|
| **Deadlines** (Local Rule 6004-1(c)(i)(B)*)* | Proposed Bid Procedures Objection Deadline: June 29, 2015 at 4:00 p.m. (EDT) |
| | Proposed Bid Procedures Hearing Date: July 13, 2015 |
| | Proposed Bid Deadline: July 30, 2015 at 5:00 p.m. (EDT) |
| | Proposed Sale Hearing Objection Deadline: July 31, 2015 at 4:00 p.m. (EDT) |
| | Proposed Date of Auction: August 3, 2015 at 10:00 a.m. (EDT) |
| | Proposed Sale Hearing Date: August 7, 2015, or such date as soon thereafter as the Court is available. |
| **Assets to be Sold** | The Auction shall consist of substantially all of the assets owned by the Debtors excluding only the Excluded Assets (as defined in the Sale Term Sheet); *provided, however*, that the Debtors reserve the right, in consultation with the Consultation Parties, to accept unsolicited bids for less than substantially all of the Assets. |
| **Stalking Horse** | The aggregate consideration the Debtors will receive under the Stalking Horse Agreement will be: (i) the assumption of the Senior Loan, the Term Loan and |

| | |
|---|---|
| | DIP Facilities extended by the Prepetition Senior Lenders and the Prepetition Term Loan Lenders in their entirety, (ii) the assumption of the Assumed Liabilities and (iii) the assumption of the executory contracts and unexpired leases as set forth in the Asset Purchase Agreement. |
| **Potential Bidders** | A **"Potential Bidder"** is a person or entity that the Debtors, after consultation with the Consultation Parties, determine is reasonably likely to: (a) submit a *bona fide* offer for substantially all of the Assets and (b) be able to consummate the Sale Transaction if selected as a Successful Bidder. |
| **Due Diligence** | Upon execution of a confidentiality agreement containing terms satisfactory to the Debtors, any prospective bidder identified by the Debtors as reasonably likely to be a Qualified Bidder that wishes to conduct due diligence on any of the Assets may be granted access to material information regarding such Assets, *provided that* if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information.<br><br>The Debtors shall provide to each Potential Bidder contact information for the Landlord under West Hartford Facility Lease. Each Potential Bidder is responsible for conducting its own due diligence regarding the terms under which the Landlord may extend the term of the West Hartford Facility Lease.<br><br>The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit data room access to strategic parties.<br><br>The Debtors may, in the exercise of their business judgment and after consultation with the Consultation Parties, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided, however*, that the Successful Bidder(s) shall be permitted to continue to conduct due diligence until closing of the Sale Transaction (subject to the terms of the applicable APA(s)); *provided, further*, however, that no Qualified Bid shall be subject to further due diligence after the Bid Deadline. |
| **Required Bid Materials** (Local Rule 6004-1(c)(i)(A)) | To participate in the Auction, a bidder must be a Potential Bidder and must deliver a written offer, which includes, at a minimum, the following items (the **"Required Bid Materials"**) prior to the Bid Deadline:<br><br>1. Two executed originals of an APA, in form and substance similar to the Stalking Horse Agreement, and other documents by which the Potential Bidder offers to purchase the Assets that are the subject of the bid from the Debtors at the purchase price and upon the terms and conditions as the Potential Bidder sets forth therein, together with a marked copy showing any proposed changes, amendments, or modifications to the Stalking Horse Agreement (and exhibits);<br><br>2. A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment |

in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, as may be modified in accordance with the Bid Procedures, is irrevocable until the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidders(s) (as defined below), and is not subject to any approvals, consents or conditions except as specified therein;

3. An offer to consummate the Sale Transaction for cash pursuant to the APA (or in the form of a credit bid pursuant to 363(k) of the Bankruptcy Code);

4. Terms that are not materially more burdensome than the terms of the Stalking Horse Agreement;

5. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures and that the offer constitutes a good faith bona fide offer to purchase all of the Assets;

6. Delivery by certified check or wire transfer of a good faith deposit in immediately available funds (the "**Deposit**") equal to 10% of the proposed purchase price. The Deposit shall be held in escrow and will be refunded on the terms set forth below;

7. Evidence or a statement indicating that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all consents required in connection with the submission and consummation of the bid have been obtained and that no other consents are required;

8. Evidence or a statement indicating that the bidder is able to perform under all contracts constituting Assets among any Debtor and any governmental entity;

9. Full disclosure of the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid;

10. A statement that the offering parties consent to the jurisdiction of the Court;

11. A statement that consummation of the Sale Transaction would not violate any laws, including federal or state antitrust laws, The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, et seq., and other applicable foreign or domestic anti-corruption, anti-

- 18 -

bribery, or anti-money laundering laws;

12. Evidence of sufficient cash on hand or written evidence of a binding, unconditional (except for customary closing conditions) commitment for financing or other evidence of the ability to consummate the Sale Transaction satisfactory to the Debtors, after consultation with the Consultation Parties, with appropriate contact (and any other necessary) information for such financing sources;

13. A list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors; an affirmation that the cure amounts will be the bidder's responsibility; and provision of adequate assurance of future performance with respect to such executory contracts and unexpired leases; and

14. Such other information as may be reasonably requested in writing by the Debtors, after consultation with the Consultation Parties, at least two calendar days prior to the Bid Deadline;

| | |
|---|---|
| **Qualified Bid** (Local Rule 6004-1(c)(i)(A), (C)) | A bid received from a Potential Bidder that (i) includes all of the Required Bid Materials, (ii) is actually received by the Bid Deadline, (iii) provides for the assumption of all of the Assumed Liabilities (as defined in Stalking Horse Agreement), (iv) provides value for the Debtors' estates of not less than $1 million above the value provided by the Stalking Horse Purchaser under the Stalking Horse Agreement, (v) is not subject to any due diligence or financing contingency, and (vi) does not request or entitle the bidder to any break-up fee, expense reimbursement, or similar type of payment is a **"Qualified Bid"** if the Debtors determine, after consultation with the Consultation Parties, that such bid evidences a *bona fide* interest and ability to purchase the Assets. |
| **Qualified Bidder** (Local Rule 6004-1(c)(i)(B)) | A Potential Bidder that submits a Qualified Bid (a **"Qualified Bidder"**) shall be entitled to participate in the Auction. The Debtors reserve the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid. The Debtors further reserve the right, after consultation with the Consultation Parties, to waive any of the requirements for a Qualified Bid. Within two (2) business days after the Bid Deadline, the Debtors shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder. For the avoidance of doubt, (i) the Stalking Horse Purchaser shall be considered both a Potential Bidder and a Qualified Bidder, (ii) the Stalking Horse Agreement shall constitute a Qualified Bid for all purposes under these Bid Procedures, and (iii) the Stalking Horse Purchaser shall not be required to make a Deposit. |
| **Back-Up Bidder** (Local Rule 6004-1(c)(i)(E)) | If an Auction is conducted, the Qualified Bidder with the next highest or otherwise next best Qualified Bid for the Assets at the Auction (the **"Back-Up Bid"**) will be required to serve as the back-up bidder (the **"Back-Up Bidder"**) for such Assets and keep such Back-Up Bid open and irrevocable until the first to occur of (i) 45 days after the completion of the Auction, (ii) consummation |

| | |
|---|---|
| | of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtors of the release by the Debtors of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on its part or otherwise, the Back-Up Bidder will be deemed the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court. |
| **Reservation of Rights** (Local Rule 6004-1(c)(i)(D)) | The Debtors, after consultation with the Consultation Parties, reserve the right to (i) modify the Bid Procedures, including, without limitation, modifying the requirements for a Qualified Bid, at or prior to the Auction, if such modification will better promote the goals of the Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the Proposed Sale, and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in an open court without further notice, in each case, in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court or the Canadian Court and the Debtors deem such modifications consistent with the performance of their fiduciary obligations. |

## C.    The Auction

32.     If, but only if, more than one Qualified Bid is received by the Debtors prior to the Bid Deadline, the Auction, which shall be subject to the Safeguard Procedures, shall take place at the offices of O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 and shall commence on **August 3, 2015 at 10:00 a.m. (EDT)**; *provided, however*, that the Debtors, after consultation with the Consultation Parties, shall have the right to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

33.     Only a Qualified Bidder who is designated as such by the Debtors, following consultation with the Consultation Parties, shall be eligible to participate at the Auction. The Qualified Bid selected by the Debtors as the highest or otherwise best bid (the "**Opening Bid**"), including the APA(s) under such bid, shall be provided to all other Qualified Bidders prior to the start of the Auction, redacted to conceal the identity of the Qualified Bidder submitting such Opening Bid. In considering which Qualified Bid shall be the Opening Bid, the

Debtors, in consultation with the Consultation Parties, will consider, among other things, the changes to the Stalking Horse Agreement required by the Qualified Bid and the Qualified Bidder's ability to finance and timely consummate the Sale Transaction. At the commencement of the Auction, the Debtors shall inform all Qualified Bidders present at the Auction of the identity of the Qualified Bidder that submitted the Opening Bid, as well as the identity of all other Qualified Bidders that will be participating in the Auction.

34.    The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtors as the Debtors deem necessary, in consultation with their restructuring advisors and the Consultation Parties, to better promote the goals of the Auction and to comply with their fiduciary obligations:

(a)    The Qualified Bidders shall appear in person at the Auction through a duly authorized representative.

(b)    Only representatives of (i) the Debtors, (ii) persons or entities making Qualified Bids (including the Stalking Horse Purchaser), (iii) the Consultation Parties, (iv) the Landlord, (v) the Office of the U.S. Trustee, and (vi) any statutory committee appointed in these cases shall be permitted to be present at the Auction.

(c)    The terms of each Qualified Bid selected from time to time by the Debtors, after consultation with the Consultation Parties, as being the highest or otherwise best offer at any such time (each such Qualified Bid selected at any time, the "**Leading Bid**") shall be fully disclosed to all other Qualified Bidders. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for any or all of the Assets at any time shall have no conditions other than those disclosed.

(d)    The Auction shall commence with the Debtors confirming the particulars of the Opening Bid and asking for higher or otherwise better offers. Bidding shall commence at the amount of the Opening Bid. Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than $1 million. The Debtors, after consultation with the Consultation Parties, reserve the right to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction.

- 21 -

(e)    The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtors, after consultation with the Consultation Parties, shall announce the Leading Bid. A Qualified Bidder that does not submit a Qualified Bid in any round of bidding with value greater than the Leading Bid as of the commencement of such round shall not be able to submit further bids in any subsequent round.

(f)    The Debtors shall provide for a court reporter to be present at and prepare a transcript of the Auction. The Debtors may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

(g)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed sale.

(h)    The Debtors, acting in good faith and in the exercise of their fiduciary duties to maximize value to their estates and after consultation with the Consultation Parties, may accept a combination of (i) a Qualified Bid for substantially all of the Assets and (ii) a Qualified Bid for less than substantially all of the Assets as the collective Leading Bid(s) or as the collective Successful Bid(s) if such Qualified Bids, taken together, constitute a sale of all or substantially all of the Assets without overlap.

(i)    All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective APA at the Auction to improve such bids.

(j)    The Auction may include individual negotiations with the Qualified Bidders and/or open bidding; *provided, however*, that all bids shall be made and received in one room, on an open basis, and each Qualified Bidders shall be entitled to be present for all bidding so long as such Qualified Bidder has submitted bids that comply with the requirements in each round of bidding and with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting each bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

(k)    The Debtors reserve the right, after consultation with the Consultation Parties, to (i) determine in their reasonable discretion which Qualified Bid is the highest or otherwise best and (ii) reject at any time, without liability, any bid that the Debtors, in their business judgment, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the order approving these Bid Procedures, or (3) contrary to the best interests of the Debtors and their estates.

RLF1 12228374v.1

(l)     The Auction shall continue until there is only one Qualified Bid (or a combination of (i) a Qualified Bid for substantially all of the Assets and (ii) Qualified Bids for less than substantially all of the Assets that, taken together, constitute a sale of all or substantially all of the Assets without overlap) that the Debtors determine, after consultation with the Consultation Parties and subject to Bankruptcy Court approval, constitutes the highest or otherwise best offer for the Assets from among the Qualified Bids submitted at the Auction (*i.e.* the Successful Bid(s)). In determining the Successful Bid(s), the Debtors, in the exercise of their business judgment, in consultation with the Consultation Parties, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the ability of the Qualified Bidder(s) to complete the sale contemplated by the Successful Bid(s) (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), the proposed timing thereof, the contracts being assumed by the Qualified Bidder(s), the rights of the Qualified Bidder(s) and the Debtors with respect to the termination thereof, ability to demonstrate continuity in terms of the Debtors' operations and ability to avoid undue liabilities or disruptions resulting from a change of control, the number, type and nature of any changes reflected in the APA(s) requested by the Qualified Bidder(s), and the net benefit to the Debtors' estates. The Successful Bidder(s) submitting such Successful Bid(s) for the Assets shall have the rights and responsibilities of the purchaser, as set forth in the APA(s) and in the terms and conditions of the Successful Bid(s) provided at the Auction. Prior to the Sale Hearing, the Successful Bidder(s) and the Debtors shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) was made (subject, in the case of the Debtors, to the qualifications set forth in paragraph 36 below).

35.     Each Qualified Bid submitted at the Auction shall constitute an irrevocable offer and be binding on the Qualified Bidder in accordance with the terms of the APA (as may be modified in accordance with the Bid Procedures) until the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s). Upon the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s), each Qualified Bid that is not a Successful Bid shall be deemed withdrawn and terminated.

36.     The Debtors intend to sell the Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Successful Bid(s). The Debtors will be deemed to have accepted the Successful Bid(s) only upon entry of the Sale Order.

37.     Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the escrow agent (the "**Escrow Agent**") and will not become property of the Debtors' estates absent further order of the Bankruptcy Court. Any interest earned on any Deposit shall be remitted to the appropriate Qualified Bidder if the Deposit is returned to such Qualified Bidder. Within five business days after the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s), the Escrow Agent shall return the Deposits made by any Qualified Bidders other than the Successful Bidder(s).

38.     If the Successful Bidder(s) fails to consummate the Sale Transaction because of a breach or failure to perform on the part of the Successful Bidder(s), the Debtors shall be entitled to retain the Deposit(s) of the Successful Bidder(s), if any, in addition to other additional remedies available to the Debtors under applicable law. The Debtors shall credit the Deposit(s) of the Successful Bidder(s), if any, towards the purchase price at the time of funding pursuant to the terms of the APA(s).

**II. Assumption Procedures**

39.     Within two days of entry of the Bid Procedures Order, the Debtors (or their agent) shall file with the Court and serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice on each counterparty to a Designated Contract set forth on such schedule a notice of assumption, assignment, and cure (the "**Assumption and Assignment Notice**"), substantially in the form attached as Exhibit C to the proposed Bid

- 24 -

Procedures Order, which includes: (i) the title of each Designated Contract, (ii) the name of the non-Debtor parties to such Designated Contract, (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under such Designated Contract in accordance with sections 365(b) and (f)(2) of the Bankruptcy Code (the "**Cure Amount**"), and (iv) the deadline by which any non-Debtor party to such Designated Contract must object to the assumption and assignment of such Designated Contract, upon the non-Debtor parties to such Designated Contract. A list of the Designated Contracts and Cure Amounts shall be posted on the Website within two business days after entry of the Bid Procedures Order.

    40. Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed assumption and assignment set forth in the Assumption and Assignment Notice and (ii) if applicable, the proposed Cure Amount, on or before July 27, 2015 at 4:00 p.m. (EDT) on (1) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), proposed co-counsel to the Debtors, (2) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.) counsel to the Term Loan Agent, (3) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Prepetition Senior Loan Lenders, (4) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois, 60603, counsel to the Prepetition Senior Loan Agent, (5) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the Sponsor, and (6) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.).

- 25 -

41.     If (a) an executory contract or unexpired lease is added to the schedule of Designated Contracts attached to the Stalking Horse Agreement, (b) the Cure Amount associated with any such executory contract or unexpired lease is modified, or (c) an executory contract or unexpired lease is proposed to be assumed pursuant to the APA accompanying any other Qualified Bid, then an Assumption and Assignment Notice shall be served on the applicable counterparty by overnight courier service within one business day of such addition or modification, as applicable (and in no event less than one business day before the Sale Hearing) and any counterparty to such a Designated Contract may file an objection to the aforesaid addition or modification at any time prior to the Sale Hearing or by appearing and objecting at the Sale Hearing.

42.     At the Sale Hearing, only those contracts (and the corresponding Cure Amounts) listed on the Assumption and Assignment Notice that have been selected to be assumed by the Successful Bidder at the Auction (the "**Selected Contracts**") shall be subject to approval by the Bankruptcy Court, and the Debtors shall reserve their rights for all other contracts. Unless an objection to the proposed assumption and assignment of a Selected Contract is properly filed and served or presented before the applicable objection deadline, any non-Debtor party thereto shall be (i) deemed to have consented to the assumption and assignment of such Selected Contract and the respective Cure Amount and (ii) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the purchaser of the Assets.

**III. The Sale is in the Best Interests of the Debtors, Their Estates and Creditors**

**A.      Sale of the Assets**

43.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See, e.g.,* *In re Martin*, 91 F.3d 389 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court reviewing an application under section 363(b) of the Bankruptcy Code must find, based upon the evidence presented, a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

44.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re GSC, Inc.*, 453 B.R. 132, 155 (Bankr. S.D.N.Y. 2011). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

45.    If a "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Indeed, when a valid business justification exists, there is a strong presumption that the debtors' management and directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

46.     Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *See In re Betty Owens Schs., Inc.*, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997); *In re Del. and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).

47.     As described above, the Debtors have attempted to maximize value in this sale process through solicitation of interested bidders and entry into the Stalking Horse Agreement. By proceeding with the Bid Procedures, the Debtors will encourage competitive bidding to obtain the best recovery for their creditors on assets in which the Stalking Horse Purchaser has demonstrated an interest while still maintaining sufficient flexibility for other parties to propose alternative transactions that may yield more value for the Debtors' estates and their creditors. Through the Auction process, at the Sale Hearing, and after the Auction is concluded, the Court will be assured that the Debtors have selected the party or parties with the highest or otherwise best offer for the Assets.

RLF1 12228374v.1

48.      The Debtors acknowledge that the Stalking Horse Purchaser, by virtue of the fact that it is the Sponsor, may be an insider of the Debtors for purposes of considering approval of the Sale Transaction. Bankruptcy courts have recognized that the sale of a debtor's assets to an insider is not per se prohibited, although the transaction may be subject to the heightened scrutiny required by non-bankruptcy law for insider transactions. *See In re Bidermann Indus. U.S.A. Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) ("[S]ales to fiduciaries in chapter 11 cases are not per se prohibited, 'but [they] are necessarily subject to heightened scrutiny because they are rife with the possibility of abuse.'"); *In re Summit Global Logistics, Inc.*, No. 08-11566, 2008 WL 819934, at *9 (Bankr. D.N.J. Mar. 26, 2008) ("The Debtors bear the burden of proving that they have satisfied the requirements of Section 363(f), the good faith finding under Section 363(m), and the heightened scrutiny required by non-bankruptcy law for insider transactions.").

