**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------x
:
In re: : Chapter 11
:
COLT HOLDING COMPANY LLC, *et al.*,[1] : Case No. 15-11296 (LSS)
:
Debtors. : Jointly Administered
:
: **Re: D.I. 406, 407**
:
------------------------------------------------------------x

**DEBTORS' OPPOSITION TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' MOTION TO SHORTEN NOTICE**

1. The Debtors submit this opposition to the motion of the Official Committee of Unsecured Creditors (the "**Committee**") to shorten the notice period [D.I. 407] for its motion seeking standing to assert derivative claims and other extraordinary relief, such as to invade the Debtors' privilege and settle claims on the Debtors' behalf (the "**Motion to Shorten**").[2] The Committee asks this Court to consider the Standing Motion on September 3, 2015—just four days' notice, in late August, no less. As the Committee states in the Motion to Shorten, this Court's Local Rules provide that the standard 21-day notice period may be shortened on written motion "specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). But in the Motion to Shorten the Committee fails to articulate *any* justification whatsoever, devoting only one conclusory sentence (in paragraph 7) to explaining the purported emergency.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Colt Holding Company LLC (0094); Colt Security LLC (4276); Colt Defense LLC (1950); Colt Finance Corp. (7687); New Colt Holding Corp. (6913); Colt's Manufacturing Company LLC (9139); Colt Defense Technical Services LLC (8809); Colt Canada Corporation (5534); Colt International Coöperatief U.A. (6822); and CDH II Holdco Inc. (1782). The address of the Debtors' corporate headquarters is: 547 New Park Avenue, West Hartford, Connecticut 06110.

[2] *See Motion of the Official Committee of Unsecured Creditors for an Order Granting the Committee: (A) Derivative Standing to Assert, Prosecute, and Settle Claims Arising Out of the Debtors' Lease of the West Hartford Facility with NPA Hartford LLC; and (B) Authorization to Hold, Assert and, if Necessary, Waive Privileges on Behalf of the Estates* [D.I. 406] (the "**Standing Motion**").

2. Moreover, the Committee muddles the alleged claims against principals related to Sciens Capital Management LLC ("**Sciens**") and the dispute about the lease for the Debtors' main manufacturing facility that was set to expire on October 25, 2015 (the "**Lease**"). There is no conceivable emergency for the claims against the Sciens principals, which can be pursued later rather than at this critical stage in the Company's life. Indeed, not a single word in the moving papers even attempts to justify the alleged emergency concerning the Sciens-related claims or why the Committee's standing to pursue those claims should be briefed and decided on shortened notice.

3. As for the Lease, no emergency exists because the Debtors have secured a one-month lease extension. If the landlord were to try and evict the Debtors, the Committee (as well as, of course, the Debtors) would be free to make opposing arguments, and will have standing to do so under Bankruptcy Code Section 1109(b). But the landlord has not commenced any eviction proceeding yet.

4. Importantly, as the Court will recall, on July 22, 2015, the Committee asked this Court to authorize Rule 2004 discovery so it could determine if it should assert the claims it now wishes to bring without completing that discovery—which the Committee has not pushed to finish as expeditiously as it wishes to have the Standing Motion heard. Any potential claims related to an eviction proceeding that has not been filed are thus—by the Committee's own thinking of only a month ago—not ready for the Court's consideration. The same goes for a not-yet-filed eviction proceeding. Accordingly, setting an expedited briefing schedule would not only run afoul of Article III, Section 2 of the United States Constitution (at least as far as the Lease is concerned) but would inevitably require the Court and the parties to revisit the same issues at some future date. *See* U.S. Const. art. III, § 2 ("The judicial Power shall extend to all

cases, in law and equity, arising under this Constitution [and] the laws of the United States . . . .").

5. In light of the complexity of the proposed claims raised in the Standing Motion and the overreaching scope of the requested relief—which includes invading the Debtors' privilege and usurping the right to settle claims—the Debtors will be greatly harmed if that motion were to be heard on just four days' notice. The Debtors should have a reasonable opportunity to research and brief the contentions in the Standing Motion. Fulsome briefing would also likely benefit the Court. In contrast, the Committee would not be prejudiced if the Court were to hear the Standing Motion on a standard schedule. For these reasons, the Court should deny the Committee's Motion to Shorten.

## ARGUMENT

### I. THERE IS NO FIRE HERE BECAUSE THE SCIENS-RELATED CLAIMS CAN BE PURSUED LATER AND THE LEASE HAS BEEN EXTENDED A MONTH.

6. The Committee's Motion to Shorten allocates a single conclusory sentence (Mot. ¶ 7) to justifying the alleged emergency. That sentence states as follows in full:

> Because the alleged Lease termination date is fast approaching and to insure that the value of the Debtors ongoing business, to be realized either through a sale or plan restructuring, is not significantly impaired, it is imperative that the Committee be permitted to immediately commence the adversary proceeding and seek injunctive relief on a preliminary basis (and subsequently final basis) and other relief as set forth in the Proposed Complaint.

7. Nothing in the above text—or elsewhere in the brief—addresses any alleged emergency concerning the Sciens-related claims, much less why the Court should conduct a drumhead hearing on the Committee's standing to pursue these claims. Nor does the Committee cite any cases where a standing motion was heard on similarly short notice.