49.      Here, to the extent the Court applies a heightened standard of scrutiny, the Sale Transaction should nevertheless be approved. The Debtors' board appointed the Independent Committee to evaluate the fairness of the Bid Procedures and any proposed Sale Transaction, ensuring that all parties are afforded an equal and fair chance to participate in the sale process. As noted above and for the reasons stated herein, the Independent Committee directed the Debtors to implement certain Safeguard Procedures to preserve the integrity and fairness of the section 363 sale process. Moreover, as evidenced by the Bid Procedures and Safeguard Procedures, the Debtors are conducting a process that is fair and open in all respects. In addition, the public nature of a sale under section 363 of the Bankruptcy Code, requiring bankruptcy court approval, provides the necessary ratification of an insider transaction under Delaware law. *In re Summit Global Logistics,* 2008 WL 819934, at *11-12 (finding that the

- 29 -

debtor has satisfied the heightened burden with respect to sales to an insider based on the involvement of an independent committee and the public nature of an asset sale under Section 363); *In re Station Casinos Inc.*, No. 09-52477, *slip op.* at 18 (approving sale to an insider because "the Bidding Procedures are fair and appropriate and result from fair dealing among the parties and are an integral part of the overall compromise").

50.    The proposed Sale Notice and the proposed Bid Procedures are appropriate, reasonable and designed to ensure the most robust bidding and auction process possible for the Assets. As stated, the Sale Notice will be promptly served on the Sale Notice Parties and will be timely published in a newspaper of general circulation. In addition, before the Bid Deadline, Perella Weinberg Partners will continue to contact various parties who have previously expressed an interest in acquiring the Debtors' Assets to determine whether such parties are interested in submitting a bid. The Debtors believe that this process provides more than sufficient notice and a reasonable period in which to attract bids.

**B.    Sale Free and Clear of Liens, Claims, Encumbrances, and Interests**

51.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

- 30 -

11 U.S.C. § 363(f); *see Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345

(Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a

"free and clear" sale even if only one of the subsections is met).

52.     In order to permit a viable business going forward, the Debtors request

that the Court authorize the Sale Transaction free and clear of all liens, claims, encumbrances

and other interests, other than the liabilities expressly assumed by the Successful Bidder. It is

critical that the Assets are sold without being subject to liabilities incurred by the Debtors. If the

liens, claims, encumbrances and other interests currently saddling the Debtors were to survive

the Sale Transaction, this would significantly impede the efforts and chances of the Stalking

Horse Purchaser's success in the future.

53.     The Sale Transaction will satisfy section 363(f) of the Bankruptcy Code

because any entities holding an interest in the Assets will have received notice and have been

afforded a sufficient opportunity to object to the requested relief. Any such entity that does not

object should be deemed to have consented. As the Seventh Circuit aptly explained in

*Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002):

> It is true that the Bankruptcy Code limits the conditions under
> which an interest can be extinguished by a bankruptcy sale, but one
> of those conditions is the consent of the interest holder, and lack of
> objection (provided of course there is notice) counts as consent. It
> could not be otherwise; transaction costs would be prohibitive if
> everyone who *might* have an interest in the bankrupt's assets had to
> execute a formal consent before they could be sold.

*Id.* at 285-86 (internal citations omitted) (emphasis in original); *see also In re Enron Corp.*, 01-

16034 (AJG), 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all

parties who did not object to proposed sale to have consented under section 363(f)(2)); *Hargrave*

*v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to

object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2));

- 31 -

*Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same). As such, to the extent that no party holding a lien, claim, encumbrance or other interest objects to the relief requested in the Sale Order, the sale of the Assets free and clear of all such interests, except for any liabilities expressly assumed by the Successful Bidder, satisfies section 363(f)(2).

54.    The Debtors believe that, pursuant to the APA corresponding to any Successful Bid, one or more of the tests of section 363(f) of the Bankruptcy Code will be satisfied with respect to the transfer of the Assets. In particular, the Debtors believe that they will meet, among others, the test set forth in section 363(f)(5) of the Bankruptcy Code. Any parties in interest that assert liens, claims, encumbrances or other interests in, to or against the acquired Assets, will be adequately protected by having their liens, if any, attach to the proceeds of the Sale Transaction, in the same order of priority, with the same validity, force and effect that such parties had prior to the Sale Transaction, subject to any claims and defenses that the Debtors and their estates may possess with respect thereto. Accordingly, section 363(f) of the Bankruptcy Code authorizes the transfer and conveyance of the Assets free and clear of all liens, claims, encumbrances and all other interests, including rights or claims based on any taxes or successor or transferee liability.

55.    The Debtors also submit that it is appropriate to sell the Assets free and clear of successor liability relating to the Debtors' businesses. Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business. *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor

- 32 -

liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re General Motors Corp.*, 407 B.R. 463, 505-06 (Bankr. S.D.N.Y. 2009) (holding that "the law in this Circuit and District is clear, the Court will permit GM's assets to pass to the purchaser free and clear of successor liability claims, and in that connection, will issue the requested findings and associated injunction."); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("*in personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction."); *see also WBQ P'ship v. Commonwealth of Virginia Dep't of Medical Assistant Servs.*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) (approving sale of debtor's assets under section 363(f) and precluded governmental entity from collecting depreciation recapture arising from such sale from the purchaser); *P.K.R. Convalescent Ctrs., Inc. v. Commonwealth of Virginia, Dep't of Medical Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.)*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) (same); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986) (sale pursuant to section 363(f) barred successor liability for product defect claims), *aff'd*, 805 F.2d 1515 (11th Cir. 1986); *Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale pursuant to section 363(f) was free and clear of successor liability claims for employment discrimination and civil rights violations).

56.    The purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances and all other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising

- 33 -

from a seller's pre-sale conduct. Moreover, without such assurances, the Debtors would run the risk that potential bidders may not enter the Auction or, if they did, would do so with reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtors' businesses, but should hold the purchased Assets free and clear.

**C.      Protections as a Good Faith Purchaser**

57.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the United States Court of Appeals for the Third Circuit previously addressed the meaning of the term:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.

58.     Section 363(m) of the Bankruptcy Code "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *Pittsburgh Food & Bev. v. Ranallo*, 112 F.3d 645, 647-48 (3d Cir. 1997) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification

on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

59.    Here, the Successful Bidder will have engaged in the Auction pursuant to the proposed Bid Procedures and Safeguard Procedures, and any APA proposed by a Successful Bidder will be the product of arm's-length, good-faith negotiations in a competitive bidding process. Indeed, and to that end, the Debtors will provide each Qualified Bidder with the Opening Bid, including the APA thereunder. Moreover the Safeguard Procedures, together with disclosures made by the Sponsor as to delegation of final binding authority concerning the West Hartford Facility Lease to the Independent Partner and the Landlord's representation that it is prepared to consider any potential lessee and to discuss and negotiate an extension of the West Hartford Facility Lease with any Qualified Bidder at the Auction, should assure that non-insider bidding and negotiations are conducting in good faith and an arm's length manner. Moreover, by subjecting the Assets to a market test through the Auction, the Debtors submit that the consideration to be received will be fair and reasonable. Based upon the record to be made at the Sale Hearing, the Debtors will request a finding that the Successful Bidder will be a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**D.    Bid Procedures**

60.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., In re Integrated Res., Inc.*, 147 B.R. at 656-57, *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under

- 35 -

which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave.*
*Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment
standard protects breakup fees and other contractual provisions negotiated in good faith).

61.    The paramount goal in any proposed sale of property of the estate is to
maximize the proceeds received by the estate. *See, e.g., Integrated Res.*, 147 B.R. at 659 ("It is a
well-established principle of bankruptcy law that the . . . [Debtors'] duty with respect to such sales
is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag
Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.*), 99 B.R. 124, 131 (Bankr.
N.D. Ga. 1988)); *see also In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (in bankruptcy sales, "a
primary objective of the Code [is] to enhance the value of the estate at hand"). To that end, courts
recognize that procedures intended to enhance competitive bidding are consistent with the goal of
maximizing the value received by the estate and therefore are appropriate in the context of
bankruptcy sales. *See, e.g., In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW)
(Bankr. D. Del. Aug. 6, 1997) (D.I. 377); *In re Fruehauf Trailer Corp.*, Case No. 96-01563 (PJW)
(Bankr. D. Del. Jan. 31, 1997) (D.I. 439); *Integrated Res.*, 147 B.R. at 659 (such procedures
"encourage bidding and [to] maximize the value of the debtor's assets").

62.    The Debtors believe that the currently proposed Bid Procedures will
establish parameters pursuant to which the value of the Assets may be fully tested at the Auction
and ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors receive
the greatest possible consideration for the Assets because they will ensure a competitive and fair
bidding process that will encourage participation by financially capable bidders who demonstrate
the ability to close such a transaction. Indeed, the Debtors have put limited (if any) constraints on
the ability of prospective purchasers to bid on the Debtors' assets, and instead have encouraged

- 36 -

bid flexibility. Further, the Debtors have instituted mechanisms, such as the Safeguard Procedures, to ensure an open and robust bidding process at the Auction. Therefore, the Debtors believe that the Bid Procedures (i) will encourage bidding for the Assets, (ii) are consistent with other procedures previously approved by courts in this District and (iii) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See, e.g., Integrated Res.*, 147 B.R. at 659.

63.    Thus, the proposed Bid Procedures are reasonable, appropriate and within the Debtors' sound business judgment under the circumstances because they will serve to maximize the value the Debtors will recover on account of a sale of the Assets.

## E.    Assumption and Assignment of Designated Contracts

64.    To facilitate and effect the sale of the Assets, the Debtors seek authorization to assume and assign the Selected Contracts to the Successful Bidder. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard that is applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the debtor's business judgment that the assumption is in its economic best interests. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). In connection with the proposed sale, the Debtors will assume and assign only the Selected Contracts (*i.e.*, those executory contracts and unexpired leases that the Successful Bidder has indicated it wants to assume). It is well established that courts should approve a debtor's motion to assume or reject an executory contract if the debtor's decision is based on its business judgment. *See In re Decora*

- 37 -

*Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *8 (D. Del. May 20, 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule."); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard.").

65.     To determine if the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. at 239 ("This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate."). Specifically, a court should find that the assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption . . . [is] in the best interests of [the debtor] and the estate." *In re Network Access Solutions*, 330 B.R. at 75. Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See Computer Sales Int'l, Inc. v. Federal Mogul (In re Federal Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *Lubrizol Enters. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

66.     Section 365(k) of the Bankruptcy Code provides that assignment by the debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Therefore, upon the closing of the Sale Transaction, the Debtors will be relieved of their obligations under the Selected Contracts, thereby further decreasing the obligations of the estate and creating value for creditors.

67.     The Debtors' assumption of the Selected Contracts will be contingent upon payment of the Cure Amounts. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under contracts that will be assumed must be cured or that adequate assurance be provided to the contract counterparties that such defaults will be promptly cured. As set forth in the Assumption Procedures above, the Debtors propose to file with the Court, publish on the Website, and serve on each counterparty to a Designated Contract a notice[10] that shall include the Debtors' calculation of the Cure Amount for each such Designated Contract. Contract counterparties shall have the opportunity to object to the proposed assumption and assignment to the Successful Bidder and, if applicable, the proposed Cure Amount, and any such objections will be heard and determined at the Sale Hearing. The Successful Bidder shall be obligated to pay or cause to be paid any and all Cure Amounts with respect to the Selected Contracts to be assumed. In the event of any dispute relating to any Cure Amount, the Successful Bidder may elect not to assume the Selected Contract if it is unsatisfied with the resolution of such dispute.

68.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided. . . ." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (internal citations omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (holding that adequate assurance of future performance does not mean absolute

---

[10] The notice will include the Cure Amounts for each contract that any Qualified Bidder seeks to assume. If a contract was included in the notice but is not part of the Successful Bidder's list of Selected Contracts, the Debtors will not seek to assume such contracts at the Sale Hearing.

RLF1 12228374v.1

assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance when prospective assignee of lease had financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

69.     At the Sale Hearing, to the extent necessary, the Debtors will be prepared to proffer testimony or present evidence to demonstrate the ability of the Successful Bidder to perform under the Selected Contracts. The Sale Hearing, therefore, will provide the Court and other interested parties with the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Selected Contracts, as required by section 365(b)(1)(C) of the Bankruptcy Code. Accordingly, it is requested that, at the conclusion of the Sale Hearing, the proposed assumption and assignment of the Selected Contracts be approved.

70.     To facilitate the assumption and assignment of the Selected Contracts, the Debtors further request the Court find all anti-assignment provisions of the Selected Contracts to be unenforceable under section 365(f) of the Bankruptcy Code.[11] Absent such a finding, the

---

[11] Section 365(f)(1) of the Bankruptcy Code provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease. . . ." 11 U.S.C. § 365(f)(1). Section 365(f)(3) of the Bankruptcy Code further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on

- 40 -

Debtors' ability to attract the highest or otherwise best offer to maximize value for the estates may be imperiled.

71.     The procedures set forth herein for the Debtors' assumption and assignment of certain Designated Contracts to the Successful Bidder meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code. The assumption and assignment of Designated Contracts are necessary for any Successful Bidder to conduct business going forward, and since no purchaser would take the Assets without the Designated Contracts, the assumption and assignment of such Designated Contracts is essential to inducing the highest or otherwise best offer for the Assets. Further, upon consummation of the proposed sale of the Assets, the Debtors will no longer continue to operate their businesses and will, therefore, have no use for any of the Designated Contracts utilized in the businesses. Lastly, as discussed above, the proposed Assumption and Assignment Procedures ensure that all counterparties to Designated Contracts will receive the Cure Notice, providing them with ample notice of the proposed assumption and assignment and opportunity to contest any asserted Cure Amount, as well as the ability of the Successful Bidder to provide adequate assurance of future performance.

**F.     Notice of the Auction and Sale Hearing**

72.     The Debtors submit that the Sale Notice as set forth above, along with publication of a summary version of the Sale Notice in *The New York Times* or *The Wall Street Journal* and *Globe & Mail (national edition)*, and on the Website, is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Assets, and/or object to the proposed sale of the Debtors' Assets. Such notice is intended,

---

account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

- 41 -

through the use of electronic mail, fax, overnight mail, first class mail and publication, to effect service as quickly as possible in the context of the expedited schedule proposed herein. All parties, including all potential bidders at the Auction and other parties in interest will thus receive prompt notice. Accordingly, the Debtors submit that the foregoing method of notice is reasonable under the circumstances.

**G.      Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)**

73.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

74.      The Debtors believe that the sale of the Assets should be consummated as soon as practicable in order to preserve and maximize value. Accordingly, the Debtors request that the Sale Order approving the sale of the Assets and the assumption and assignment of the Designated Contracts be effective immediately upon entry of such order and that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

**H.      The Primary Terms of the Stalking Horse Agreement[12]**

75.      Local Rule 6004-1(b)(iv) provides, among other things, that a sale motion "must highlight material terms" of the Stalking Horse Agreement and the Sale Order. With this motion, the Debtors are filing the Sale Term Sheet and will file and serve the Stalking Horse

---

[12] Capitalized terms used but not defined in this section of the Motion shall have the meanings ascribed to them in the Sale Term Sheet. To the extent of any inconsistency between this summary and the Sale Term Sheet, the Sale Term Sheet shall control.

Agreement by June 29, 2015. The Debtors submit that the description of the material terms of the Stalking Horse Agreement and the Sale Order set forth herein complies with Local Rule 6004-1(b)(iv). However, to the extent necessary, the Debtors reserve the right to supplement this description when they file the Stalking Horse Agreement with the Court.

76.     Pursuant to the Sale Term Sheet, the Stalking Horse Purchaser will acquire the Assets, which include all of the right, title, and interest of the Debtors in, to, and under, as of the Consummation Date, any and all of the assets, properties, rights, and claims of any kind or nature, which relate to the Debtors' business or which are used or useful in or held for use in, or were acquired in connection with, the operation of the business. The Assets include, without limitation,(i) all accounts receivable, (ii) all cash on hand (provided that an amount as set forth in the approved cash collateral budget (such amount not to exceed $500,000) shall be retained by the Debtors in order to fund certain wind-down fees and expenses), (iii) all intellectual property rights of the Debtors, (iv) all personal property of the Debtors, including all furniture, fixtures, and equipment, (v) all deposits and prepaid or deferred charges and expenses of the Debtors with respect to Assumed Contracts (as defined below) and any other permit, license, or other Purchased Asset, (vi) all right, title, and interest of the Debtors in each owned property and under each real property lease which is an Assumed Contract, (vii) all of the documents that are used or useful in, held for use in or intended to be used in, or that arise primarily out of, the Business, including customer lists, records, equipment logs, maintenance records, (viii) all rights of the Debtors under the Assumed Vendor Claims (as defined below), (ix) all Assumed Contracts (as defined below), (x) all third party property and casualty insurance proceeds to the extent received or receivable in respect of the Business or the Purchased Assets, except to the extent such amount relates to an Excluded Liability, (xi) all general intangibles of the Debtors, (xii) all

- 43 -

goodwill associated with the Purchased Assets, (xiii) all claims, causes of action, and rights of recovery related to the Purchased Assets, not including causes of action arising under chapter 5 of the Bankruptcy Code and all other causes of action that could be brought by the Debtors ("**Avoidance Actions**"), (xiv) any claim, right, or interest in any refund, rebate, abatement, or other recovery for taxes relating to the Purchased Assets or the Business, and (xv) any permits or licenses that are permitted to be transferred.

77.     The aggregate consideration the Debtors will receive under the Stalking Horse Agreement will be: (i) the assumption of the Senior Loan, the Term Loan and the DIP Facilities extended by the Prepetition Senior Lenders and the Prepetition Term Loan Lenders in their entirety, (ii) the assumption of the Assumed Liabilities and (iii) the assumption of the executory contracts and unexpired leases as set forth in the Asset Purchase Agreement.

78.     The Stalking Horse Purchaser has not been required to post a deposit in connection with the Stalking Horse Agreement.

79.     Local Rule 6004-1(b)(iv)(A) requires the disclosure of, among other things, whether the proposed sale is to an "insider" as defined in section 101(31) of the Bankruptcy Code. The Stalking Horse Purchaser is a newly formed limited liability company controlled by the Sponsor. The Stalking Horse Agreement was negotiated at arm's-length between the Debtors, the Sponsor and the Secured Lenders, each of which retained separate counsel. The Bid Procedures and Safeguard Procedures were designed to ensure an open bidding process available to any interested party. Furthermore, the Debtors and the Stalking Horse Purchaser eschewed standard Stalking Horse protections, such as a break-up fee, in order to encourage the participation of potential third party purchasers.

80.    Local Rule 6004-1(b)(iv)(B) requires the disclosure of, among other things, the material terms of agreements between the management of a debtor and a proposed purchaser. Under the Sale Term Sheet, the Stalking Horse Purchaser shall assume all agreements relating to current employees but not former employees; provided that the existing long term incentive plan shall be replaced by the new MIP.

81.    Local Rule 6004-1(b)(iv)(J) requires that the Debtors indicate how they will retain access to their books and records to administer their estates after the closing date. Although the books and records of the Debtors are included as Purchased Assets, the Stalking Horse Agreement will provide that the Debtors will have post-closing access to the books and records.

## I.    The Proposed Sale Order

82.    The proposed Sale Order attached hereto as Exhibit B also contains certain provisions that require disclosure under Local Rule 6004-1. Local Rule 6004-1(b)(iv)(C) requires the disclosure of any provisions pursuant to which an entity is being released or claims against any entity are being waived or otherwise satisfied. Paragraphs 34 of the Sale Order contain (i) mutual releases between and among the Released Parties (as defined below) and (ii) the exculpation of the Released Parties for any act taken or omitted to be taken prior to or after the Commencement Date in connection with the chapter 11 cases. The **"Released Parties"** shall be: (i) the Debtors, (ii) the DIP Lenders and DIP Agents, (iii) the Prepetition Lenders, (iv) the Purchaser (v) the members and shareholders of the Purchaser and its affiliates, (vi) the Prepetition Term Loan Agent and the Prepetition Senior Loan Agent, and (vii) the current and former principals, members, partners, officers, directors, employees, legal, financial, and tax advisors, and other representatives of each of the parties in clauses (i) through (vii) (each in its capacity as such) (collectively, the **"Released Parties"**).