8. The Committee offers no reason for the Sciens-related emergency because none exists. The relief the Committee wishes to pursue would be no less effective if it were obtained later, particularly since the committee seeks money damages and avoidance of a non-executory agreement. And even if the Court were to grant the Committee derivative standing now, its proposed compliant could not possibly be litigated to judgment until long after the Debtors' Section 363 sale or plan confirmation hearing.

9. What about the Lease emergency? The Committee states that the expiration date is "fast approaching" and it is thus "imperative that the Committee be permitted to immediately commence the adversary proceeding." But the Debtors and landlord have agreed to extend the Lease until November 24, 2015—as the Committee would have learned if it had not jumped the gun in filing the Standing Motion just 11 days after writing to the Debtors about its standing request. If the Court were to hear the Standing Motion on a standard schedule, the Committee's standing would be resolved with more time before the extended Lease expires than would be the case under the current expiration date.

10. The Court should note that the Debtors secured this Lease extension without fees or conditions other than (i) paying rent at the existing monthly rate during the extension period, and (ii) the Debtors obtaining a waiver of the milestone in their DIP financing agreements requiring filing of a chapter 11 plan by August 31, 2015.[3] The extension is documented in the amendment attached hereto as Exhibit A.

---

[3] The Debtors' debtor-in-possession financing agreements contain milestones schedules that require, among other things, the Debtors to file a plan of reorganization by August 31. The Debtors have obtained a waiver of the obligation to comply with the August 31 milestone and certain other milestones, which was provided by the lenders under such agreements (the "DIP Lenders") subject to certain conditions, which include (i) the Debtors obtaining a 30 day extension of the Lease, and (ii) the Debtors either delivering a plan term sheet to the DIP Lenders by September 1, 2014 or obtaining approval of the Bid Procedures Motion [D.I. 13] by September 3, 2015. A copy of the waivers will be filed with the Court.

## II. AN EXPEDITED HEARING IS IMPROPER BECAUSE THE STANDING MOTION RAISES ISSUES THAT ARE NOT YET RIPE.

11. To succeed on its Standing Motion, the Committee has the burden of demonstrating that the claims it seeks to bring against Sciens and the Landlord are "colorable." *See G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 631 (Bankr. D. N.J. 2004) (noting that "claim element of the derivative standing test requires the Court to decide whether the Committee has asserted 'claims for relief that on appropriate proof would support a recovery.'") (internal citations omitted). But as the Committee acknowledges in its Rule 2004 Motion, discovery is necessary to determine if there is any basis for any claims.

12. When the Committee asked for authority to conduct Rule 2004 discovery it stated that "an investigation is necessary to determine if any claims or causes of action exist against Sciens, the Landlord, and members of both Sciens and the Landlord."[4] That discovery is not yet complete and the Committee does not say what, if anything, has changed since then.

13. The depositions that are critically important to the Standing Motion will not occur until the week of September 7, 2015. Because the claims raised in the Standing Motion turn on this outstanding discovery, it would be premature for the Court to determine now—especially on shortened notice—whether the Committee's claims are colorable.

## III. THE DEBTORS WILL SUFFER GREAT HARM IF THE COURT WERE TO CONSIDER THE STANDING MOTION ON AN EXPEDITED BASIS.

14. The Committee's Standing Motion and the attached proposed complaint (which the Debtors have not seen before) raise critically important issues. These issues are complex and

---

[4] *Emergency Motion of the Official Committee of Unsecured Creditors for Order, Pursuant to Federal Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, Directing Sciens Capital Management LLC to Produce Documents and to Appear for Deposition Upon Oral Examination* at 2–3 [D.I. 232].

5

merit thoughtful attention to assess properly. The Committee also asks for breathtakingly broad relief: (i) exclusive authority to settle claims on the Debtors' behalf; and (ii) access to the Debtors' privileged material and communications. Based on the relief requested alone, the Debtors should have an opportunity to fully brief and respond to the Standing Motion.

15. If the Court were to grant the Committee authority to settle claims to the exclusion of the Debtors, it would deprive them of the ability to control the outcome of this case—complicating immeasurably the ability to conduct a sale or formulate a plan. And granting the Committee's extraordinary request to invade the Debtors' privilege—which is the proverbial bell that cannot be unrung—would, among other things, lead to additional costly and messy litigation.

16. Requiring the Debtors and other parties-in-interest to brief and argue a motion on an emergency basis would draw limited resources from ongoing negotiations among the Debtors, Sciens, the landlord, and members of the bondholders' consortium—the same negotiations that produced the Lease extension.

17. The Debtors continue to work in good faith to try and negotiate a consensual resolution of these chapter 11 cases without additional expensive and protracted litigation. Diverting the Debtors' resources from these negotiations would be counterproductive to achieving the global settlement that the Committee itself has advocated since its formation.

**CONCLUSION**

For the above reasons, the Court should deny the Motion to Shorten. If, however, the Court shortens the notice period for the Standing Motion, the Debtors request that the Court set a scheduling conference and grant such other and further relief as is just, proper, and equitable.

Dated: August 31, 2015
Wilmington, Delaware

*/s/ Joseph C. Barsalona II*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

**O'MELVENY & MYERS LLP**
John J. Rapisardi (admitted *pro hac vice*)
Peter Friedman (admitted *pro hac vice*)
Gary Svirsky (admitted *pro hac vice*)
Joseph Zujkowski (admitted *pro hac vice*)
Times Square Tower
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for the Debtors
and Debtors in Possession*