- 45 -

83.    Local Rule 6004-1(b)(iv)(L) requires the disclosure of any provision limiting the proposed purchaser's successor liability. Paragraphs 25-27 provide protection to the Stalking Horse Purchaser against successor liability claims. The Debtors will have material unpaid pre-petition unsecured claims after the closing of the Sale. Neither the Stalking Horse Purchaser nor any other party would likely be willing to purchase the Debtors' assets if it were at risk of liability for those claims under principles of successor liability. In addition, the Debtors are providing direct notice of the sale to all known creditors of the Debtors' estates and are also publishing a summary version of the Sale Notice in *The Wall Street Journal* or *The New York Times* and *Globe & Mail (national edition)*. The Debtors submit that notice of the proposed "no successor liability" findings in the Sale Order is sufficient to bind all potentially affected parties.

84.    Local Rule 6004-1(b)(iv)(O) requires the disclosure of any provision whereby a debtor seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). Paragraphs 43 of the Sale Order approve the sale of the Assets and the assumption and assignment of the Designated Contracts to be effective immediately upon entry of such order and that the 14-day stay under Bankruptcy Rules 6004(h) be waived.

## NOTICE

85.    The Debtors will provide notice of this motion via first class mail to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) Cortland Capital Market Services LLC, as Prepetition Senior Loan Agent; (iv) counsel to the Prepetition Senior Loan Agent; (v) Wilmington Savings Fund Society, FSB, as Term Loan Agent; (vi) counsel to the Term Loan Agent; (vii) Wilmington Trust FSB, as Senior Notes Indenture Trustee; (viii) counsel to the Senior Notes Indenture Trustee; (ix) the DIP Term Loan Lender and Prepetition Term Loan Lender; (x) counsel to the DIP Term Loan Lender and Prepetition Term

- 46 -

Loan Lender; (xi) the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (xii) counsel to the DIP Senior Loan Lenders and Prepetition Senior Loan Lenders; (xiii) the Internal Revenue Service and Canada Revenue Agency; (xiv) the Securities and Exchange Commission; (xv) the Pension Benefit Guaranty Corporation; and (xvi) any local, state, provincial, or federal agencies that regulate the Debtors' businesses. Following the hearing, a copy of this motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the motion is also available on the Debtors' case website at http://www.kccllc.net/coltdefense.

## **NO PRIOR MOTION**

86.     The Debtors have not made any prior motion for the relief sought in this motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated:    June 15, 2015
          Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

**O'MELVENY & MYERS LLP**
John J. Rapisardi (*pro hac vice* admission pending)
Peter Friedman (*pro hac vice* admission pending)
Joseph Zujkowski (*pro hac vice* admission pending)
Times Square Tower
Seven Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Proposed Attorneys for the Debtors
and Debtors in Possession*

RLF1 12228374v.1

**Exhibit A**

**Proposed Bid Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

In re:

COLT HOLDING COMPANY LLC, *et al.*,[1]

                Debtors.

-----------------------------------------------------------x

Chapter 11

Case No. 15-11296 (   )

Joint Administration Requested

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) APPROVING
PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
SUCH SALE, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(IV) SCHEDULING THE HEARING TO CONSIDER APPROVAL OF SUCH SALE, AND
(V) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order
(this "**Order**") (a) approving procedures (the "**Bid Procedures**") for submitting bids for the
purchase of substantially all of the Debtors' assets (the "**Assets**"), (b) approving the Safeguard
Procedures with respect to the selection of Sponsor as Stalking Horse Purchaser for purposes of
conducting the 363 Auction and approval of the Sale Transaction; (c) approving procedures for
the assumption and assignment of certain executory contracts and unexpired leases (the
"**Designated Contracts**") in connection with such sale, (d) scheduling a deadline to submit bids
for the Assets and a hearing to consider approval of the proposed sale (the "**Sale Transaction**") of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

the Debtors' Assets (the "**Sale Hearing**"), (e) approving the form and manner of notice of (1) the date, time and place of the hearing to consider entry of the Bid Procedures Order (the "**Bid Procedures Hearing**"), (2) the deadline to submit bids for the Debtors' Assets, (3) the assumption and assignment of certain Designated Contracts in connection with the sale of the Debtors' Assets, (4) the date, time and place of the Sale Hearing, and (5) granting certain related relief (collectively, (1)-(5), the "**Bid Procedures Relief**"), all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion with respect to the Bid Procedures Relief (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003; and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor:

RLF1 12228374v.1

## THE COURT HEREBY FINDS THAT:[3]

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

C.      Due, sufficient, and adequate notice of the Bid Procedures Hearing and the relief requested in the Motion and granted herein has been given in light of the circumstances and the nature of the relief requested and no other or further notice thereof is required.

D.      The Debtors have articulated good and sufficient reasons for this Court to grant the Bid Procedures Relief.

E.      The Debtors have articulated good and sufficient reasons for this Court to schedule the Sale Hearing to consider the remainder of the relief requested in the Motion, including, without limitation, the approval of the sale of substantially all of the Debtors' Assets free and clear of all liens, claims, encumbrances, and interests, including rights or claims based on any taxes or successor or transferee liability, under section 363 of the Bankruptcy Code, to (i) a newly formed entity organized by the Sponsor (the "**Stalking Horse Purchaser**") or its designee(s) pursuant to an APA consistent with the terms set forth in the sale term sheet attached as <u>Exhibit C</u> to the Motion (the "**Sale Term Sheet**") or (ii) a different Successful Bidder for the Purchased Assets (if the Stalking Horse Purchaser is not the Successful Bidder) (the "**Sale Transaction**"), and all of the other transactions contemplated by the Stalking Horse Agreement.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.  The Bid Procedures, substantially in the form attached to this Order as Exhibit A and incorporated herein by reference as if fully set forth in this Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

G.  Based on the evidence and testimony adduced at the Hearing, proper compliance with the Safeguard Procedures and any other procedures as may have been adopted by the Court supplementing, modifying, or replacing the Safeguard Procedures, as it relates to selection and approval of Sponsor as Stalking Horse Purchaser have been satisfied.

H.  Service of the Sale Notice, substantially in the form attached to this Order as Exhibit B, as set forth herein, is reasonably calculated to provide parties in interest with proper notice of the Bid Procedures, the Sale Transaction, all of the other transactions contemplated by the Stalking Horse Agreement, and the Sale Hearing.

I.  Publication of the Sale Notice, as set forth herein, is reasonably calculated to provide all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the Bid Procedures, the Sale Transaction, all of the other transactions contemplated by the Stalking Horse Agreement, and the Sale Hearing.

J.  Service of the Assumption and Assignment Notice, substantially in the form attached to this Order as Exhibit C, as set forth herein is reasonably calculated to provide all non-Debtor parties to the Designated Contracts with proper notice of the potential assumption and assignment of their respective Designated Contracts, any Cure Amounts relating thereto, and the Assumption and Assignment Procedures.

- 4 -

K.      The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the District of Delaware (the "**Local Rules**").

L.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

## IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

### Bid Procedures

1.      The Bid Procedures Relief requested in the Motion is granted as provided herein.

2.      The Bid Procedures are approved. The Safeguard Procedures have been satisfied with respect to the selection and approval of the Sponsor as Stalking Horse bidder. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

3.      As further described in the Bid Procedures, any entity that desires to make an offer to purchase the Purchased Assets must submit a Qualified Bid to (i) Perella Weinberg Partners LP, 767 Fifth Avenue, New York, NY 10153 (Attn: Nikhil Menon); (ii) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.); and (iii) the Debtors, 547 New Park Avenue, West Hartford, Connecticut 06110 (Attn: John H. Coghlin, General Counsel), **so as to be underlined actually received on or before July 30, 2015 at 5:00 p.m. (EDT)** ("**Bid Deadline**"). The Debtors, with the prior written consent of the Consultation Parties (as defined in the Bid Procedures) or upon obtaining authorization from the Bankruptcy Court, may extend the Bid

RLF1 12228374v.1

Deadline once or successively, but are not obligated to do so; *provided*, *however*, that the cumulative length of any such extensions shall not be longer than seven days.

       4.      The Sale Hearing shall be held on **August 7, 2015 at 10:00 a.m. (EDT)**, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, [●]Floor, Courtroom [●], before the Honorable [●], United States Bankruptcy Judge and may be adjourned or rescheduled without notice.

### Stalking Horse Agreement

       5.      The Stalking Horse Purchaser constitutes a Qualified Bidder for purposes of the Bid Procedures and is not required to make a Deposit. The Stalking Horse Purchaser's offer to purchase the Assets memorialized in a Stalking Horse Agreement consistent with the Sale Term Sheet shall constitute a Qualified Bid for purposes of the Bid Procedures.

### Notice Procedures

       6.      The notices described in subparagraphs (a), (b), and (c) below are approved, and service or publication thereof (as applicable) as set forth below constitutes proper, timely, adequate and sufficient notice of the Bid Procedures, the Assumption and Assignment Procedures, the Sale Transaction, the assumption and assignment of Designated Contracts in connection with the Sale Transaction, all of the other transactions contemplated by the Stalking Horse Agreement, the Successful Bid, and the Sale Hearing, and no other or further notice shall be required:

      (a)    **Notice of Sale, Auction, and Sale Hearing**: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall:

           i.    Serve the Sale Notice by email, mail, facsimile, or overnight delivery service, upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New

- 6 -

York 19919 (Attn: John Longmire, Esq.); (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.); (v) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois 60603 (vi) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.); (vii) the IRS; (viii) all known parties that have previously expressed a bona fide interest in purchasing the Assets in the twelve (12) months preceding the date of the Motion; (ix) the Attorneys General in the States where the Assets are located; (x) all parties having filed requests for notices in these chapter 11 cases; (xi) all relevant local taxing authorities; (xii) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets; and (xiii) counterparties to any of the Debtors' material contracts and leases, including the Landlord to the Debtors' manufacturing facility located in West Hartford, Connecticut (collectively, the "**Sale Notice Parties**");

ii.    Publish a summary version of the Sale Notice on one occasion in *The New York Times* or *The Wall Street Journal* and *Globe & Mail (national edition)*; and

iii.    Cause the Sale Notice to be published on the website maintained by the Debtors' proposed claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/coltdefense (the "**Website**").

(b)    **Notice of Potential Assumption and Assignment of Designated Contracts.** Within two business days after entry of the Bid Procedures Order, the Debtors (or their agent) shall file with the Court and serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice on each counterparty to a Designated Contract a notice of assumption, assignment, and cure (the "**Assumption and Assignment Notice**"), substantially in the form attached as Exhibit C to this Order, which includes: (i) the title of each Designated Contract, (ii) the name of the non-Debtor parties to such Designated Contract, (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under such Designated Contract in accordance with sections 365(b) and (f)(2) of the Bankruptcy Code (the "**Cure Amount**"), and (iv) the deadline by which any non-Debtor party to such Designated Contract must object to the assumption and assignment of such Designated Contract, upon the non-Debtor parties to such Designated Contract. A list of the Designated Contracts and Cure Amounts shall be posted on the Website within two (2) business days after entry of the Bid Procedures Order and updated on a regular basis to reflect amendments to the schedules to the Stalking Horse Agreement or any APA accompanying any other Qualified Bid. If (i) an executory contract or unexpired lease is added

- 7 -

to the schedule of Designated Contracts attached to the Stalking Horse Agreement, (ii) the Cure Amount associated with any such executory contract or unexpired lease is modified, or (iii) an executory contract or unexpired lease is proposed to be assumed pursuant to the APA accompanying any other Qualified Bid, then an Assumption and Assignment Notice shall be served on the applicable counterparty by overnight courier service within one business day of such addition or modification, as applicable (and in no event less than one business day before the Sale Hearing).

(c)    **Notice of Selection of Successful Bidder.** As soon as immediately practicable after the determination of the Successful Bidder, but no later than one business day after conclusion of the Auction, the Debtors will provide electronic notice of the results of the Auction by filing a notice on the Court's docket and on the Website identifying the Successful Bidder.

<u>**Assumption and Assignment Procedures**</u>

7.    The Assumption and Assignment Procedures, as set forth below, are approved and shall govern the assumption and assignment of any Designated Contract:[4]

(a)    **Objections to Assumption and Assignment of Contracts and Leases**

i.    Objections, if any, to (a) the proposed assumption and assignment of any Designated Contract identified on an Assumption and Assignment Notice and (b) if applicable, the proposed Cure Amount, must (i) be in writing, (ii) set forth the basis for the objection, as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, [●], and served on the following parties **so as to be actually received by July 27, 2015 at 5:00 p.m. (EDT)** (1) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), counsel to the Debtors, (2) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.), counsel to the Term Loan Agent, (3) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Prepetition Senior Lenders, (4) Holland &

---

[4] If a party other than The Stalking Horse Purchaser is the Successful Bidder, or if a transaction other than the Sale Transaction is consummated, then these Assumption and Assignment Procedures may be modified by further order of this Court.

Knight LLP, 131 South Dearborn Street, Chicago, Illinois, 60603, counsel to the Prepetition Senior Loan Agent, (5) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the Sponsor, and (6) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.).

ii.     If (a) the Cure Amount associated with any such executory contract or unexpired lease is modified, or (c) an executory contract or unexpired lease is proposed to be assumed pursuant to the APA accompanying any other Qualified Bid, then an Assumption and Assignment Notice shall be served on the applicable counterparty by overnight courier service within one business day of such addition or modification, as applicable (and in no event less than one business day before the Sale Hearing) and any counterparty to such a Designated Contract may file an objection to the aforesaid addition or modification at any time prior to the Sale Hearing or by appearing and objecting at the Sale Hearing.

iii.    Unless an objection to the proposed assumption and assignment of a Selected Contract is properly filed and served or presented before the applicable objection deadline, any non-Debtor party thereto shall be (i) deemed to have consented to the assumption and assignment of such Selected Contract and the respective Cure Amount and (ii) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the Purchaser.

(b)    **Procedures for Resolving Objections**

i.     If a timely objection is filed to the assumption and assignment of a Designated Contract (including any objection to a Cure Amount), the Debtors, the Successful Bidder, and the objecting non-Debtor party shall make reasonable efforts to meet and confer in good faith to attempt to resolve any such objection without judicial intervention. If the Debtors determine that the objection cannot be resolved without judicial intervention, then, at the discretion of the Debtors and the Successful Bidder, the objection shall be determined by the Court at the Sale Hearing or such other date as determined by the Court. If the Court determines at such hearing that such Designated Contract should not be assumed and assigned, then such Designated Contract shall not be assumed by the Debtors or assigned to the Successful Bidder.

- 9 -

ii.      If the Debtors, the Successful Bidder, and the non-Debtor party resolve any objection to the assumption and assignment of a Designated Contract (including any objection to a Cure Amount), they shall enter into a written stipulation, which stipulation is not required to be filed with or approved by the Court.

**Sale Objection Procedures**

8.      Except as otherwise provided in paragraph 8 hereof with respect to the deadline for objecting to Designated Contracts, any objections (other than any objection to the assumption and assignment of a Designated Contracts) to the consummation of the transactions contemplated by the Stalking Horse Agreement and the Bid Procedures, including, without limitation, the Sale Transaction, must (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector, (iv) state with particularity the legal and factual bases for such objection, and (v) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, [●], and served on the following parties **so as to be actually received** no later than **4:00 p.m. (EDT) on July 31, 2015** (the "**General Objection Deadline**"): (i) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), proposed co-counsel to the Debtors, (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.), proposed co-counsel to the Debtors, (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.), counsel to the Term Loan Agent, (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Prepetition Senior Lenders, (v) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois, 60603, counsel to the Prepetition Senior Loan Agent, (vi) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the

- 10 -

Sponsor, (vii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.), (viii) the IRS, (ix) the United States Department of Justice, and (x) any persons who have filed a request for notice in the above-captioned chapter 11 cases on or before the General Objection Deadline (collectively, the "**Objection Notice Parties**") on or before the General Objection Deadline. For the avoidance of doubt, objections to the proposed assumption and assignment of any Designated Contract identified in the Assumption and Assignment Notice must be filed and served in accordance with the procedures set forth in paragraph 7 herein.

9.      The failure of any entity to timely file an objection pursuant to the terms of this Order shall be deemed to constitute consent of such entity to the relief requested in the Motion, including, without limitation, the Sale Transaction and all of the other transactions contemplated by the Stalking Horse Agreement, and shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale Transaction (including the transfer of the Assets free and clear of all liens, claims, encumbrances, and interests, including rights or claims based on any taxes or successor or transferee liability), the assumption and assignment of any contract or lease in connection with the Sale Transaction, and all of the other transactions contemplated by the Stalking Horse Agreement.

### Related Relief

10.     Any objections to entry of this Order that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing or by stipulation filed with the Court, and any reservations of rights included in such objections, are overruled on the merits and denied with prejudice, except as otherwise set forth herein.

11.      Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

12.      To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the Bid Procedures in these cases, the terms of this Order shall govern.

13.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

14.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2015
      Wilmington, Delaware

                                _____
                                    United States Bankruptcy Judge

- 12 -

**Exhibit A**

**Bid Procedures**

# COLT HOLDING COMPANY LLC, et. al.
## BID PROCEDURES

### Introduction

Set forth below are the bid procedures (the "**Bid Procedures**") to be employed with respect to the proposed sale of substantially all of the Debtors'[1] assets (the "**Assets**") pursuant to section 363 of the Bankruptcy Code (the "**Sale Transaction**"). These Bid Procedures provide interested parties with the opportunity to qualify and participate in the auction, if any (the "**Auction**"), and submit competing bids for the Assets.

The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") will conduct a hearing ("**Sale Hearing**") at which the Debtors will seek entry of an order (the "**Sale Order**") authorizing and approving the Proposed Sale to the Successful Bidder(s) (as defined below).

### Key Dates for Potential Bidders

The key dates for the sale process are as follows:

- July 30, 2015 5:00 P.M. (EDT) - Bid Deadline
- July 31, 2015 at 4:00 P.M. (EDT) - Sale Hearing Objection Deadline
- August 3, 2015 at 10:00 A.M. (EDT) - Auction (if necessary)
- August 7, 2015 at 10:00 A.M. (EDT) - Sale Hearing

### Stalking Horse Agreement

Attached as Exhibit C to the motion seeking approval of the Bid Procedures, is a term sheet describing the principal terms of (i) the purchase agreement (together with certain ancillary agreements thereto, the "**Stalking Horse Agreement**") between the Debtors and an entity (the "**Stalking Horse Purchaser**") affiliated with the Sponsor. Pursuant to either the Stalking Horse Agreement or another asset purchase agreement (each to the extent conforming to the requirements of the Bid Procedures, an "**Asset Purchase Agreement**"), and to the maximum extent permitted by section 363 of the Bankruptcy Code, the Successful Bidder(s) shall acquire substantially all of the Debtors' Assets.

### Bid Procedures

Any person or entity who wishes to participate in the Bidding Process (as defined below) must meet the participation requirements to become a Potential Bidder, as specified below, and must thereafter timely submit a Qualified Bid (as defined below) to become a Qualified Bidder (as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

defined below). Other than with respect to the Consultation Parties (as defined below), neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or their legal counsel and financial advisors) and the Debtors and their representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

The Debtors' board has appointed an independent committee (the "**Independent Committee**") to evaluate any proposed Sale Transaction to ensure that all parties are afforded an equal and fair chance to participate in the sale process. The Independent Committee shall (i) receive and evaluate all offers made hereunder, (ii) determine, after consultation with the Consultation Parties, whether any person or entity has met the participation requirements to become a Potential Bidder and has timely submitted a Qualified Bid so as to become a Qualified Bidder and (iii) negotiate in good faith with respect to any Qualified Bids. The Debtors and their representatives shall coordinate the efforts of Potential Bidders in conducting any required due diligence investigations (collectively, all of the aforementioned actions, the "**Bidding Process**").

## Participation Requirements

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors (it being understood that any person or entity who previously signed a confidentiality agreement in a form satisfactory to the Debtors shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder so as to be received by each of the following parties prior to any dissemination of confidential information: (i) Perella Weinberg Partners LP, 767 Fifth Avenue, New York, NY 10153 (Attn: Nikhil Menon); (ii) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.); and (iii) the Debtors, 547 New Park Avenue, West Hartford, Connecticut 06110 (Attn: John H. Coghlin, General Counsel) (collectively, the "**Bid Notice Parties**"). Copies of any confidentiality agreements shall be provided to counsel to: (i) the Prepetition Senior Lenders and Senior DIP Lenders, (ii) the Prepetition Senior Loan Agent and Senior DIP Agent, (iii) the Prepetition Term Lenders and Term DIP Lenders, and (iv) the Prepetition Term Agent and Term DIP Agent (collectively, the "**Consultation Parties**"). The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit the access of strategic parties to the data room.

A "**Potential Bidder**" is a person or entity that the Debtors, after consultation with the Consultation Parties, determine is reasonably likely to: (a) submit a bona fide offer for substantially all of the Assets and (b) be able to consummate the Sale Transaction if selected as a Successful Bidder.

## Due Diligence

Upon execution of a confidentiality agreement containing terms satisfactory to the Debtors, any prospective bidder identified by the Debtors as reasonably likely to be a Qualified Bidder that wishes to conduct due diligence on any of the Assets may be granted access to material information regarding such Assets, *provided that* if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information.

2

The Debtors shall provide to each Potential Bidder contact information for NPA Hartford LLC (the "**Landlord**") as landlord under that certain Net Lease, dated October 26, 2005 (the "**West Hartford Facility Lease**"), between Colt Defense and Landlord, as amended on October 25, 2012, and which expires on October 25, 2015. Each Potential Bidder is responsible for conducting its own due diligence regarding the terms under which the Landlord may extend the term of the West Hartford Facility Lease.

The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit data room access to strategic.

The Debtors may, in the exercise of their business judgment and after consultation with the Secured Lenders, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided, however,* that the Successful Bidder(s) shall be permitted to continue to conduct due diligence until closing of the Proposed Sale (subject to the terms of the applicable asset purchase agreement (an "**APA**")); *provided, further,* however, that no Qualified Bid shall be subject to further due diligence after the Bid Deadline.

### Bid Deadline

Any Potential Bidder that desires to submit a bid for substantially all of the Assets must submit a Qualified Bid by the Bid Deadline **July 30, 2015 at 5:00 p.m. (EDT)**. Any Potential Bidder who fails to submit a bid so as to be **actually received** by the Bid Notice Parties in advance of the Bid Deadline shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

Prior to the Bid Deadline, a Potential Bidder that desires to submit a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the Potential Bidder. Each bid shall be served on each of the Bid Notice Parties by courier, facsimile, e-mail or as otherwise specified by the Debtors. The Debtors shall promptly provide copies of any such bids received to the Consultation Parties. The Debtors, with the prior written consent of the Consultation Parties or upon obtaining authorization from the Bankruptcy Court, may extend the Bid Deadline once or successively, but are not obligated to do so; *provided, however,* that the cumulative length of any such extensions shall not be longer than seven days. The Debtors shall not be required to consider bids submitted after the Bid Deadline, but may do so in consultation with the Consultation Parties.

### Bid Requirements

For the avoidance of doubt, the Debtors shall consider only bids for substantially all of the Assets; *provided, however,* that the Debtors reserve the right, in consultation with the Consultation Parties, to accept unsolicited bids for less than substantially all of the Assets.

To participate in the Bidding Process, a bidder must be a Potential Bidder and must deliver a written offer, which includes, at a minimum, the following items (the "**Required Bid Materials**") prior to the Bid Deadline:

1. Two executed originals of an APA, in form and substance similar to the Stalking Horse Agreement, and other documents by which the Potential Bidder offers to purchase the Assets that are the subject of the bid from the Debtors at the purchase price and upon the terms and conditions as the Potential Bidder sets forth therein, together with a marked

copy showing any proposed changes, amendments, or modifications to the Stalking Horse Agreement (and exhibits);

2. A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, as may be modified in accordance with the Bid Procedures, is irrevocable until the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidders(s) (as defined below), and is not subject to any approvals, consents or conditions except as specified therein;

3. An offer to consummate the Sale Transaction for cash pursuant to the APA (or in the form of a credit bid pursuant to 363(k) of the Bankruptcy Code);

4. Terms that are not materially more burdensome than the terms of the Stalking Horse Agreement;

5. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures and that the offer constitutes a good faith bona fide offer to purchase all of the Assets;

6. Delivery by certified check or wire transfer of a good faith deposit in immediately available funds (the "**Deposit**") equal to 10% of the proposed purchase price. The Deposit shall be held in escrow and will be refunded on the terms set forth below;

7. Evidence or a statement indicating that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all consents required in connection with the submission and consummation of the bid have been obtained and that no other consents are required;

8. Evidence or a statement indicating that the bidder is able to perform under all contracts constituting Assets among any Debtor and any governmental entity;

9. Full disclosure of the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid;

10. A statement that the offering parties consent to the jurisdiction of the Court;

11. A statement that consummation of the Sale Transaction would not violate any laws, including federal or state antitrust laws, The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, et seq., and other applicable foreign or domestic anti-corruption, anti-bribery, or anti-money laundering laws;

4

12. Evidence of sufficient cash on hand or written evidence of a binding, unconditional (except for customary closing conditions) commitment for financing or other evidence of the ability to consummate the Sale Transaction satisfactory to the Debtors, after consultation with the Consultation Parties, with appropriate contact (and any other necessary) information for such financing sources;

13. A list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors; an affirmation that the cure amounts will be the bidder's responsibility; and provision of adequate assurance of future performance with respect to such executory contracts and unexpired leases; and

14. Such other information as may be reasonably requested in writing by the Debtors, after consultation with the Consultation Parties, at least two calendar days prior to the Bid Deadline;

A bid received from a Potential Bidder that (i) includes all of the Required Bid Materials, (ii) is actually received by the Bid Deadline, (iii) provides for the assumption of all of the Assumed Liabilities (as defined in the Stalking Horse Agreement), (iv) provides value for the Debtors' estates of not less than $1 million above the value provided by the Stalking Horse Purchaser under the Stalking Horse Agreement, (v) is not subject to any due diligence or financing contingency, and (vi) does not request or entitle the bidder to any break-up fee, expense reimbursement, or similar type of payment is a **"Qualified Bid"** if the Debtors determine, after consultation with the Consultation Parties, that such bid evidences a bona fide interest and ability to purchase the Assets.

A Potential Bidder that submits a Qualified Bid (a **"Qualified Bidder"**) shall be entitled to participate in the Auction. The Debtors reserve the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid. The Debtors further reserve the right, after consultation with the Consultation Parties, to waive any of the requirements for a Qualified Bid. Within two (2) business days after the Bid Deadline, the Debtors shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder. For the avoidance of doubt, (i) the Stalking Horse Purchaser shall be considered both a Potential Bidder and a Qualified Bidder, (ii) the Stalking Horse Agreement shall constitute a Qualified Bid for all purposes under these Bid Procedures, and (iii) the Stalking Horse Purchaser shall not be required to make a Deposit.

### Conduct of the Auction, If Any

If, but only if, more than one Qualified Bid is received by the Debtors prior to the Bid Deadline, the Auction shall take place at the offices of O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 and shall commence on August 3, 2015 at 10:00 a.m. (EDT); *provided, however,* that the Debtors, after consultation with the Consultation Parties, shall have the right to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

Only a Qualified Bidder who is designated as such by the Debtors, following consultation with the Consultation Parties, shall be eligible to participate at the Auction. The Qualified Bid selected by the Debtors, following consultation with the Consultation Parties, as the highest or

5

otherwise best bid (the "**Opening Bid**"), including the APA(s) under such bid, shall be provided to all other Qualified Bidders prior to the start of the Auction, redacted to conceal the identity of the Qualified Bidder submitting such Opening Bid. In considering which Qualified Bid shall be the Opening Bid, the Debtors, in consultation with the Consultation Parties, will consider, among other things, the changes to the Stalking Horse Agreement required by the Qualified Bid, and the Qualified Bidder's ability to finance and timely consummate the Sale Transaction. At the commencement of the Auction, the Debtors shall inform all Qualified Bidders present at the Auction of the identity of the Qualified Bidder that submitted the Opening Bid, as well as the identity of all other Qualified Bidders that will be participating in the Auction.

The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtors as the Debtors deem necessary, in consultation with their restructuring advisors and the Consultation Parties, to better promote the goals of the Auction and to comply with their fiduciary obligations:

1. The Qualified Bidders shall appear in person at the Auction through a duly authorized representative.

2. Only representatives of (i) the Debtors, (ii) persons or entities making Qualified Bids (including the Stalking Horse Purchaser), (iii) the Consultation Parties, (iv) the Landlord, (v) the Office of the U.S. Trustee, and (vi) any statutory committee appointed in these cases shall be permitted to be present at the Auction.

3. The terms of each Qualified Bid selected from time to time by the Debtors, after consultation with the Consultation Parties, as being the highest or otherwise best offer at any such time (each such Qualified Bid selected at any time, the "**Leading Bid**") shall be fully disclosed to all other Qualified Bidders. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for any or all of the Assets at any time shall have no conditions other than those disclosed.

4. The Auction shall commence with the Debtors confirming the particulars of the Opening Bid and asking for higher or otherwise better offers. Bidding shall commence at the amount of the Opening Bid. Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than $1 million. The Debtors, after consultation with the Consultation Parties, reserve the right to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction.

5. The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtors, after consultation with the Consultation Parties, shall announce the Leading Bid. A Qualified Bidder that does not submit a Qualified Bid in any round of bidding with value greater than the Leading Bid as of the commencement of such round shall not be able to submit further bids in any subsequent round.

6. The Debtors shall provide for a court reporter to be present at and prepare a transcript of the Auction. The Debtors may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

6

7. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction.

8. The Debtors, acting in good faith and in the exercise of their fiduciary duties to maximize value to their estates and after consultation with the Consultation Parties, may accept a combination of (i) a Qualified Bid for substantially all of the Assets and (ii) a Qualified Bid for less than substantially all of the Assets as the collective Leading Bid(s) or as the collective Successful Bid(s) if such Qualified Bids, taken together, constitute a sale of all or substantially all of the Assets without overlap.

9. All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective APA at the Auction to improve such bids.

10. The Auction may include individual negotiations with the Qualified Bidders and/or open bidding; *provided*, *however*, that all bids shall be made and received in one room, on an open basis, and each Qualified Bidder shall be entitled to be present for all bidding so long as such Qualified Bidder has submitted bids that comply with the requirements in each round of bidding and with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting each bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

11. The Debtors reserve the right, after consultation with the Consultation Parties, to (i) determine in their reasonable discretion which Qualified Bid is the highest or otherwise best and (ii) reject at any time, without liability, any bid that the Debtors, in their business judgment, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the order approving these Bid Procedures, or (3) contrary to the best interests of the Debtors and their estates.

12. The Auction shall continue until there is only one Qualified Bid (or a combination of (i) a Qualified Bid for substantially all of the Assets and/or (ii) Qualified Bids for less than substantially all of the Assets that, taken together, constitute a sale of all or substantially all of the Assets without overlap) that the Debtors determine, after consultation with the Consultation Parties and subject to Bankruptcy Court approval, constitutes the highest or otherwise best offer for the Assets from among the Qualified Bids submitted at the Auction (the "**Successful Bid(s)**"). In determining the Successful Bid(s), the Debtors, in the exercise of their business judgment, in consultation with the Consultation Parties, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the ability of the Qualified Bidder(s) to complete the sale contemplated by the Successful Bid(s) (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), the proposed timing thereof, the contracts being assumed by the Qualified Bidder(s), the rights of the Qualified Bidder(s) and the Debtors with respect to the termination thereof, ability to demonstrate continuity in terms of the Debtors' operations and ability to avoid undue liabilities or disruptions resulting from a change of control, the number, type and nature of any changes reflected in the APA(s) requested by the Qualified Bidder(s), and the net

7

benefit to the Debtors' estates. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets (the "**Successful Bidder(s)**") shall have the rights and responsibilities of the purchaser, as set forth in their APA(s) and in the terms and conditions of the Successful Bid(s) provided at the Auction. Prior to the Sale Hearing, the Successful Bidder(s) and the Debtors shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) was made (subject, in the case of the Debtors, to the qualifications set forth in "**Acceptance and Termination of Qualified Bids**" below).

EACH QUALIFIED BID SUBMITTED AT THE AUCTION SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER IN ACCORDANCE WITH THE TERMS OF THE APA (AS MAY BE MODIFIED IN ACCORDANCE WITH THE BID PROCEDURES) UNTIL THE ENTRY OF ONE OR MORE ORDERS OF THE BANKRUPTCY COURT APPROVING OTHER QUALIFIED BIDDERS AS THE SUCCESSFUL BIDDER(S). UPON THE ENTRY OF ONE OR MORE ORDERS OF THE BANKRUPTCY COURT APPROVING OTHER QUALIFIED BIDDERS AS THE SUCCESSFUL BIDDER(S), EACH QUALIFIED BID THAT IS NOT A SUCCESSFUL BID SHALL BE DEEMED WITHDRAWN AND TERMINATED.

### Back-Up Bidder

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise next best Qualified Bid for the Assets at the Auction (the "**Back-Up Bid**") will be required to serve as the back-up bidder (the "**Back-Up Bidder**") for such Assets and keep such Back-Up Bid open and irrevocable until the first to occur of (i) 45 days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtors of the release by the Debtors of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on its part or otherwise, the Back-Up Bidder will be deemed the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

### Acceptance and Termination of Qualified Bids

The Debtors intend to sell the Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Successful Bid(s). The Debtors will be deemed to have accepted the Successful Bid(s) only upon entry of the Sale Order.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on **August 7, 2015 at 10:00 a.m. (EDT)** and may be adjourned or rescheduled without notice. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s). Unless the Bankruptcy

8

Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Proposed Sale and there will be no further bidding at the Sale Hearing.

## Terms of Sale

Except as and to the extent provided in the APA(s), and subject to Bankruptcy Court approval, the sale of the Assets shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature or description by the Debtors or their agents, and by submitting a bid, each bidder is deemed to acknowledge and agree to the foregoing. Subject to Bankruptcy Court approval and the terms of the APA(s), all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the petition date of the Debtors' chapter 11 cases, whether at law or in equity (collectively "**Interests**"), to the fullest extent available under section 363 of the Bankruptcy Code with such Interests, if any, attaching to the net proceeds of the sale of the Assets in the same order, dignity and priority as existed at the consummation of the Sale Transaction and subject to the conditions set forth in the APA(s). Notwithstanding the foregoing, the Debtors, subject to any prior order of the Bankruptcy Court, reserve the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Interests under applicable law.

## Return of Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the escrow agent (the "**Escrow Agent**") and will not become property of the Debtors' estates absent further order of the Bankruptcy Court. Any interest earned on any Deposit shall be remitted to the appropriate Qualified Bidder if the Deposit is returned to such Qualified Bidder. Within five business days after the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s), the Escrow Agent shall return the Deposits made by any Qualified Bidders other than the Successful Bidder(s).

If the Successful Bidder(s) fails to consummate the Proposed Sale because of a breach or failure to perform on the part of the Successful Bidder(s), the Debtors shall be entitled to retain the Deposit(s) of the Successful Bidder(s), if any, in addition to other additional remedies available to the Debtors under applicable law. The Debtors shall credit the Deposit(s) of the Successful Bidder(s), if any, towards the purchase price at the time of funding pursuant to the terms of the APA(s).

## Damages

If the Successful Bidder(s) fails to consummate the Proposed Sale because of a breach, default, or failure to perform by the Successful Bidder(s), the Debtors reserve the right to seek all available damages from the Successful Bidder(s), including specific performance.

9

### Reservation of Rights

The Debtors, after consultation with the Consultation Parties, reserve the right to (i) modify the Bid Procedures, including, without limitation, modifying the requirements for a Qualified Bid, at or prior to the Auction, if such modification will better promote the goals of the Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the Proposed Sale, and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice, in each case, in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court or the Ontario Superior Court of Justice (the "**Canadian Court**") and the Debtors deem such modifications consistent with the performance of their fiduciary obligations.

### Independent Evaluation

Except as otherwise expressly provided in the Bid Procedures or any Purchase Agreement, by submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Debtors, the Assets, and the Proposed Sale prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets, or the completeness of any information provided in connection with the Debtors, the Assets, and the Proposed Sale.

### Jurisdiction

The Bankruptcy Court and, as applicable, the Canadian Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale Transaction, the Bid Procedures, any APA, and any other matter that in any way relates to the foregoing. All entities that submit a bid for the purchase of the Assets shall be deemed to have (i) consented to the core jurisdiction of, and venue in, the Bankruptcy Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Sale Transaction, the Bid Procedures, any APA, and any other matter that in any way relates to the foregoing.

10

**Exhibit B**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x
:
In re:                                                    :    Chapter 11
                                                          :
COLT HOLDING COMPANY, *et al.*,[1]                        :    Case No. 15-11296 (   )
                                                          :
                                        Debtors.          :    Joint Administration Requested
                                                          :
----------------------------------------------------------x

### NOTICE OF (I) PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUCTION AND (III) SALE HEARING THEREOF

**PLEASE TAKE NOTICE** that, on June 14, 2015, upon the consent of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered orders for relief commencing chapter 11 cases for each of the Debtors. Pursuant to the Court's Order Directing the Joint Administration of the Debtors' chapter 11 cases entered on [●], 2015, these cases are jointly administered under case number 15-[●]. On June [●], 2015 the Debtors' chapter 11 cases were recognized as foreign main proceedings by the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") pursuant to part IV of the *Companies Creditors Arrangement Act (Canada)*.

**PLEASE TAKE FURTHER NOTICE** that on [●], 2015, the Debtors filed the *Debtors' Motion, Pursuant to 11 U.S.C. §§ 105, 363, and 365, and Fed. R. Bankr. P. 2002, 6004, 6006, 9008 and 9014, for Entry of (A) An Order (I) Approving Bid Procedures in Connection with the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Such Sale, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling the Hearing to Consider Approval of Such Sale, and (V) Granting Certain Related Relief; and (B) An Order Approving the Sale of Substantially all of the Debtors' Assets* (the "**Sale Motion**")[2] to, among other things, (a) establish auction and bid procedures (the "**Bid Procedures**") with respect to the sale (the "**Sale Transaction**") of substantially all of their assets (the "**Assets**"), (b) schedule an auction

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Sale Motion.

(the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the Sale Transaction, and (c) approve the sale of the Assets and the assumption and assignment of certain contracts and leases relating thereto free and clear of all liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that on [●], 2015, the Court entered an order approving the Bid Procedures and scheduling the Auction and Sale Hearing (the "**Bid Procedures Order**").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2015, the Canadian Court recognized and gave full force and effect to the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors propose that the Auction will, if necessary, be conducted at the offices of O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 on August 3, 2015 at 10:00 a.m. (EDT). The Auction will continue until such time as the highest or otherwise best offer is determined. The Debtors, in consultation with the Consultation Parties, may adopt rules for the Auction that will promote the goals of the Auction process and that are not inconsistent with any of the provisions of the Bid Procedures. Only bidders who submit bids in accordance with the Bid Procedures will be allowed to attend the Auction. A copy of the Bid Procedures is attached as Exhibit A to the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to approve any Sale Transaction with respect to any bid accepted by the Debtors shall be conducted by the Court on August 7, 2015 at 10:00 a.m. (EDT) and may be adjourned or rescheduled without notice.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will publish a summary copy of this notice in *The New York Times* or *The Wall Street Journal* and *Globe & Mail (national edition)* after the entry of the Bid Procedures Order, subject to applicable publication deadlines.

**PLEASE TAKE FURTHER NOTICE THAT OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, MUST BE FILED AND SERVED SO AS TO BE ACTUALLY RECEIVED BY THE OBJECTION NOTICE PARTIES BY JULY 31, 2015 AT 4:00 P.M. (EDT).**

**PLEASE TAKE FURTHER NOTICE** that the Objection Recipients are (i) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.), proposed co-counsel to the Debtors, (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.), proposed co-counsel to the Debtors, (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.), counsel to the Prepetition Term Loan Lenders and Prepetition Term Loan Agent, (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Prepetition Senior Loan Lenders, (v) Holland & Knight LLP, 131 South Dearborn Street, Chicago, Illinois 60603, counsel to the Prepetition Senior Loan Agent, (vi) Skadden, Arps,

2

Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the Sponsor, (vii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.), (viii) the IRS, (ix) the United States Department of Justice, and (x) any persons who have filed a request for notice in the above-captioned chapter 11 cases

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

This notice is qualified in its entirety by the Bid Procedures Order. All persons and entities are urged to read the Bid Procedures Order and the provisions thereof carefully. To the extent that this notice is inconsistent with the Bid Procedures Order, the terms of the Bid Procedures Order shall govern.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the fuller terms and conditions of the Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Sale Motion, the forms of Asset Purchase Agreement filed in connection with the Sale Motion, or the Bid Procedures Order, may make a written request to: (i) O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036, Attn: John Rapisardi, Esq., Fax: (212) 326-2961, Email: jrapisardi@omm.com; (ii) co-counsel for the Debtors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins, Esq., Fax: (302) 651-7701, Email: collins@rlf.com. In addition, copies of the Sale Motion, the Bid Procedures Order and this Notice may be examined by interested parties (i) free of charge at the website established for these chapter 11 cases by the Debtors' Court approved claims agent, Kurtzman Carson Consultants, at http://www.kccllc.net/coltdefense, or (ii) on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

Dated: _____, 2015
         Wilmington, Delaware

                    **RICHARDS, LAYTON & FINGER, P.A.**
                    Mark D. Collins (No. 2981)
                    Jason M. Madron (No. 4431)
                    One Rodney Square
                    920 North King Street
                    Wilmington, Delaware 19801
                    Telephone:  (302) 651-7700
                    Facsimile:  (302) 651-7701

                    - and -

                    **O'MELVENY & MYERS LLP**
                    John J. Rapisardi (*pro hac vice* admission pending)
                    Peter Friedman (*pro hac vice* admission pending)
                    Joseph Zujkowski (*pro hac vice* admission pending)
                    Times Square Tower
                    Seven Times Square
                    New York, NY 10036
                    Telephone:  (212) 326-2000
                    Facsimile:  (212) 326-2061

                    *Proposed Attorneys for the Debtors*
                    *and Debtors in Possession*

## Exhibit C

### Assumption and Assignment Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
                         :

In re:                          :    Chapter 11

COLT HOLDING COMPANY, *et al.*,[1]   :    Case No. 15-11296 (  )
                         :

                Debtors.   :    Joint Administration Requested
                         :
------------------------------------------------------x

### NOTICE OF PROPOSED ASSUMPTION, ASSIGNMENT AND CURE
### AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED
### LEASES RELATED TO THE SALE OF THE ASSETS OF THE DEBTORS

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH COLT HOLDING COMPANY OR ONE OR MORE OF ITS AFFILIATED DEBTORS (COLLECTIVELY, THE *"DEBTORS"*). PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

**PLEASE TAKE NOTICE** that, on June 14, 2015, the Debtors filed a motion (the "**Sale Motion**") to, among other things, (a) establish auction and bid procedures (the "**Bid Procedures**") with respect to the sale (the "**Sale Transaction**") of substantially all of their assets (the "**Assets**"), (b) schedule an auction and sale hearing (the "**Sale Hearing**") with respect to the Sale Transaction, and (c) approve the sale of the Assets and the assumption and assignment of certain contracts and leases relating thereto free and clear of all liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2015, the Court entered an order (the "**Bid Procedures Order**")[2] approving the Bid Procedures and setting a date for the Sale Hearing. The Sale Hearing is currently scheduled to be held on August 7, 2015 at 10:00 a.m. (EDT) at the United States Bankruptcy Court for the District of Delaware, [●], before the Honorable [●], United States Bankruptcy Court Judge, to consider the Debtors' selection of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Bid Procedures Order.

highest or otherwise best bid and the approval of the Sale Transaction. The Sale Hearing may be adjourned or rescheduled without notice.

**PLEASE TAKE FURTHER NOTICE** that on [●], 2015, the Ontario Superior Court of Justice (Commercial List) recognized and gave full force and effect to the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2015, the Debtors and [NewCo] entered into an asset purchase agreement for sale of the Assets (the "**Stalking Horse Purchase Agreement**"), subject to receipt of higher and better offers pursuant to the Bid Procedures

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Motion, the Debtors have sought authorization to assume and assign certain executory contracts and unexpired leases relating to the Assets (the "**Designated Contracts**") upon consummation of the transactions contemplated by the Sale Transaction. A list of the executory contracts and unexpired leases proposed to be assumed is attached hereto as Exhibit 1 and will also available on the Internet at http://www.kccllc.net/coltdefense (the "**Website**"), or upon request to the Debtors' noticing agent, Kurtzman Carson Consultants, at 2335 Alaska Avenue, El Segundo, CA 90245. If any executory contract or unexpired lease is proposed to be assumed by being (i) added to the schedule of Designated Contracts attached to the Stalking Horse Agreement or (ii) included in a schedule of Designated Contracts attached to the purchase agreement included in any other qualified bid for the Assets (a "**Qualified Bid**"), a copy of the applicable notice shall be served on the counterparty by overnight courier service within one business day of such addition (and in no event less than one business day before the Sale Hearing).

**PLEASE TAKE FURTHER NOTICE** that section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. The required cure amount (the "**Cure Amount**") for each Designated Contract calculated by the Debtor(s) is listed on Exhibit 1 hereto and on the Website. Please note that if no amount is stated for a particular Designated Contract, the Debtor(s), as applicable, believes that there is no Cure Amount outstanding for such contract or lease.

Pursuant to the Bid Procedures Order, you must file and serve any objections to (i) the proposed assumption and assignment set forth in this Assumption and Assignment Notice and (ii) if applicable, the proposed Cure Amount, **no later than 5:00 p.m. (EDT) on July 27, 2015**; *provided, however,* if (a) the Cure Amount associated with any such executory contract or unexpired lease is modified, or (b) an executory contract or unexpired lease is proposed to be assumed pursuant to the purchase agreement accompanying any other Qualified Bid, any counterparty to such a Designated Contract may file an objection to the aforesaid addition or modification at any time prior to the Sale Hearing or by appearing and objecting at the Sale Hearing (as applicable, the "**Objection Deadline**").

To the extent that you object to (i) the proposed assumption and assignment of your respective Designated Contract as set forth in the Assumption and Assignment Notice or (ii) the Cure Amount, then **you must file with the Bankruptcy Court and serve an objection upon the following parties, so as to be actually received or presented by no**

2

**later than the applicable Objection Deadline:** (a) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Tiiara Patton, Esq.); (b) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 19919 (Attn: John Longmire, Esq.); (c) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Brett Lawrence, Esq. and Sayan Bhattacharyya, Esq.), counsel to the Current Asset Credit Facility Agent; (d) Skadden, Arps, Slate, Meagher & Flom LLP; 4 Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), counsel to the Sponsor. **Any objection to the proposed assumption and assignment must state with specificity the legal and factual basis on which the objection is premised. Any objection to the Cure Amount must state with specificity what other Cure Amount is required and provide appropriate documentation in support thereof.**

**PLEASE TAKE FURTHER NOTICE** that your objection, if any, will be heard and determined at the Sale Hearing unless the Debtors and the Successful Bidder agree otherwise or the Court orders otherwise.

**PLEASE TAKE FURTHER NOTICE** that, if an objection to a Cure Amount is filed, the Successful Bidder reserves the right to delete the applicable contract or lease as a Designated Contract if the Cure Amount is ultimately determined by order of the Court to be higher than the Cure Amount set forth on Exhibit 1 hereto.

**PLEASE TAKE FURTHER NOTICE** that, if no objection to the assumption and assignment of a Designated Contract or Cure Amount is timely filed and served, (a) the counterparty to such a Designated Contract shall be deemed to have consented to the assumption and assignment of the Designated Contract in connection with the Sale Transaction and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (b) the Cure Amount set forth on Exhibit 1 or on the Website shall be controlling, notwithstanding anything to the contrary in any Designated Contract, or any other document, and the counterparty to a Designated Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the successful bidder, or the property of any of them.

**PLEASE TAKE FURTHER NOTICE** that the listing of a Designated Contract on Exhibit 1 does not constitute an admission that the agreement is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action and defenses with respect to the Designated Contracts listed on Exhibit 1.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY DESIGNATED CONTRACT SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED**

3

**EXECUTORY CONTRACT AT ANY TIME BEFORE THE DEBTORS ASSUME SUCH EXECUTORY CONTRACT. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT.**

Dated: _____, 2015
      Wilmington, Delaware

            **RICHARDS, LAYTON & FINGER, P.A.**
            Mark D. Collins (No. 2981)
            Jason M. Madron (No. 4431)
            One Rodney Square
            920 North King Street
            Wilmington, Delaware 19801
            Telephone:  (302) 651-7700
            Facsimile:  (302) 651-7701

            - and -

            **O'MELVENY & MYERS LLP**
            John J. Rapisardi (*pro hac vice* admission pending)
            Peter Friedman (*pro hac vice* admission pending)
            Joseph Zujkowski (*pro hac vice* admission pending)
            Times Square Tower
            Seven Times Square
            New York, NY 10036
            Telephone:  (212) 326-2000
            Facsimile:  (212) 326-2061

            *Proposed Attorneys for the Debtors*
            *and Debtors in Possession*

4

**Exhibit 1 to**
**Assumption and Assignment Notice**

**Designated Contracts**

| Counterparty Name | Title or Description of Contract | Cure Amount, if any |
|---|---|---|
|  |  |  |

**Exhibit B**

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                      :    Chapter 11

                                                            :
COLT HOLDING COMPANY LLC, et al.,[1]                         :    Case No. 15-11296 (    )

                                                            :
                                          Debtors.          :    Joint Administration Requested

                                                            :

------------------------------------------------------------x

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated June 14, 2015 (the "**Motion**"), of Colt Holding Company

LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") pursuant to

sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and

rules 2002, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") for, among other things, entry of an order (i) authorizing the sale of

substantially all of the Debtors' assets to [NewCo] or its Permitted Designee (the "**Purchaser**")

pursuant to that certain Asset Purchase Agreement, entered into on or about [●], 2015, attached

to this Order as Exhibit 1 (the "**APA**"),[2] free and clear of liens, claims, encumbrances, and other

interests, except to the extent specifically provided in the APA, including, without limitation,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the APA.

rights or claims based on any taxes or successor or transferee liability (the "**Sale Transaction**"),

(ii) authorizing the assumption and assignment of certain executory contracts and unexpired

leases in connection with the Sale Transaction, and (iii) granting certain related relief, all as more

fully described in the Motion and the APA; and the Court having entered an order on [●] (the

"**Bid Procedures Order**," see Docket No. [●]) (i) approving proposed procedures (the "**Bid**

**Procedures**") for submitting competing bids for the purchase of substantially all of the Debtors'

assets (the "**Assets**"), (ii) approving procedures for the assumption and assignment of certain

executory contracts and unexpired leases in connection with the Sale Transaction (the

"**Assumption and Assignment Procedures**"), (iii) scheduling a deadline to submit bids for

substantially all of the Debtors' assets (the "**Bid Deadline**") and a hearing to consider approval

of the Sale Transaction (the "**Sale Hearing**"), (iv) approving the form and manner of notice of

(a) the date, time and place of the hearing to consider entry of the Bid Procedures Order (the

"**Bid Procedures Hearing**"), (b) the Bid Deadline, (c) the assumption and assignment of certain

executory contracts and unexpired leases in connection with the Sale Transaction, and (d) the

date, time and place of the Sale Hearing, and (v) granting certain related relief; and the Sale

Hearing having been held on [●], 2015; and upon the record of the Sale Hearing and all of the

proceedings had before the Court; and the Court having reviewed the Motion and all affidavits,

declarations, responses, and objections thereto and found and determined that the relief requested

in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion and at the Sale Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor:

RLF1 12228374v.1

**THE COURT HEREBY FINDS THAT:**[3]

### Jurisdiction and Venue

A.    This Court has jurisdiction over the Motion, the APA, the Sale Transaction, the assumption and assignment of the Selected Contracts, and all of the other transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

B.    The statutory predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014.

### Final Order

C.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

### Compliance with Bid Procedures Order

D.    As demonstrated by (i) the testimony and other evidence proffered or introduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in compliance in all respects with the Bid Procedures and the Bid Procedures Order. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence, (ii) submit bids and to

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

submit higher or otherwise better bids to purchase the Purchased Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order. The Bid Procedures were non-collusive, designed and implemented in good faith, substantively and procedurally fair to all parties, and obtained the highest and best value for the Purchased Assets for the Debtors, their creditors and their estates. In accordance with the Bid Procedures, the Debtors determined that the bid submitted by the Purchaser and memorialized by the APA is the Successful Bid (as defined in the Bid Procedures).

## Notice

E.     As evidenced by the affidavits and certificates of service and publication previously filed with the Court, in light of the exigent circumstances of these bankruptcy cases and based on the representations of counsel at the Bid Procedures Hearing and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the Bid Procedures Hearing, the Sale Transaction, the assumption and assignment of the Selected Contracts, all of the other transactions contemplated by the APA, and the Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c) and 9014, and all applicable provisions of the Bankruptcy Code and the Local Bankruptcy Rules for the District of Delaware and in compliance with the Bid Procedures Order; (ii) such notice was good, sufficient, reasonable, and appropriate under the particular circumstances of these chapter 11 cases, and reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and other interests, including, without limitation, any holder asserting any rights or claims based on any taxes or successor or transferee liability, about the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the Bid Procedures Hearing, the Sale Transaction, the assumption and assignment of the Selected Contracts, all of the other transactions contemplated by the APA, and the Sale

- 4 -

Hearing; and (iii) no other or further notice of the Motion, the Bid Procedures, the Assumption and Assignment Procedures, the Bid Procedures Hearing, the Sale Transaction, the assumption and assignment of the Selected Contracts, all of the other transactions contemplated by the APA, the Sale Hearing, or any matters in connection therewith is or shall be required. With respect to entities whose identities are not reasonably ascertainable by the Debtors, publication of the Sale Notice (as defined in the Motion) in [*The New York Times/The Wall Street Journal*] and *Globe & Mail (national edition)* on [●], 2015 was sufficient and reasonably calculated under the circumstances to reach such entities.

### Corporate Due Diligence

F.    The Debtors appointed an Independent Committee when it became apparent that the Purchaser, an insider of the Debtors, sought to be selected as the Stalking Horse Purchaser and to engage in the Auction and Bidding Process. The Independent Committee consisted of General George W. Casey, Jr., Alan B. Miller, and Field Marshal the Lord Guthrie of Craigiebank. Based on the record and evidence adduced at the Sale Hearing, it was established that the Independent Committee was fully engaged and informed with respect to all aspects of the Sale Transaction and acted freely and in the Debtors' best interests without being under the control of the Purchaser. The Debtors engaged in an active and diligent search for third party bidders seeking to obtain the highest and best offer, and the Independent Committee engaged without coercion in true arm's length negotiations with the Purchaser concerning the terms of its bid. The Independent Committee had full authority and ability to abandon the Stalking Horse Bid in favor of a competing bid that the Independent Committee concluded was a better deal. Based on evidence adduced at the Sale Hearing, it was established that the Sale Transaction and sale process was transparent and fair in all respects.

RLF1 12228374v.1

**Corporate Authority**

G.      Each Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction, and the assumption and assignment of the Selected Contracts, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction, and the assumption and assignment of the Selected Contracts, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

**Good Faith**

H.      The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar provisions under bankruptcy and nonbankruptcy law. The Purchaser has at all times acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts. The APA and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, were negotiated, proposed and entered into by the Sellers, and the Purchaser without collusion, in good faith and from arm's length bargaining positions, and such parties are "unrelated" for purposes of ERISA Section 4204, as may be applicable. None of the Sellers, the Purchaser, the

- 6 -

DIP Lenders and the Prepetition Lenders, or their respective agents, officials, personnel, representatives, and advisors, has engaged in any conduct that would cause or permit the avoidance of the APA or any of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, or the imposition of costs, fees, expenses or damages under section 363(n) of the Bankruptcy Code.

## Business Justification

I.     The Debtors have demonstrated good, sufficient and sound business reasons and compelling circumstances to enter into the APA and to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and creditors, and other parties in interest. Such business reasons include, but are not limited to, the facts that (i) the APA and the terms thereof constitute the highest and best offer for the Purchased Assets and provide fair and reasonable consideration for the Purchased Assets, (ii) no other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates than the Purchaser, (iii) the Sale Transaction pursuant to the terms of the APA presents the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses, (iv) the consideration to be provided by the Purchaser under the APA exceeds the liquidation value of the Purchased Assets, and (v) unless the Sale Transaction and all of the other transactions contemplated by the APA are concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries to creditors may be diminished. The Debtors'

determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

J.    The terms and conditions of the APA, including, without limitation, the consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable. Approval of the Motion, the APA, and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

### No Fraudulent Transfer

K.    The consideration provided by the Purchaser for the Purchased Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

L.    The Purchaser is not holding itself out to the public as a continuation of any of the Debtors. The Purchaser is not a successor to any of the Debtors or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities amounts to a consolidation, merger or *de facto* merger of the Purchaser with or into any of the Debtors. None of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying or defrauding

- 8 -

creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

### Free and Clear

M.    The transfer of the Purchased Assets to the Purchaser will be legal, valid, and effective transfers of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), including, without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any taxes or successor or transferee liability, including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal or state tax laws or doctrines of successor or transferee liability.

N.      The Sellers may transfer the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability and (ii) non-Debtor parties to the Selected Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability and (ii) non-Debtor parties to the Selected Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

O.      The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction, and the assumption and assignment of the Selected Contracts, (i) if the transfer of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if the Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Purchaser with respect to the Purchased

Assets, to the Permitted Exceptions) (collectively, the "**Retained Liabilities**"). The Purchaser will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction, and the assumption and assignment of the Selected Contracts, unless this Court expressly orders that none of the Purchaser, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets, will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability, or Retained Liabilities.

P.     Not transferring the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), including, without limitation, rights or claims based on any taxes, successor or transferee liability, or Retained Liabilities, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Q.     Without limiting the generality of the foregoing, none of the Purchaser, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests relating to any U.S. federal, state or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the

- 11 -

recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

## Validity of Transfer

R.    The consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contract, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

S.    The Purchased Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

## Selected Contracts

T.    The assumption and assignment of the Selected Contracts, free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), pursuant to the terms of this Order is integral to the transactions contemplated by the APA and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

- 12 -

U.    Pursuant to the terms of the APA, on or before the Closing Date, the Purchaser shall have, except as otherwise expressly agreed to between the Purchaser and such counterparty: (i) cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Selected Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Selected Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of its future performance under the Selected Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

### Exculpation and Release

V.    The exculpation set forth in paragraph 33 of this Order exculpates parties critical to the formulation, negotiation, and implementation of the APA and the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities. Such exculpation is (i) a limited exculpation, which includes an appropriate carve-out for fraud, gross negligence, and willful misconduct, (ii) appropriate under the circumstances, fair, equitable, reasonable, supported by adequate consideration, and in the best interests of the Debtors, their estates and creditors, and all parties in interest, and (iii) consistent with applicable law. The exculpation set forth in paragraph 33 of this Order is necessary to protect parties who have made substantial contributions to the chapter 11 cases, and whose efforts have conferred significant value upon the Debtors' estates.

W.    The release set forth in paragraph 34 of this Order is (i) appropriate under the circumstances, fair, equitable, reasonable, supported by adequate consideration, and in the best interests of the Debtors, their estates and creditors, and all parties in interest and (ii) consistent with applicable law. Each of (i) the Debtors, (ii) the DIP Lenders and DIP Agents, (iii) the Prepetition Lenders, (iv) the Purchaser (v) the members and shareholders of the Purchaser and its affiliates, (vi) the Prepetition Term Loan Agent and the Prepetition Senior Loan Agent, and (vii) the current and former principals, members, partners, officers, directors, employees, legal, financial, and tax advisors, and other representatives of each of the parties in clauses (i) through (vii) (each in its capacity as such) (collectively, the **"Released Parties"**) have made substantial contributions to the chapter 11 cases, and these efforts have conferred significant value upon the Debtors' estates. The release by the Debtors set forth in paragraph 34 of this Order is essential consideration for the substantial contributions made by the other Released Parties throughout the chapter 11 cases. Pursuing any claims released by the Debtors pursuant to paragraph 34 of this Order would not be in the best interest of the Debtors' various constituencies, and the associated costs outweigh any potential benefit from pursuing such claims.

## Compelling Circumstances for an Immediate Sale

X.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, occur within the time constraints set forth in the Motion, the Bid Procedures Order, and the APA. Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

- 14 -

Y.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities, prior to, and outside of, a chapter 11 plan because, among other things, confirmation of a chapter 11 plan is not feasible and the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. The transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

Z.      Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price under the APA, the consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, constitutes a reasonable and sound exercise of the Debtors' business judgment.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.      The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, is authorized and approved.

2.    Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

3.    This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

### Approval of the APA

4.    The APA, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Selected Contracts, and the assumption of the Assumed Liabilities, and all the terms and conditions thereof, are approved. If there is any conflict between the APA and this Order, this Order shall govern.

5.    Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the APA and consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, pursuant to, and in accordance with, the terms and provisions of the APA and this Order.

6.    The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments and documents that the Sellers or the Purchaser deem necessary or appropriate to implement the APA and effectuate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to

- 16 -

possession the Purchased Assets or as may be necessary or appropriate to the performance of any other obligations as contemplated by the APA.

7.      This Order and the APA shall be binding in all respects upon the Debtors, their affiliates, all known and unknown creditors of, and holders of equity security interests in, any Debtor, including, without limitation, any holders of liens, claims, encumbrances, or other interests of any kind whatsoever, including, without limitation, any holder asserting rights or claims based on any taxes or successor or transferee liability, all non-Debtor parties to the Selected Contracts, the Purchaser, the Purchased Assets, all interested parties, their successors and assigns, and any trustees appointed in the Debtors' chapter 11 cases or upon the conversion of any of such cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any plan confirmed in any of the Debtors' chapter 11 cases, any order confirming any such plan, any order converting any of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, or any order dismissing any of the Debtors' bankruptcy cases shall conflict with or derogate from the provisions of the APA or this Order.

**Transfer of the Purchased Assets Free and Clear**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, in accordance with the APA, (a) the Purchased Assets shall be transferred to the Purchaser and (b) the Purchased Assets shall be free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), including, without limitation, rights or claims based on any taxes or successor or transferee liability.

9.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

RLF1 12228374v.1

creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing Date, or the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors and assigns, its property, and the Purchased Assets, such persons' or entities' liens, claims, encumbrances, or other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability. For the avoidance of doubt, nothing in this paragraph 9 shall prejudice (a) the rights of the DIP Lenders' or the Prepetition Lenders with respect to the Purchaser or (b) any deficiency claim held by the DIP Lenders or the Prepetition Lenders against any of the Debtors.

10.     This Order (a) shall be effective as a determination that, as of the Closing Date, (i) no liens, claims, encumbrances, or other interests of any kind or nature (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions) shall be assertable against the Purchaser, its affiliates, its present or contemplated members or shareholders, successors, or assigns, or any of their respective assets (including, without limitation, the Purchased Assets), (ii) the Purchased Assets shall have been transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased

Assets, to the Permitted Exceptions), and (iii) the transfers described herein have been effected and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

11.     The transfer of the Purchased Assets to the Purchaser in accordance with the APA constitutes legal, valid, and effective transfers of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), as set forth in section 363(f) of the Bankruptcy Code.

12.     On the Closing Date, each of the Sellers' creditors and any other holder of a lien, claim, encumbrance, or other interest of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions), is authorized and directed to execute such documents and take all other actions as may be necessary to release its lien, claim, encumbrance, or other interest in the Purchased Assets, if

any, as such lien, claim, encumbrance, or other interest may have been recorded or may otherwise exist. For the avoidance of doubt, nothing in this paragraph 12 shall prejudice (a) the DIP Lenders and the Prepetition Lenders' rights with respect to the Purchaser or (b) any deficiency claim held by the DIP Lenders and the Prepetition Lenders against any of the Debtors, or constitute an admission by any Seller that any such lien, claim, encumbrance or other interest is valid and enforceable.

13.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or other interest (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions) in the Sellers or the Purchased Assets shall not have delivered to the Sellers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, encumbrances, or other interests which the person or entity has with respect to the Sellers, the Purchased Assets, or otherwise, then (a) the Seller and the Purchaser are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers and the Purchased Assets and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Sellers and the Purchased Assets.

14.    On or prior to the Closing Date, all persons or entities in possession of any of the Purchased Assets are directed to surrender possession of such Purchased Assets to the Purchaser.

15.     Following the Closing Date, none of the Debtors, their affiliates, or any holder of any lien, claim, encumbrance, or other interest of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions) shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets, based on, or related to, any such lien, claim, encumbrance, or other interest, or based on any actions the Debtors may take in their bankruptcy cases.

16.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the APA and this Order; *provided, however,* that the foregoing restriction shall not prevent any person or entity from appealing this Order or opposing any appeal of this Order.

17.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

### Assumption and Assignment of the Selected Contracts

18.     Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to (a) assume each of the Selected Contracts and assign the Selected Contracts to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions) and (b) execute and deliver to the Purchaser such

documents or other instruments as may be reasonably requested by Purchaser to assign and transfer the Selected Contracts to the Purchaser.

19.    The amounts, if any, determined by the Debtors as necessary to be paid upon assumption of the Selected Contracts (the "**Cure Amounts**") set forth on Exhibit 2 attached to this Order are the sole amounts necessary to be paid upon assumption of the Selected Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code. Upon the payment of the Cure Amounts, if any, by the Purchaser, the Selected Contracts shall remain in full force and effect, and no default shall exist under the Selected Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Selected Contract contains an audit clause. After the payment of the Cure Amounts by the Purchaser, none of the Debtors or the Purchaser shall have any further liabilities to the counterparties to the Selected Contracts other than the Purchaser's obligations under the Selected Contracts that accrue and become due and payable on or after the Closing Date.

20.    Any provisions in any Selected Contract that prohibit or condition the Debtors' assignment of such Selected Contract or allow the party to such Selected Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the Debtors' assignment of such Selected Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

21.    Each Selected Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment

- 22 -

to the Purchaser of the Selected Contracts have been satisfied. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Selected Contracts, (ii) the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Selected Contracts, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Selected Contracts.

22.    The Purchaser has provided adequate assurance of future performance under the relevant Selected Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

23.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchaser as a result of the assumption, assignment and sale of the Selected Contracts. The validity of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts shall not be affected by any dispute between any of the Debtors or their affiliates and another party to a Selected Contract regarding the payment of any amount, including any Cure Amount under the Bankruptcy Code. Upon assignment to the Purchaser, the Selected Contracts shall be valid and binding, in full force and effect and enforceable by the Purchaser in accordance with their respective terms.

24.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Selected Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Selected Contracts existing as of and including the Closing Date under the APA or arising by reason of

the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts. Any party that may have had the right to consent to the assignment of a Selected Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Selected Contract.

### Related Relief

25.    None of the Purchaser, its present or contemplated members or shareholders, its successors or assigns, or any of the foregoing's respective affiliates, agents, officials, personnel, representatives, or advisors shall have any liability for any claim assertable against the Debtors or related to the Purchased Assets (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions). The Purchaser shall not be deemed, as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the transfer of the Purchased Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, without limitation, under any theory of successor or transferee liability, de facto merger or continuity, environmental, tax, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

26.     Effective upon the Closing Date and except as may be otherwise provided by stipulation filed with or announced to the Court with respect to a specific matter or an order of the Court, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its past, present or contemplated members or shareholders, its predecessors, successors and assigns, or the Purchased Assets, with respect to any claim against the Debtors (subject only, in the case of the Purchaser with respect to the Purchased Assets, to the Permitted Exceptions) or taxes or successor or transferee liability of the Purchaser for any of the Debtors, including, without limitation, the following actions (a) commencing or continuing any action or other proceeding pending or threatened against the Debtors as against the Purchaser, or its successors, assigns, affiliates, or their respective assets, including, without limitation, the Purchased Assets, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors or against the Purchaser, or its successors, assigns, affiliates, or its assets, including, without limitation, the Purchased Assets, (c) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance against the Debtors or against the Purchaser, or its successors, assigns, affiliates, or its assets, including, without limitation, the Purchased Assets, (d) asserting any setoff, right of subrogation, or recoupment of any kind for any obligation of any of the Debtors or against any obligation due the Purchaser, or its successors, assigns, affiliates, or their respective assets, including, without limitation, the Purchased Assets, (e) commencing or continuing any action, in any manner or place, that does not comply, or is inconsistent with, the provisions of this Order, or the agreements or actions contemplated or taken in respect thereof, or

RLF1 12228374v.1

(f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

27.    Except for the Permitted Exceptions (solely in the case of the Purchaser with respect to the Purchased Assets) or as expressly provided in the APA or this Order, the Purchaser shall not have any liability or responsibility for any liability or other obligation of the Sellers arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as expressly provided in the APA or this Order, the Purchaser shall not be liable for any liens, claims, encumbrances, or other interests of any kind or nature against the Sellers or any of their predecessors or affiliates, and the Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, tax, successor, or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Sellers or any obligations of the Sellers arising prior to the Closing Date.

28.    Without limiting the generality of the foregoing, none of the Purchaser, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests relating to any U.S. federal, state and local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors incur in connection with consummation of

- 26 -

the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

29.     The Purchaser has given fair and substantial consideration under the APA for the benefit of the Debtors and their creditors and estates. The consideration provided by the Purchaser for the Purchased Assets under the APA is greater than the liquidation value of the Purchased Assets, and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

30.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, may not be avoided under section 363(n) of the Bankruptcy Code.

31.     This Order (a) shall be effective as a determination that, except for the Permitted Exceptions (solely in the case of the Purchaser with respect to the Purchased Assets), on or prior to the Closing Date, all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets have been unconditionally released and terminated, and that the transfers described in this Order have been effected, and (b) shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

32.     Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts.

33.     To the fullest extent permissible under applicable law, except as otherwise provided in the APA or this Order, none of the Released Parties shall have or incur any liability to, or be subject to any right of action by, any holder of a claim against, or equity interest in, any of the Debtors or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents, acting in such capacity, or any of their successors and assigns, for any act or omission in connection with, related to or arising out of, the Debtors' chapter 11 cases, the operation of the Debtors' businesses during the chapter 11 cases, the investigation, formulation, preparation, negotiation, execution, delivery, implementation, or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, or any other contract, instrument, release, agreement, settlement, or document created, modified, amended, terminated, or entered into in connection with the APA, or any other act or omission in connection with the Debtors' bankruptcy; *provided, however,* that this paragraph 33 shall not affect the liability of any entity that otherwise would result from any act or omission to the extent that such act or omission is determined by a final, nonappealable order by the Bankruptcy Court or another court with jurisdiction to have constituted fraud, gross negligence, or willful misconduct by any Released Party.

RLF1 12228374v.1

34.     On the Closing Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Released Parties shall be deemed to completely, conclusively, absolutely, unconditionally, irrevocably, and forever release the other Released Parties from any and all claims, equity interests, liens, encumbrances, obligations, damages, demands, debts, suits, causes of action, judgments, liabilities, or rights whatsoever (including those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or occurrence taking place on or prior to the Closing Date in any way relating to the Debtors, the Debtors' chapter 11 cases, the business arrangements with any Debtor, for any act or omission in connection with, related to or arising out of, the chapter 11 cases, the investigation, formulation, preparation, negotiation, execution, delivery, implementation, or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, or any other contract, instrument, release, agreement, settlement, or document created, modified, amended, terminated, or entered into in connection with the APA, or any other act or omission in connection with the Debtors' bankruptcy, without further notice to or action by the Bankruptcy Court, or act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any entity; *provided* that nothing in this paragraph 34 shall release (a) any Released Party's rights to enforce the terms of the APA and any ancillary documents related thereto, (b) any claims, equity interests, liens, encumbrances, obligations, damages, demands, debts, suits, causes of action, judgments, liabilities, or rights whatsoever of the Debtors that are Purchased Assets, or (c) the liability of any entity that otherwise would arise from any

- 29 -

act or omission to the extent that such act or omission is determined by a final, nonappealable order by the Bankruptcy Court or another court with jurisdiction to have constituted fraud, gross negligence, or willful misconduct by any Released Party.

35.    Nothing in this Order or the APA releases, nullifies, or enjoins the enforcement of any Liability to a governmental unit under Environmental Laws or regulations (or any associated Liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, or operator of property after the date of entry of this Order. Nothing contained in this Order or in the APA shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing in this paragraph shall be interpreted to decide whether or not the Purchaser is the successor to the Debtors with respect to liability for penalties for days of violation under Environmental Laws or regulations prior to entry of this Order under any state law successor liability doctrine. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law. Any amounts that become payable by the Sellers to the Purchaser pursuant to the APA shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the APA without further Court order.

36.    The transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and

- 30 -

accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

37.    Subject to further Court order and consistent with the terms of the APA, the Debtors and the Purchaser are authorized to and shall take appropriate measures to maintain and preserve, until the earliest of (a) consummation of any plan for the Debtors, (b) conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and (c) dismissal of the Debtors' bankruptcy cases, (i) the books, records, and any other documentation, including tapes or other audio or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business and (ii) the cash management system maintained by the Debtors prior to the Closing Date, as such system may be necessary to effect the orderly administration of the Debtors' estates.

38.    No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, the Motion, and this Order.

39.    Except as set forth in the APA, there are no brokers involved in consummating the transactions contemplated by the APA, including, without limitation, the Sale

Transaction and the assumption and assignment of the Selected Contracts, and no brokers' commissions are due.

40.     The terms and provisions of the APA and this Order shall inure to the benefit of the Debtors, their estates, and their creditors, the Purchaser, and each of the foregoing's respective agents, officials, personnel, representatives, and advisors.

41.     The failure to specifically include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

42.     The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; *provided that* any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates. Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates shall be subject to further order of the Court, on appropriate notice. The Debtors shall provide the DIP Lenders and the Prepetition Lenders with notice of any modification, amendment, or supplement to the APA and any related agreements, documents, or other instruments at least one business day in advance of any such modification, amendment, or supplement.

43.     Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

44.     The provisions of this Order are nonseverable and mutually dependent on each other.

45.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

46.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Selected Contracts, the terms of this Order shall govern.

47.     This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the APA, all ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the Purchase Price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets, and (f) protect the Released Parties from any liability exculpated or released pursuant to this Order.

Dated: _____, 2015
       Wilmington, Delaware

                                        _____
                                        United States Bankruptcy Judge

- 33 -

**Exhibit 1 to Sale Order**

**Asset Purchase Agreement**

**Exhibit 2 to Sale Order**

**Cure Amounts**

## Exhibit C

**Stalking Horse Sale Term Sheet**

**THIS TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OF COLT DEFENSE LLC, OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET IS AN ADMISSION OF FACT OR LIABILITY, OR SHALL BE DEEMED BINDING ON ANY PARTY. THIS TERM SHEET CONTAINS MATERIAL NONPUBLIC INFORMATION AND, THEREFORE, IS SUBJECT TO FEDERAL SECURITIES LAWS. THE TERMS SET FORTH HEREIN ARE NON-BINDING AND DO NOT CREATE LEGALLY BINDING OBLIGATIONS AMONG THE PARTIES WITH RESPECT TO THE MATTERS SET FORTH BELOW. THE TRANSACTIONS CONTEMPLATED BY THIS PRELIMINARY TERM SHEET ARE SUBJECT TO, AMONG OTHER THINGS, THE EXECUTION AND DELIVERY OF DEFINITIVE DOCUMENTATION.**

### Summary of Principal Terms of Proposed Sale of Substantially All Assets of Colt Defense LLC and Certain of its Affiliated Debtors

The following summary of principal terms (the "**Term Sheet**") provides an outline of a proposed sale of substantially all of the assets of Colt Defense LLC ("**Colt Defense**") and certain of its affiliated debtors pursuant to sections 105, 363(b) and (f), and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Term Sheet is for internal use only and is meant only as a summary of terms to be used by the Debtors, NewCo and the Prepetition Lenders (each term as defined below) in negotiating the proposed sale.

**Constituents**

| | |
|---|---|
| **Colt** | Colt Holding Company LLC ("**Colt Holdings**"), Colt Security LLC, Colt Defense LLC ("**Colt Defense**"), Colt Canada Corporation, Colt's Manufacturing Company LLC, New Colt Holding Corp., Colt Finance Corp., Colt Defense Technical Services LLC, and Colt International Coöperatief U.A (collectively, the "**Debtors**"). |
| **Prepetition Lenders** | The lenders (the "**Prepetition Senior Lenders**"), and agent (the "**Senior Loan Agent**") under that certain Credit Agreement, dated February 9, 2015 (the "**Senior Loan Credit Agreement**"), among Colt Defense, Colt's Manufacturing Company LLC, and Colt Canada Corporation, as borrowers, certain subsidiary guarantors, and the Prepetition Senior Lenders and Senior Loan Agent, as amended, restated, supplemented or otherwise modified from time to time. The Prepetition Senior Lenders hold secured claims under the Senior Loan Credit Agreement equal to $35 million in initial principal, plus all other amounts and obligations (including, without limitation, all unpaid interest, fees and expenses) (the "**Senior Loan**"). |

The lenders (the **"Prepetition Term Loan Lenders"** and, together with the Prepetition Senior Lenders, the **"Prepetition Lenders"**) and agent (the **"Term Loan Agent"** and, together with the Senior Loan Agent, the **"Agents"**) under that certain Term Loan Agreement, dated November 17, 2014 (the **"Term Loan Agreement"**), among Colt Defense, Colt Finance Corp., New Colt Holding Corp., Colt's Manufacturing Company, LLC, and Colt Canada Corporation, as borrowers, certain subsidiary guarantors, and the Prepetition Term Loan Lenders and the Term Loan Agent, as amended, restated, supplemented or otherwise modified from time to time. The Prepetition Term Loan Lenders hold secured claims under the Term Loan Agreement equal to $72.6 million in initial principal, plus all other amounts outstanding (the **"Term Loan"**).

**Landlord**          NPA Hartford LLC (the "**Landlord**") as landlord under that certain Net Lease (the "**West Hartford Facility Lease**"), dated October 26, 2005, between Colt Defense and Landlord, as amended on October 25, 2012, and which expires on October 25, 2015.

**Sponsor**          Sciens Capital Management, LLC and its affiliated equity sponsors of the Debtors (the "**Sponsor**").

**Terms of Stalking Horse Bid**

**Sale**          The Term Sheet describes a proposed sale by the Debtors of all of the right, title, and interest in, to, and under the Purchased Assets (excluding the Excluded Assets) (each term as defined below) to a new entity organized by Sponsor ("**NewCo**") to acquire the Purchased Assets free and clear of any and all liens, claims, encumbrances, and other interests (other than those liens claims and encumbrances in respect of the Senior Loan, the Term Loan and the DIP Facilities to be assumed by NewCo), and the assumption by NewCo of the Assumed Liabilities (excluding the Excluded Liabilities) (each term as defined below), pursuant to sections 105, 363(b) and (f), and 365 of the Bankruptcy Code (collectively, the "**Sale**"). NewCo will be capitalized with assets sufficient for NewCo to discharge its obligations under the Asset Purchase Agreement (as defined below).

The Debtors and NewCo shall consummate the Sale on the first business day on which the following conditions and the conditions set forth in the Asset Purchase Agreement between NewCo and the Debtors (the "**Asset Purchase**

**Agreement**") have been satisfied or waived (such date, the "**Consummation Date**") pursuant to which the Sale Order (as defined below) has been entered and has become final.

The Asset Purchase Agreement shall memorialize the applicable provisions of the Term Sheet and contain customary representations, warranties, covenants, and conditions. For the avoidance of doubt, in the event of any inconsistency between the Term Sheet and the Asset Purchase Agreement, the Asset Purchase Agreement shall govern.

**Purchase Price**

The aggregate consideration for the Purchased Assets (collectively, the "**Purchase Price**") shall consist of the following consideration: (i) the assumption of the Senior Loan, the Term Loan and certain debtor in possession financing facilities extended by the Prepetition Senior Lenders (the "**Senior DIP Facility**") and the Prepetition Term Loan Lenders (the "**Term DIP Facility**" and, together with the Senior DIP Facility, the "**DIP Facilities**") in their entirety, (ii) the assumption of the Assumed Liabilities and (iii) the assumption of the executory contracts and unexpired leases as set forth in the Asset Purchase Agreement.

NewCo shall pay the Purchase Price to the Debtors on the Consummation Date.

**Purchased Assets / Excluded Assets**

"**Purchased Assets**" shall include all of the right, title, and interest of the Debtors in, to, and under, as of the Consummation Date, any and all of the assets, properties, rights, and claims of any kind or nature, which relate to the Debtors' business (the "**Business**") or which are used or useful in or held for use in, or were acquired in connection with, the operation of the Business, excluding only the Excluded Assets (as defined below).

The Purchased Assets shall include, without limitation, (i) all accounts receivable, (ii) all cash on hand (provided that an amount as set forth in the approved cash collateral budget (such amount not to exceed $500,000) shall be retained by the Debtors in order to fund certain wind-down fees and expenses), (iii) all intellectual property rights of the Debtors, (iv) all personal property of the Debtors, including all furniture, fixtures, and equipment, (v) all deposits and prepaid or deferred charges and expenses of the Debtors with respect to Assumed Contracts (as defined below) and any other permit, license, or other Purchased Asset, (vi) all

right, title, and interest of the Debtors in each owned property and under each real property lease which is an Assumed Contract, (vii) all of the documents that are used or useful in, held for use in or intended to be used in, or that arise primarily out of, the Business, including customer lists, records, equipment logs, maintenance records, (viii) all rights of the Debtors under the Assumed Vendor Claims (as defined below), (ix) all Assumed Contracts (as defined below), (x) all third party property and casualty insurance proceeds to the extent received or receivable in respect of the Business or the Purchased Assets, except to the extent such amount relates to an Excluded Liability, (xi) all general intangibles of the Debtors, (xii) all goodwill associated with the Purchased Assets, (xiii) all claims, causes of action, and rights of recovery related to the Purchased Assets, not including causes of action arising under chapter 5 of the Bankruptcy Code and all other causes of action that could be brought by the Debtors ("**Avoidance Actions**"), (xiv) any claim, right, or interest in any refund, rebate, abatement, or other recovery for taxes relating to the Purchased Assets or the Business, and (xv) any permits or licenses that are permitted to be transferred.

The Purchased Assets shall not include the following: (i) contracts and leases that are not Assumed Contracts, (ii) any permit or license that is not permitted to be transferred, (iii) equity securities of any subsidiary of the Debtors, (iv) Avoidance Actions (collectively, the "**Excluded Assets**").

**Assumed Liabilities / Excluded Liabilities**

"**Assumed Liabilities**" shall include only the following liabilities of the Debtors: (i) the Senior Loan, the Term Loan and the DIP Facilities in their entirety (subject to the terms set forth on Schedule 1 hereto), (ii) certain liabilities related to employees of the Debtors, (iii) all liabilities of the Debtors under the Assumed Contracts (as defined below) (including cure costs determined by an order of the Bankruptcy Court), (iv) all prepetition claims of the Debtors' vendors and suppliers (the "**Assumed Vendor Claims**"), (v) all payables incurred in the ordinary course of the Debtors' business during the Chapter 11 Cases (the "**Assumed Trade Payable Claims**"), (vi) all liabilities arising out of the operation of the Purchased Assets for periods following the Consummation Date, (vii) all tax liabilities related to the Purchased Assets or the Business for a tax period (or portion thereof) beginning after the Consummation Date and, except as provided below, all transfer taxes and other taxes similar to transfer taxes

- 4 -

payable with respect to the Sale (collectively, "**Transfer Taxes**"), but (a) excluding all income or franchise tax liabilities of the Debtors for any tax period and (b) excluding all Transfer Taxes in excess of a threshold to be determined, and (viii) certain additional liabilities identified on a schedule to be attached to the Asset Purchase Agreement, if any.

Any liabilities of the Debtors that are not Assumed Liabilities shall be "**Excluded Liabilities**".

**Assumed Contracts / Excluded Contracts**

"**Assumed Contracts**" shall include all of the Debtors' contracts, leases, and other obligations (and, in each case, associated cure obligations), subject to the right of NewCo to file a list of contracts that will not be assumed (each an "**Excluded Contract**") at any time prior to the commencement of the Auction; NewCo shall not assume or otherwise have any liability with respect to any Excluded Contract.

**Closing Conditions**

The Definitive Agreements (as defined below) shall contain, among other things, the following conditions to the obligation of NewCo to consummate the Sale in addition to other conditions that may be agreed upon by NewCo and the Debtors in the Definitive Agreements:

1. Receipt of all necessary governmental regulatory approvals and all other necessary consents related to the assignment of the Purchased Assets and the assumption and assignment of the Assumed Contracts shall have been received and be final (unless finality is waived by NewCo in its sole discretion);

2. NewCo and the Landlord shall have entered into a lease extension substantially on the terms set forth in that certain letter from Landlord to the Sponsor, dated June 12, 2015;

3. Entry of the Sale Order and such Sale Order having become final;

4. No injunctions or other order of any governmental authority preventing consummation of the Sale;

5. Lien releases and termination statements with respect to all liens (other than permitted liens) on the

- 5 -

Purchased Assets;

6. Accuracy of all previously made representations and warranties.

**The Sale**

**Sale Procedures**

The Sale shall be conducted in accordance with the procedures attached to the Term Sheet as <u>Exhibit A</u> (the "**Sale Procedures**"), which shall be in form and substance acceptable to the Debtors, the Prepetition Lenders and the lenders under the DIP Facilities (collectively, the "**Secured Lenders**"). To the extent that an Auction is necessary, all evaluations, determinations and negotiations made in connection with any offer submitted by a Potential Bidder (as defined in <u>Exhibit A</u>) will be performed by certain of the Debtors' independent directors and the Debtors' Chief Restructuring Officer.

**Sale Milestones**

- On or before June 15, 2015, the Debtors shall have filed (i) a motion seeking approval of the Sale Procedures and the Sale, (ii) a proposed order approving the Sale Procedures, (iii) an appropriate supporting declaration, in each case, in form and substance acceptable to the Debtors and the Secured Lenders, and (iv) a proposed order approving the Sale.[1]

- On or before July 13, 2015, the Bankruptcy Court shall have (i) held a hearing to consider approval of the Sale Procedures and (ii) entered an order approving the Sale Procedures, which order shall be in form and substance acceptable to the Debtors and the Secured Lenders (the "**Bid Procedures Order**").

- On or before July 13, 2015, the Debtors and NewCo shall have entered into the Asset Purchase Agreement together with related disclosure schedules

---

[1] The proposed order approving the Sale shall contain (i) mutual releases between and among the Released Parties (as defined below) and (ii) the exculpation of the Released Parties for any act taken or omitted to be taken prior to or after the Commencement Date in connection with the Chapter 11 Cases. The "**Released Parties**" shall be: (i) the Debtors, (ii) the Prepetition Lenders, (iii) NewCo, (iv) Sponsor, (v) the Agents, (vii) the lenders and agents under the DIP Facilities,, in each case in their capacity as such, and (vi) the current and former officers, directors, employees, legal, financial, and tax advisors, and other representatives of each of the parties in clauses (i)-(v), each in its capacity as such. The foregoing releases shall not include releases of any causes of action arising under chapter 5 of the Bankruptcy Code. For the avoidance of doubt, the releases described herein shall be traditional releases typically provided to good faith asset purchasers.

(as may be amended in the event that any other Qualified Bid (as defined below) is submitted), which shall (i) memorialize the Term Sheet and any non-material modifications resulting from the due diligence of the parties and (ii) be in form and substance acceptable to the Debtors, the Sponsor, and the Secured Lenders.

- Pursuant to the Bid Procedures Order, any and all Qualified Bids shall be submitted on or before July 30, 2015 (the "**Bid Deadline**").

- If any other Qualified Bid is submitted prior to the Bid Deadline, the Debtors shall have commenced the Auction, if any, on or before August 3, 2015.

- On or before August 7, 2015, the Bankruptcy Court shall have commenced a hearing (the "**Sale Hearing**") to consider approval of the Sale and shall have entered an order approving the Sale, which order shall be in form and substance acceptable to the Debtors and the Secured Lenders (the "**Sale Order**").

## Other Provisions

**Material Contracts**

The Debtors' entry into new, or renewal of existing, contracts having a term of one year or greater (as renewed, as applicable) or that may require the Debtors to incur potential aggregate liabilities of $50,000 or greater per annum shall be non-ordinary course contracts requiring the consent of the Secured Lenders and the approval of the Bankruptcy Court in accordance with section 363(b) of the Bankruptcy Code.

**Purchase Price Allocation**

Within sixty (60) days after the Consummation Date, NewCo shall deliver to the Debtors a schedule (the "**Allocation Schedule**") allocating the Purchase Price and any other items that are treated as additional purchase price for tax purposes among the Purchased Assets. The Allocation Schedule shall be reasonable and shall be prepared in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

**Employees / New Management**

NewCo shall assume all agreements relating to current employees but not former employees; provided, that the

existing long term incentive plan shall be replaced by the new MIP (as defined below).

## Corporate Governance

**Board**

The Governing Board of NewCo will include at least two independent members.

**Management / Consulting Agreements**

All existing management/consulting agreements with the Sponsor will be assumed by NewCo on existing terms, except as otherwise reflected on a schedule attached to the Asset Purchase Agreement.

**Status as a Private Company**

NewCo will be a private company as of the Consummation Date, and will not register its equity or debt with the Securities and Exchange Commission or list such equity or debt on an exchange.

**Management Incentive Plan**

On the Consummation Date, NewCo or a holding company of NewCo shall institute a management incentive plan ("**MIP**") for up to 15% of the equity of NewCo (in a form to be determined at a later date) or such holding company of NewCo calculated on a fully diluted basis on the following terms and conditions:

(i) Prior to the Consummation Date, 12% of the equity subject to the MIP will be allocated among the existing management at the discretion of the existing Governing Board; 3% will remain available for future hires.

(ii) 50% of the equity allocated to each member of the existing management team would vest on the first anniversary of the Consummation Date; the remaining 50% would vest on the second anniversary of the Consummation Date. This vesting schedule would accelerate following a change of control or material liquidity event.

(iii) The common equity subject to the MIP would be non-voting and non-transferrable except for customary transfers for family planning.

## Capitalization of NewCo

**Exit Facilities**

Subject to the closing of the Sale to NewCo, the Prepetition Lenders and the lenders under the DIP Facilities shall consent to the assumption of the Senior Loan, the Term Loan and the DIP Facilities by NewCo, subject to the terms set forth on Schedule 1 attached hereto.

- 8 -

**Sponsor Funding**   Subject to the closing of the Sale to NewCo, the Sponsor shall provide the new funding outlined on <u>Schedule 2</u> attached hereto to NewCo.

<u>**Definitive Agreements**</u>

The Asset Purchase Agreement, the agreements governing the Exit Facilities, and the Sponsor Funding, and such other definitive agreements for the acquisition of the Purchased Assets (collectively, the "**Definitive Agreements**") shall memorialize the Term Sheet and contain customary representations, warranties, covenants, and conditions. The signing of the Definitive Agreements shall be subject to, among other things, the negotiation by the Debtors, the Sponsor and the Secured Lenders of satisfactory terms and conditions for the Definitive Agreements. For the avoidance of doubt, in the event of any inconsistency between the Term Sheet and any Definitive Agreement, such Definitive Agreement shall govern.

RLF1 12228374v.1

## SCHEDULE 1
### Exit Facilities Terms

**Senior Exit Facility**

Substantially contemporaneously with NewCo's assumption of all obligations outstanding under the Senior Loan and the obligations outstanding under the Senior DIP Facility, such obligations shall be amended and restated by a facility (the "**Senior Exit Facility**") with the Prepetition Senior Lenders and the lenders under the Senior DIP Facility (in such capacity, the "**Senior Exit Lenders**") having the following terms: (x) a 10% cash interest rate (interest paid monthly in arrears), (y) 3 year maturity, with a 1 year maturity date extension at the option of the Company subject to (A) meeting a Fixed Charge Coverage Ratio (as defined in the Senior Loan Credit Agreement), as of the date of the exercise of the extension option, on a trailing four fiscal quarter basis tested at the end of the most recent fiscal quarter for which financial statements are available, of at least 1:50:1.00 and (B) the term (as such term may be extended) of the lease with respect to NewCo's primary manufacturing facility (such lease, including if such lease is the West Hartford Facility Lease, the "**Primary Lease**") expiring at least 1 year after such extended maturity date, and (z) other terms substantially identical to the existing Senior Loan Credit Agreement except as set forth herein, including, but not limited to, the following:

(a) excess cash flow sweep not subject to any prepayment penalties (terms of the excess cash flow sweep to be agreed upon by NewCo, the Prepetition Senior Lenders, and the Prepetition Term Loan Lenders); (b) a minimum liquidity in an amount to be mutually agreed and a collateral coverage covenant to be mutually agreed; (c) caps on unsecured debt and secured debt and no secured debt senior to (other than, solely in respect of Term Priority Collateral, the Term Exit Facility) or pari passu with the Senior Exit Facility (with baskets for $25 million of unsecured debt and $25 million of secured debt junior in lien priority to the Senior Exit Facility and the Term Exit Facility, in each case, subject to conditions to be agreed, including, without limitation, that the maturity date of such debt be at least 6 months after the maturity date of the Senior Exit Facility (including any extensions thereof)); (d) limitations on management fees, dividends and affiliate transactions consistent with those under the existing Senior Loan Credit Agreement; and (e) a

- 10 -

cross-default to the Primary Lease.

Increased Yield Amount: 2.0% on $35 million Senior Loan claims plus the aggregate principal amount of the Senior DIP Facility payable in cash on the Effective Date.

**Term Exit Facility**

Substantially contemporaneously with NewCo's assumption of all obligations outstanding under the Term Loan and the obligations outstanding under the Term DIP Facility, such obligations shall be amended and restated by a facility (the "**Term Exit Facility**" and together with the Senior Exit Facility, the "**Exit Facilities**") with the Term Lenders and the lenders under the Term DIP Facility, having the following terms: a 10% cash interest rate (interest paid monthly in arrears), 5 year maturity (with springing early maturity for (x) non-extension of lease at least 1 year prior to expiration and (y) stated maturity of Senior Loan if not refinanced/extended), a new prepayment premium schedule (108% in year 1, 106% in year 2, 104% in year 3, 103% in year 4, and 101% in year 5), and other terms substantially identical to the existing Term Loan Credit Agreement, except as set forth herein, including, but not limited to, the following:

(a) excess cash flow sweep of amounts not applied to prepay the Senior Exit Facility and not subject to any prepayment penalties (terms of the excess cash flow sweep to be agreed upon by the Debtors, the Prepetition Senior Lenders and the Prepetition Term Loan Lenders); (b) a minimum liquidity in an amount to be mutually agreed and a collateral coverage covenant to be mutually agreed; (c) the maximum debt under the Senior Exit Facility (or any refinancing facility permitted) not exceeding $40 million; *provided* that any refinancing of the Senior Exit Facility with any lender that is not a commercial bank or other established ABL lender upon terms customary for ABL credit facilities (to be limited to up to 85% on eligible accounts receivable, 65% on eligible inventory, and 85% on NOLV of eligible PP&E, subject to customary reserves), shall be limited to not more than $25 million of permitted outstanding obligations, in each case subject to the reasonable consent of the Prepetition Term Loan Lenders; (d) caps on unsecured debt and secured debt and no secured debt senior to (other than, solely in respect of ABL Priority Collateral, the Senior Exit Facility) or pari passu with the Term Exit Facility (with baskets for $25 million of unsecured debt and $25 million of secured debt junior in lien priority to the Senior Exit Facility

and the Term Exit Facility, in each case, subject to conditions to be agreed); (e) limitations on management fees, dividends and affiliate transactions consistent with those under the existing Term Loan Credit Agreement; and (f) a cross-default to the Primary Lease.

For the avoidance of doubt, the Prepetition Term Loan Lenders agree that no prepayment premium will become due and payable under the Term Loan as a result of the Sale or the refinancing of the Term Loan with the Term Exit Facility.

<u>Increased Yield Amount</u>:  2.0% on the Term Loan claims plus the aggregate principal amount of the Term DIP Facility payable in cash on the Effective Date.

**Collateral**                Collateral/lien priority between the Term Exit Facility and Senior Exit Facility to remain consistent with terms of the Existing Intercreditor Agreement.

**Intercreditor Agreement**   The lenders or the agents/trustee under the respective documents evidencing the Senior Exit Facility and the Term Exit Facility will enter into an intercreditor agreement (the "**Exit Intercreditor Agreement**") upon terms and conditions to be agreed upon, including, without limitation, provisions (x) with respect to lien priorities, enforcement of remedies, application of proceeds and other rights substantially identical to those in the Existing Intercreditor Agreement, (y) standstill on remedies, and (z) no cash payments while other senior debt is in default.

## SCHEDULE 2
### Sponsor Funding Terms

**Incremental Capital**     The Sponsor will provide $5.0 million in incremental capital (the "NewCo Contribution") to NewCo. The NewCo Contribution is fully committed by the Sponsor.

RLF1 12228374v.1

# EXHIBIT A - BID PROCEDURES

# COLT HOLDING COMPANY LLC, et. al.

## BID PROCEDURES

### Introduction

Set forth below are the bid procedures (the "**Bid Procedures**") to be employed with respect to the proposed sale of substantially all of the Debtors'[1] assets (the "**Assets**") pursuant to section 363 of the Bankruptcy Code (the "**Sale Transaction**"). These Bid Procedures provide interested parties with the opportunity to qualify and participate in the auction, if any (the "**Auction**"), and submit competing bids for the Assets.

The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") will conduct a hearing ("**Sale Hearing**") at which the Debtors will seek entry of an order (the "**Sale Order**") authorizing and approving the Proposed Sale to the Successful Bidder(s) (as defined below).

### Key Dates for Potential Bidders

The key dates for the sale process are as follows:

- July 30, 2015 5:00 P.M. (EDT) - Bid Deadline
- July 31, 2015 at 4:00 P.M. (EDT) - Sale Hearing Objection Deadline
- August 3, 2015 at 10:00 A.M. (EDT) - Auction (if necessary)
- August 7, 2015 at 10:00 A.M. (EDT) - Sale Hearing

### Stalking Horse Agreement

Attached hereto as <u>Schedule 1</u> is a term sheet describing the principal terms of (i) the purchase agreement (together with certain ancillary agreements thereto, the "**Stalking Horse Agreement**") between the Debtors and an entity (the "**Stalking Horse Purchaser**") affiliated with the Sponsor. Pursuant to either the Stalking Horse Agreement or another asset purchase agreement (each to the extent conforming to the requirements of the Bid Procedures, an "**Asset Purchase Agreement**"), and to the maximum extent permitted by section 363 of the Bankruptcy Code, the Successful Bidder(s) shall acquire substantially all of the Assets.

### Bid Procedures

Any person or entity who wishes to participate in the Bidding Process (as defined below) must meet the participation requirements to become a Potential Bidder, as specified below and must thereafter timely submit a Qualified Bid (as defined below) to become a Qualified Bidder (as defined below). Other than with respect to the Consultation Parties (as defined below), neither

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or their legal counsel and financial advisors) and the Debtors and their representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

The Debtors' board has appointed an independent committee (the "**Independent Committee**") to evaluate any proposed Sale Transaction to ensure that all parties are afforded an equal and fair chance to participate in the sale process. The Independent Committee shall (i) receive and evaluate all offers made hereunder, (ii) determine, after consultation with the Consultation Parties, whether any person or entity has met the participation requirements to become a Potential Bidder and has timely submitted a Qualified Bid so as to become a Qualified Bidder and (iii) negotiate in good faith with respect to any Qualified Bids. The Debtors and their representatives shall coordinate the efforts of Potential Bidders in conducting any required due diligence investigations (collectively, all of the aforementioned actions, the "**Bidding Process**").

## Participation Requirements

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors (it being understood that any person or entity who previously signed a confidentiality agreement in a form satisfactory to the Debtors shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder so as to be received by each of the following parties prior to any dissemination of confidential information: (i) Perella Weinberg Partners LP, 767 Fifth Avenue, New York, NY 10153 (Attn: Nikhil Menon); (ii) O'Melveny & Myers LLP, Times Square Tower, Seven Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq. and Joseph Zujkowski, Esq.); and (iii) the Debtors, 547 New Park Avenue, West Hartford, Connecticut 06110 (Attn: John H. Coghlin, General Counsel) (collectively, the "**Bid Notice Parties**"). Copies of any confidentiality agreements shall be provided to counsel to: (i) the Prepetition Senior Lenders and Senior DIP Lenders, (ii) the Prepetition Senior Loan Agent and Senior DIP Agent, (iii) the Prepetition Term Lenders and Term DIP Lenders, and (iv) the Prepetition Term Agent and Term DIP Agent (collectively, the "**Consultation Parties**"). The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit the access of strategic parties to the data room.

A "**Potential Bidder**" is a person or entity that the Debtors, after consultation with the Consultation Parties, determine is reasonably likely to: (a) submit a bona fide offer for substantially all of the Assets and (b) be able to consummate the Sale Transaction if selected as a Successful Bidder.

## Due Diligence

Upon execution of a confidentiality agreement containing terms satisfactory to the Debtors, any prospective bidder identified by the Debtors as reasonably likely to be a Qualified Bidder that wishes to conduct due diligence on any of the Assets may be granted access to material information regarding such Assets, *provided that* if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information.

The Debtors shall provide to each Potential Bidder contact information for NPA Hartford LLC (the "**Landlord**") as landlord under that certain Net Lease, dated October 26, 2005 (the "**West Hartford Facility Lease**"), between Colt Defense and Landlord, as amended on October 25, 2012, and which expires on October 25, 2015. Each Potential Bidder is responsible for conducting its own due diligence regarding the terms under which the Landlord may extend the term of the West Hartford Facility Lease.

The Debtors may take any action that they deem appropriate, in consultation with the Consultation Parties, to limit data room access to strategic.

The Debtors may, in the exercise of their business judgment and after consultation with the Secured Lenders, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided, however*, that the Successful Bidder(s) shall be permitted to continue to conduct due diligence until closing of the Proposed Sale (subject to the terms of the applicable asset purchase agreement (an "**APA**")); *provided, further*, however, that no Qualified Bid shall be subject to further due diligence after the Bid Deadline.

### Bid Deadline

Any Potential Bidder that desires to submit a bid for substantially all of the Assets must submit a Qualified Bid by the Bid Deadline **July 30, 2015 at 5:00 p.m. (EDT)**. Any Potential Bidder who fails to submit a bid so as to be **actually received** by the Bid Notice Parties in advance of the Bid Deadline shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

Prior to the Bid Deadline, a Potential Bidder that desires to submit a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the Potential Bidder. Each bid shall be served on each of the Bid Notice Parties by courier, facsimile, e-mail or as otherwise specified by the Debtors. The Debtors shall promptly provide copies of any such bids received to the Consultation Parties. The Debtors, with the prior written consent of the Consultation Parties or upon obtaining authorization from the Bankruptcy Court, may extend the Bid Deadline once or successively, but are not obligated to do so; *provided, however*, that the cumulative length of any such extensions shall not be longer than seven days. The Debtors shall not be required to consider bids submitted after the Bid Deadline, but may do so in consultation with the Consultation Parties.

### Bid Requirements

For the avoidance of doubt, the Debtors shall consider only bids for substantially all of the Assets; *provided, however*, that the Debtors reserve the right, in consultation with the Consultation Parties, to accept unsolicited bids for less than substantially all of the Assets.

To participate in the Bidding Process, a bidder must be a Potential Bidder and must deliver a written offer, which includes, at a minimum, the following items (the "**Required Bid Materials**") prior to the Bid Deadline:

1. Two executed originals of an APA, in form and substance similar to the Stalking Horse Agreement, and other documents by which the Potential Bidder offers to purchase the Assets that are the subject of the bid from the Debtors at the purchase price and upon the terms and conditions as the Potential Bidder sets forth therein, together with a marked copy showing any proposed changes, amendments, or modifications to the Stalking Horse Agreement (and exhibits);

2. A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, as may be modified in accordance with the Bid Procedures, is irrevocable until the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidders(s) (as defined below), and is not subject to any approvals, consents or conditions except as specified therein;

3. An offer to consummate the Sale Transaction for cash pursuant to the APA (or in the form of a credit bid pursuant to 363(k) of the Bankruptcy Code);

4. Terms that are not materially more burdensome than the terms of the Stalking Horse Agreement;

5. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures and that the offer constitutes a good faith bona fide offer to purchase all of the Assets;

6. Delivery by certified check or wire transfer of a good faith deposit in immediately available funds (the "**Deposit**") equal to 10% of the proposed purchase price. The Deposit shall be held in escrow and will be refunded on the terms set forth below;

7. Evidence or a statement indicating that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all consents required in connection with the submission and consummation of the bid have been obtained and that no other consents are required;

8. Evidence or a statement indicating that the bidder is able to perform under all contracts constituting Assets among any Debtor and any governmental entity;

9. Full disclosure of the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid;

10. A statement that the offering parties consent to the jurisdiction of the Court;

11. A statement that consummation of the Sale Transaction would not violate any laws, including federal or state antitrust laws, The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, et seq., and other applicable foreign or domestic anti-corruption, anti-bribery, or anti-money laundering laws;

12. Evidence of sufficient cash on hand or written evidence of a binding, unconditional (except for customary closing conditions) commitment for financing or other evidence of the ability to consummate the Sale Transaction satisfactory to the Debtors, after

- 4 -

consultation with the Consultation Parties, with appropriate contact (and any other necessary) information for such financing sources;

13. A list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors; an affirmation that the cure amounts will be the bidder's responsibility; and provision of adequate assurance of future performance with respect to such executory contracts and unexpired leases; and

14. Such other information as may be reasonably requested in writing by the Debtors, after consultation with the Consultation Parties, at least two calendar days prior to the Bid Deadline;

A bid received from a Potential Bidder that (i) includes all of the Required Bid Materials, (ii) is actually received by the Bid Deadline, (iii) provides for the assumption of all of the Assumed Liabilities (as defined in the Stalking Horse Agreement), (iv) provides value for the Debtors' estates of not less than $1 million above the value provided by the Stalking Horse Purchaser under the Stalking Horse Agreement, (v) is not subject to any due diligence or financing contingency, and (vi) does not request or entitle the bidder to any break-up fee, expense reimbursement, or similar type of payment is a "**Qualified Bid**" if the Debtors determine, after consultation with the Consultation Parties, that such bid evidences a bona fide interest and ability to purchase the Assets.

A Potential Bidder that submits a Qualified Bid (a "**Qualified Bidder**") shall be entitled to participate in the Auction. The Debtors reserve the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid. The Debtors further reserve the right, after consultation with the Consultation Parties, to waive any of the requirements for a Qualified Bid. Within two (2) business days after the Bid Deadline, the Debtors shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder. For the avoidance of doubt, (i) the Stalking Horse Purchaser shall be considered both a Potential Bidder and a Qualified Bidder, (ii) the Stalking Horse Agreement shall constitute a Qualified Bid for all purposes under these Bid Procedures, and (iii) the Stalking Horse Purchaser shall not be required to make a Deposit.

## Conduct of the Auction, If Any

If, but only if, more than one Qualified Bid is received by the Debtors prior to the Bid Deadline, the Auction shall take place at the offices of O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 and shall commence on August 3, 2015 at 10:00 a.m. (EDT); *provided, however*, that the Debtors, after consultation with the Consultation Parties, shall have the right to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

Only a Qualified Bidder who is designated as such by the Debtors, following consultation with the Consultation Parties, shall be eligible to participate at the Auction. The Qualified Bid selected by the Debtors, following consultation with the Consultation Parties, as the highest or otherwise best bid (the "**Opening Bid**"), including the APA(s) under such bid, shall be provided to all other Qualified Bidders prior to the start of the Auction, redacted to conceal the identity of the Qualified Bidder submitting such Opening Bid. In considering which Qualified Bid shall be

- 5 -

the Opening Bid, the Debtors, in consultation with the Consultation Parties, will consider, among other things, the changes to the Stalking Horse Agreement required by the Qualified Bid, and the Qualified Bidder's ability to finance and timely consummate the Sale Transaction. At the commencement of the Auction, the Debtors shall inform all Qualified Bidders present at the Auction of the identity of the Qualified Bidder that submitted the Opening Bid, as well as the identity of all other Qualified Bidders that will be participating in the Auction.

The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtors as the Debtors deem necessary, in consultation with their restructuring advisors and the Consultation Parties, to better promote the goals of the Auction and to comply with their fiduciary obligations:

1. The Qualified Bidders shall appear in person at the Auction through a duly authorized representative.

2. Only representatives of (i) the Debtors, (ii) persons or entities making Qualified Bids (including the Stalking Horse Purchaser), (iii) the Consultation Parties, (iv) the Landlord, (v) the Office of the U.S. Trustee, and (vi) any statutory committee appointed in these cases shall be permitted to be present at the Auction.

3. The terms of each Qualified Bid selected from time to time by the Debtors, after consultation with the Consultation Parties, as being the highest or otherwise best offer at any such time (each such Qualified Bid selected at any time, the "**Leading Bid**") shall be fully disclosed to all other Qualified Bidders. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for any or all of the Assets at any time shall have no conditions other than those disclosed.

4. The Auction shall commence with the Debtors confirming the particulars of the Opening Bid and asking for higher or otherwise better offers. Bidding shall commence at the amount of the Opening Bid. Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than $1 million. The Debtors, after consultation with the Consultation Parties, reserve the right to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction.

5. The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtors, after consultation with the Consultation Parties, shall announce the Leading Bid. A Qualified Bidder that does not submit a Qualified Bid in any round of bidding with value greater than the Leading Bid as of the commencement of such round shall not be able to submit further bids in any subsequent round.

6. The Debtors shall provide for a court reporter to be present at and prepare a transcript of the Auction. The Debtors may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

7. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction.

8. The Debtors, acting in good faith and in the exercise of their fiduciary duties to maximize value to their estates and after consultation with the Consultation Parties, may accept a combination of (i) a Qualified Bid for substantially all of the Assets and (ii) a Qualified Bid for less than substantially all of the Assets as the collective Leading Bid(s) or as the collective Successful Bid(s) if such Qualified Bids, taken together, constitute a sale of all or substantially all of the Assets without overlap.

9. All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective APA at the Auction to improve such bids.

10. The Auction may include individual negotiations with the Qualified Bidders and/or open bidding; *provided, however*, that all bids shall be made and received in one room, on an open basis, and each Qualified Bidder shall be entitled to be present for all bidding so long as such Qualified Bidder has submitted bids that comply with the requirements in each round of bidding and with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting each bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

11. The Debtors reserve the right, after consultation with the Consultation Parties, to (i) determine in their reasonable discretion which Qualified Bid is the highest or otherwise best and (ii) reject at any time, without liability, any bid that the Debtors, in their business judgment, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the order approving these Bid Procedures, or (3) contrary to the best interests of the Debtors and their estates.

12. The Auction shall continue until there is only one Qualified Bid (or a combination of (i) a Qualified Bid for substantially all of the Assets and/or (ii) Qualified Bids for less than substantially all of the Assets that, taken together, constitute a sale of all or substantially all of the Assets without overlap) that the Debtors determine, after consultation with the Consultation Parties and subject to Bankruptcy Court approval, constitutes the highest or otherwise best offer for the Assets from among the Qualified Bids submitted at the Auction (the "**Successful Bid(s)**"). In determining the Successful Bid(s), the Debtors, in the exercise of their business judgment, in consultation with the Consultation Parties, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the ability of the Qualified Bidder(s) to complete the sale contemplated by the Successful Bid(s) (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), the proposed timing thereof, the contracts being assumed by the Qualified Bidder(s), the rights of the Qualified Bidder(s) and the Debtors with respect to the termination thereof, ability to demonstrate continuity in terms of the Debtors' operations and ability to avoid undue liabilities or disruptions resulting from a change of control, the number, type and nature of any changes reflected in the APA(s) requested by the Qualified Bidder(s), and the net benefit to the Debtors' estates. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets (the "**Successful Bidder(s)**") shall have the rights and responsibilities of the purchaser, as set forth in their APA(s) and in the terms and conditions of the

Successful Bid(s) provided at the Auction. Prior to the Sale Hearing, the Successful Bidder(s) and the Debtors shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) was made (subject, in the case of the Debtors, to the qualifications set forth in "**Acceptance and Termination of Qualified Bids**" below).

EACH QUALIFIED BID SUBMITTED AT THE AUCTION SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER IN ACCORDANCE WITH THE TERMS OF THE APA (AS MAY BE MODIFIED IN ACCORDANCE WITH THE BID PROCEDURES) UNTIL THE ENTRY OF ONE OR MORE ORDERS OF THE BANKRUPTCY COURT APPROVING OTHER QUALIFIED BIDDERS AS THE SUCCESSFUL BIDDER(S). UPON THE ENTRY OF ONE OR MORE ORDERS OF THE BANKRUPTCY COURT APPROVING OTHER QUALIFIED BIDDERS AS THE SUCCESSFUL BIDDER(S), EACH QUALIFIED BID THAT IS NOT A SUCCESSFUL BID SHALL BE DEEMED WITHDRAWN AND TERMINATED.

## Back-Up Bidder

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise next best Qualified Bid for the Assets at the Auction (the "**Back-Up Bid**") will be required to serve as the back-up bidder (the "**Back-Up Bidder**") for such Assets and keep such Back-Up Bid open and irrevocable until the first to occur of (i) 45 days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtors of the release by the Debtors of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on its part or otherwise, the Back-Up Bidder will be deemed the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

## Acceptance and Termination of Qualified Bids

The Debtors intend to sell the Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Successful Bid(s). The Debtors will be deemed to have accepted the Successful Bid(s) only upon entry of the Sale Order.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on **August 7, 2015 at 10:00 a.m. (EDT)** and may be adjourned or rescheduled without notice. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s). Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Proposed Sale and there will be no further bidding at the Sale Hearing.

- 8 -

## Terms of Sale

Except as and to the extent provided in the APA(s), and subject to Bankruptcy Court approval, the sale of the Assets shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature or description by the Debtors or their agents, and by submitting a bid, each bidder is deemed to acknowledge and agree to the foregoing. Subject to Bankruptcy Court approval and the terms of the APA(s), all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the petition date of the Debtors' chapter 11 cases, whether at law or in equity (collectively "**Interests**"), to the fullest extent available under section 363 of the Bankruptcy Code with such Interests, if any, attaching to the net proceeds of the sale of the Assets in the same order, dignity and priority as existed at the consummation of the Sale Transaction and subject to the conditions set forth in the APA(s). Notwithstanding the foregoing, the Debtors, subject to any prior order of the Bankruptcy Court, reserve the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Interests under applicable law.

## Return of Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the escrow agent (the "**Escrow Agent**") and will not become property of the Debtors' estates absent further order of the Bankruptcy Court. Any interest earned on any Deposit shall be remitted to the appropriate Qualified Bidder if the Deposit is returned to such Qualified Bidder. Within five business days after the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s), the Escrow Agent shall return the Deposits made by any Qualified Bidders other than the Successful Bidder(s).

If the Successful Bidder(s) fails to consummate the Proposed Sale because of a breach or failure to perform on the part of the Successful Bidder(s), the Debtors shall be entitled to retain the Deposit(s) of the Successful Bidder(s), if any, in addition to other additional remedies available to the Debtors under applicable law. The Debtors shall credit the Deposit(s) of the Successful Bidder(s), if any, towards the purchase price at the time of funding pursuant to the terms of the APA(s).

## Damages

If the Successful Bidder(s) fails to consummate the Proposed Sale because of a breach, default, or failure to perform by the Successful Bidder(s), the Debtors reserve the right to seek all available damages from the Successful Bidder(s), including specific performance.

## Reservation of Rights

The Debtors, after consultation with the Consultation Parties, reserve the right to (i) modify the Bid Procedures, including, without limitation, modifying the requirements for a Qualified Bid, at or prior to the Auction, if such modification will better promote the goals of the

Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the Proposed Sale, and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice, in each case, in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court or the Canadian Court and the Debtors deem such modifications consistent with the performance of their fiduciary obligations.

## Independent Evaluation

Except as otherwise expressly provided in the Bid Procedures or any Purchase Agreement, by submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Debtors, the Assets, and the Proposed Sale prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets, or the completeness of any information provided in connection with the Debtors, the Assets, and the Proposed Sale.

## Jurisdiction

The Bankruptcy Court and as applicable the Canadian Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale Transaction, the Bid Procedures, any APA, and any other matter that in any way relates to the foregoing. All entities that submit a bid for the purchase of the Assets shall be deemed to have (i) consented to the core jurisdiction of, and venue in, the Bankruptcy Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Sale Transaction, the Bid Procedures, any APA, and any other matter that in any way relates to the foregoing.

RLF1 12228374v.1